STEPHEN J. AKERLEY (Bar No. 160757)
PHILIP C. DUCKER (Bar No. 262644)
ADRIAN KWAN (Bar No. 300032)
MINTZ LEVIN COHN FERRIS GLOVSKY
 AND POPEO P.C.
44 Montgomery Street, 36th Floor
San Francisco, CA 94104
Telephone:    (415) 432-6000
Facsimile:     (415) 432-6001
SJAkerley@mintz.com
PCDucker@mintz.com
AKwan@mintz.com

*Attorneys for Defendant*
IPCom GmbH & Co. KG

UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LENOVO (UNITED STATES) INC. And MOTOROLA MOBILITY, LLC,<br><br>                    Plaintiffs,<br><br>          v.<br><br>IPCom GmbH & Co. KG,<br><br>                    Defendant. | Case No.  5:19-cv-01389-EJD<br><br>**NOTICE OF MOTION AND DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:      November 14, 2019<br>TIME:       9:00 a.m.<br>CTRM:     Courtroom 1, 5th Floor<br>JUDGE:   The Honorable Edward J. Davila<br><br>Complaint Filed: March 14, 2019<br>Trial Date:  TBD |

# **TABLE OF CONTENTS**

**Page(s)**

NOTICE OF MOTION AND MOTION ................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES .................................................... 1

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF ISSUES ................................................................................... 3

III.    RELEVANT FACTS ............................................................................................. 3

IV.     ARGUMENT ......................................................................................................... 6

        A.      Legal Standards ......................................................................................... 6

                1.      Personal Jurisdiction ..................................................................... 6

                2.      Federal Rule of Civil Procedure 4(k)(2) – Personal Jurisdiction ............... 7

                3.      Choice of Law ................................................................................ 7

        B.      The Court Cannot Lawfully Exercise Personal Jurisdiction Over IPCom ............. 7

                1.      The Court Does Not Have General Jurisdiction over IPCom ..................... 8

                2.      The Court Does Not Have Specific Jurisdiction over IPCom..................... 9

                        a.      The Court Does Not Have Specific Jurisdiction over
                                IPCom for the Declaratory Judgment of Non-
                                Infringement Claims.............................................................. 10

                        b.      The Court Does Not Have Specific Jurisdiction over
                                IPCom for the Breach of Contract and Declaratory
                                Judgment Claims.................................................................... 14

                        c.      The Court Does Not Have Specific Jurisdiction over
                                IPCom for the Antitrust Claims ............................................ 15

                        d.      Exercising Personal Jurisdiction over IPCom Here
                                Would Be both Unreasonable and Unfair .............................. 16

V.      CONCLUSION..................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*u-blox AG et al. v. Interdigital, Inc. et al.,*
    3:19-cv-0001-CAB-BLM ................................................................................................ 16

*Apple Inc., v. Qualcomm, Inc.,*
    Case No. 3:17-cv-00108-GPC-MDD, ECF No. 92-1 (S.D. Cal. Sept. 7, 2017) ........................... 2

*Apple Inc. v. Samsung Elecs. Co.,*
    No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102 (N.D. Cal. May 14, 2012) ........................... 17

*Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.,*
    480 U.S. 102 (1986) ............................................................................................... 16, 17

*Autogenomics Inc. v. Oxford Gene Tech Ltd.,*
    566 F.3d 1012 (Fed. Cir. 2009) ........................................................................... 6, 11, 12

*Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.,*
    552 F.3d 1324 (Fed. Cir. 2008) ............................................................................... 10, 14

*Bancroft Masters, Inc., v. Augusta National,*
    223 F.3d 1082 (9th Cir. 2000) ........................................................................................ 9

*Bristol-Myers Squibb Co. v. Superior Court,*
    137 S. Ct. 1773 (2017) ................................................................................... 7, 16, 17

*Burger King Corp. v. Rudezewicz,*
    471 U.S. 462 (1985) .................................................................................................... 9

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014) .............................................................................................. 6, 8, 9, 18

*Gates Lear Jet Corp. v. Jensen,*
    743 F.2d 1325 (9th Cir. 1984) ........................................................................................ 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
    564 U.S. 915 (2011) .................................................................................................... 8

*Helicopteros Nacionales de Colombia v. Hall,*
    466 U.S. 408 (1984) .................................................................................................... 9

*Hildebrand v. Steck Mfg. Co.,*
    279 F.3d 1351 (Fed. Cir. 2002) ................................................................................ 12, 14

*HTC Corp., et al. v. IPCom GmbH & Co. KG,*
    C.A. 1:08-cv-01897, ECF No. 14 (D.D.C. Feb. 27, 2009) ............................................... 4

**TABLE OF AUTHORITIES**
(*Continued*)

**Page(s)**

**CASES**

*Inamed Corp. v. Kuzmak,*
    249 F.3d 1356 (Fed. Cir. 2001)................................................................................ 8, 10

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945) ....................................................................................................... 6, 14

*Interdigital Communications, Inc., v. ZTE Corp.,*
    Civ. No. 1:13-cv-00009-RGA, 2014 U.S. Dist. LEXIS 72389 (D. Del May 28,
    2014) ............................................................................................................................. 6

*Maxchief Invs. Ltd. v. Wok Pan Ind. Inc.,*
    909 F.3d 1134 (Fed. Cir. 2018)................................................................................ 12, 13

*Radio Sys. Corp. v. Accession, Inc.,*
    638 F.3d 785 (Fed. Cir. 2011).................................................................................. 10, 11, 12

*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,*
    148 F.3d 1355 (Fed. Cir. 1998)................................................................................ 11, 12

*Research In Motion Ltd. et al. v. IPCom GmbH & Co. KG,*
    C.A. 3:08-cv-00903 (N.D. Tex. Sept. 2, 2011), ECF No. 6........................................ 4

*Roth v. Garcia Marquez,*
    942 F.2d 617 (9th Cir. 1991)..................................................................................... 9

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004)..................................................................................... 10

*Silent Drive, Inc. v. Strong Indus.,*
    326 F.3d 1194 (Fed. Cir. 2003).................................................................................. 7

*Stein Assocs. v. Heat & Control, Inc.,*
    748 F.2d 653 (Fed. Cir. 1984).................................................................................... 17

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico,*
    563 F.3d 1285 (Fed. Cir. 2009).................................................................................. 8, 9

*Touchcom, Inc. v. Bereskin & Parr,*
    574 F.3d 1403 (Fed. Cir. 2009).................................................................................. 7, 8

*USA Payments, Inc. v. Hotel Ramada of Nev.,*
    No. C-01-1450 VRW, 2001 U.S. Dist. LEXIS 9493 (N.D. Cal. June 21, 2001)........... 7

# <u>TABLE OF AUTHORITIES</u>
### (*Continued*)

**Page(s)**

**CASES**

*Walden v. Fiore*,
    571 U.S. 277 (2014) ................................................................................................ 14, 15

*Xilinx Inc., v. Papst Licensing GmbH Co. KG*,
    848 F.3d 1346 (Fed. Cir. 2017) ...................................................................................... 7

**STATUTES**

Fed. R. Civ. Proc. § 4 .............................................................................................................. 7, 8

Fed. R. Civ. Proc. § 12(b)(2) ..................................................................................................... 1

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT at 9:00 a.m. on November 14, 2019, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila, located at 280 South 1st Street, Courtroom 1, 5th Floor, San Jose, CA 95113, Defendant IPCom GmbH Co. KG will and hereby does move this Court to dismiss Plaintiffs Lenovo (United States) Inc. and Motorola Mobility, LLC's (collectively, "Lenovo" or "Plaintiffs") Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice in Support of IPCom's Motion to Dismiss, and the Declaration of Pio Won-Joon Suh and accompanying exhibits in support thereof ("Suh Declaration"), the records in this action and such further evidence and argument that may be presented at the hearing of this motion and that the Court may consider.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether all counts of Plaintiffs' Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court cannot lawfully exercise personal jurisdiction over IPCom.

Dated:  July 2, 2019                        Respectfully submitted,

                              **MINTZ LEVIN COHN FERRIS GLOVSKY**
                              **AND POPEO P.C.**


                                      */s/ Stephen J. Akerley*
                              By:   Stephen J. Akerley
                                      Philip C. Ducker
                                      Adrian Kwan

                              Attorneys for IPCom GmbH & Co. KG

NOTICE OF MOTION AND DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – CASE NO. 5:19-cv-01389-EJD

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Defendant is a foreign intellectual property consulting, R&D, and licensing company organized and existing under the laws of Germany with its principal place of business at Zugspitzstraße 15, Pullach, Germany 82049.

Plaintiffs' complaint contains no facts that support the exercise of personal jurisdiction over IPCom GmbH Co. KG ("IPCom").  The relevant jurisdictional facts are as follows:  IPCom is a small company, having just six (6) employees, with its sole place of business located in Pullach, Germany.  Suh Declaration, ¶¶ 3-4.  IPCom has never conducted business in the United States.  Suh Declaration, ¶¶ 2-14.  IPCom has never employed anyone in the United States.  Suh Declaration, ¶ 5.  IPCom has never owned or leased property in the United States, and has never had a place of business here.  Suh Declaration, ¶¶ 3, 7-8.  IPCom has never paid taxes in the United States.  Suh Declaration, ¶ 10.  IPCom has never sought to have its rights adjudicated by a court in the United States other than when compelled to answer a single complaint for declaratory judgment brought by an infringer. Suh Declaration, ¶¶ 14, 17-18. Far from purposefully availing itself of the laws of the United States, IPCom has studiously avoided this forum.

IPCom's only contacts with Lenovo in the United States related to the claims set forth in the complaint are correspondence and personal meetings that Lenovo dictated occur here.  The Federal Circuit has repeatedly held that, without more, meetings in the United States and correspondence directed to the United States solely related to licensing negotiations are do not constitute minimum contacts required for the lawful exercise of personal jurisdiction.  Even if those activities were to be considered, IPCom's de minimis contacts fall far short of the minimum contacts required for lawful exercise of personal jurisdiction by this Court.  Exercise of personal jurisdiction over IPCom would offend the most basic principles of due process, and Lenovo's complaint should be dismissed in its entirety.

-1-

Lenovo's failure to address IPCom's lack of contacts with the United States is purposeful. Having stonewalled IPCom in licensing discussions for several years, Lenovo is fully informed of IPCom's size, structure, location and as well as its absence of activity in the United States.  This lawsuit is simply a preemptive strike aimed solely at obtaining leverage in the parties' negotiations. It is also an unveiled attempt to prevent IPCom from asserting its patent rights in the United Kingdom, and all other foreign jurisdictions in which IPCom's patents have already been found valid, standard-essential, and infringed by activity identical to Lenovo's.

This tactic has become all too common.  In only the last six months, Lenovo's outside counsel has filed three nearly identical cases against various patent holders, each case improperly seeking anti-suit injunctive relief against parties whose only commonality is that they hold foreign, standard-essential patents.  This commodity approach is evidenced by allegations in Lenovo's complaint that are demonstrably incorrect and simply copied-and-pasted from earlier complaints filed by Lenovo's lawyers.  The impropriety of these types of blocking suits was recognized by Judge Gonzalo P. Curiel in the Southern District of California in 2017 when dealing with a similar attempt to prevent a foreign entity from seeking to adjudicate foreign patent rights.[1]  Judge Curiel stated that to "issue an anti-suit injunction … would directly impede upon the ongoing efforts" in foreign jurisdictions to resolve questions regarding FRAND issues.

IPCom asks the Court to see this complaint for what it is:  a quickly-filed, factually deficient set of claims brought against a company with no meaningful contacts with the United States,  filed for the sole purpose of preventing adjudication of valuable foreign rights and to further delay payment owed for Lenovo's years of infringing activity. Because IPCom has not purposefully availed itself of the laws of the United States, it respectfully requests that the Court dismiss this action for lack of personal jurisdiction.

---

[1] *Apple Inc., v. Qualcomm, Inc.*, Case No. 3:17-cv-00108-GPC-MDD, ECF No. 92-1 (S.D. Cal. Sept. 7, 2017).

## II.   STATEMENT OF ISSUES

Whether exercise of personal jurisdiction over a foreign company with no purposeful contacts with the United States comports with basic due process protections.

## III.   RELEVANT FACTS

Following its formation twelve years ago, IPCom acquired two patent portfolios, one originating with Hitachi Ltd. ("Hitachi"), a Japanese company, and the other originating with Robert Bosch GmbH ("Bosch"), a German company.  These patent portfolios cover critical telecommunications inventions and consist of patents issued in Europe, China, Japan, the United States, and other jurisdictions.  IPCom's business consists of research and development in areas related to these portfolios, intellectual property consulting, and licensing its patents when necessary to prevent unlawful infringement.  Suh Declaration, ¶¶ 2.  Throughout its entire history, IPCom has been a very small company and currently has just six (6) employees, but has never had an employee in the United States.  Suh Declaration, ¶¶ 4-5.  IPCom has never owned or leased property in the United States.  Suh Declaration, ¶¶ 7-8.  IPCom has never paid taxes in the United States.  Suh Declaration, ¶ 10.  IPCom has never advertised in the United States.  Suh Declaration, ¶ 12.

IPCom's contacts with the United States consist solely of occasional meetings in the U.S. with potential licensees, written correspondence (both electronic and paper) with U.S. licensees, and telephone calls to and from the U.S. related to license negotiations.  Suh Declaration, ¶ 15. Throughout its existence, IPCom has consistently sought to meet with and correspond with potential licensees in locations outside the United States.  Meetings in the United States have generally occurred only when specifically requested or dictated by potential licensees, as is the case with Lenovo.  Suh Declaration, ¶ 15.  IPCom has never chosen the United States as a meeting location for the purpose of availing itself of some benefit of our laws.  Suh Declaration, ¶¶ 13-19.

When conducting licensing negotiations, even with companies headquartered in the United States, IPCom consistently highlights the strength and coverage of its European patents, focusing discussions on risks flowing from the continued, unlicensed use of IPCom's inventions in Europe. Ex. A.  On occasions when IPCom has been compelled to sue recalcitrant infringers, it has always

-3-

done so in European courts.  *See, e.g.*, Exs. B & C.  IPCom has never filed an original legal action in the United States voluntarily or affirmatively.  Over the entire course of IPCom's existence, it has appeared twice in U.S. proceedings solely because infringers, like Lenovo, have dragged it into the U.S. court system by filing declaratory judgment cases.

In the first of the two U.S. actions, IPCom was never served and the case sat idle on the court's docket for over three years before being dismissed.  Notice of Dismissal, *Research In Motion Ltd. et al. v. IPCom GmbH & Co. KG*, C.A. 3:08-cv-00903 (N.D. Tex. Sept. 2, 2011), ECF No. 6.  In the second U.S. action, IPCom brought compulsory counterclaims of patent infringement when it was sued for declaratory judgment of non-infringement relating to one of its patents in the District of Columbia.  Def's Answer and Countercl. at 3-6, *HTC Corp., et al. v. IPCom GmbH & Co. KG*, C.A. 1:08-cv-01897, ECF No. 14 (D.D.C. Feb. 27, 2009).

Prior to the filing of this action, IPCom was engaged in what it believed was a good-faith negotiation with Lenovo Group Ltd. ("Lenovo China") regarding a license to IPCom's global patent assets.  Lenovo China is a Chinese company headquartered in Hong Kong and Plaintiffs' parent company.[2]  IPCom's communications had been with Lenovo China until Lenovo China informed IPCom that its "senior intellectual property counsel is located in the United States."  Complaint, ¶ 49.  Lenovo China directed IPCom to communicate with Lenovo's intellectual property counsel in the United States.  *Id.*

IPCom's actions are inconsistent with a party seeking to purposefully avail itself of the benefits and protections of the laws of the United States.  From the outset of its discussions with Lenovo, IPCom has stated that it was both willing to provide a license at a FRAND rate and willing to accept a FRAND rate *as determined by the courts in the United Kingdom*.  Ex. G.  Its discussions with Lenovo are consistent with IPCom's non-U.S. approach and representations throughout its twelve-year existence.

---

[2] https://www.lenovo.com/hk/en/lenovo/locations/

After nearly five years of negotiations without any significant feedback from Lenovo regarding IPCom's proposal, IPCom sent a detailed breakdown to Lenovo regarding IPCom's calculated FRAND rates.  IPCom also explicitly noted that it intended to assert its patents rights *in the courts of the United Kingdom*.  [Ex. A, ("IPCom has internally received sign-off approval for litigation against Lenovo/Motorola. And looking at the two cases IPCom has won against HTC and Nokia (see decisions attached) and the confirmed validity of the 100A patent, ***we are prepared to start proceedings with the same patent (and others) in the UK on immediate basis***.") (emphasis added).]  Both of the cases IPCom referenced in its email were Court of Appeals decisions in the United Kingdom and the 100A patent is an internal designation (used externally with potential licensees) for European Patent 1841268.  *See* Exs. B & C.  IPCom offered Lenovo a discounted lump-sum royalty to avoid litigation specifically in the United Kingdom and "possibly in Germany as well as the US...."  Ex. A.

A single day after sending its response assuring IPCom of its intentions as a willing licensee, Lenovo filed the instant complaint for declaratory judgment of two U.S. patents related to UMTS technology (one of which is not even assigned to IPCom) and various boilerplate antitrust and breach of contract allegations.  *See* Ex. D.  As noted above, Lenovo's lawyers appear to have commoditized their anti-suit injunction strategies and, in their haste get this complaint on file, erroneously included remnants of accusations copied from other complaints.  Lenovo's intentions are clear and unambiguous – it wants this Court to prohibit IPCom from asserting its rights in other parts of the world relating to foreign patents that can never be substantively adjudicated in the United States.  Complaint, ¶ G.  Despite its rush to file on March 14, 2019, Lenovo did not even engage a foreign process server until May 16, 2019.  As of the date of this filing, Lenovo has not effected service and IPCom, in the hope of moving forward, has waived service of process.

Lenovo appears to have no interest in actually litigating this case but, rather, in using the Court as leverage in negotiations.  Ex. D, ("In the event that we are unable to agree upon FRAND terms consistent with the ETSI IPR Policy, Lenovo has asked the court to determine FRAND

1    licensing terms and rates for the parties.").  As Judge Andrews of the District of Delaware aptly

2    noted when faced with a similar preemptive filing, these types of claims "have little utility and serve

3    little to no useful purpose" as they effectively seek an advisory opinion from the court to "give a

4    data point from which the parties could continue negotiations." *Interdigital Communications, Inc.,*

5    *v. ZTE Corp.,* Civ. No. 1:13-cv-00009-RGA, 2014 U.S. Dist. LEXIS 72389, at *9-10 (D. Del May

6    28, 2014) (granting motion to dismiss counterclaims that InterDigital did not offer FRAND rates

7    and to determine a FRAND rate between the parties).

8    **IV.     ARGUMENT**

9         **A.     Legal Standards**

10            **1.     Personal Jurisdiction**

11         "Determining whether jurisdiction exists over an out-of-state defendant involves two

12    inquiries: whether a forum state's long-arm statute permits service of process and whether assertion

13    of personal jurisdiction violates due process." *Autogenomics Inc. v. Oxford Gene Tech Ltd.*, 566

14    F.3d 1012, 1017 (Fed. Cir. 2009) (internal quotations omitted).  Because California's long-arm

15    statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry:

16    whether jurisdiction comports with federal due process.  *Daimler AG v. Bauman*, 571 U.S. 117, 125

17    (2014) ("California's long-arm statute allows the exercise of personal jurisdiction to the full extent

18    permissible under the U.S. Constitution. We therefore inquire whether the Ninth Circuit's holding

19    comports with the limits imposed by federal due process.").  To satisfy due process where the

20    defendant is not present in the forum, the defendant must have minimum contacts with the forum

21    such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial

22    justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal citations omitted).  Said

23    another way, to be subject to jurisdiction in a given forum, the defendant must have "purposefully

24    availed itself of the privilege of conducting activities within the forum State or have purposefully

25

26

27
                                                        -6-
28

directed its conduct into the forum State." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1786 (2017) (internal quotations omitted).

### 2.      Federal Rule of Civil Procedure 4(k)(2) – Personal Jurisdiction

Federal Rule of Civil Procedure 4 governs the exercise of personal jurisdiction in Federal Courts.  Rule 4(k)(2) establishes personal jurisdiction over a defendant who "is not subject to jurisdiction in any state's courts of general jurisdiction" so long as "exercising jurisdiction is consistent with the United States Constitution and laws."  *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) ("Rule 4(K)(2) contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.") (internal quotations and citations omitted).

### 3.      Choice of Law

Where an action for declaratory judgment involves only claims of patent non-infringement, courts "apply Federal Circuit law because the jurisdictional issue is intimately involved with the substance of patent laws."  *Xilinx Inc., v. Papst Licensing GmbH Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017).  The Court may rely on Ninth Circuit law governing personal jurisdiction to the extent it is consistent with Federal Circuit authority.  *USA Payments, Inc. v. Hotel Ramada of Nev.*, No. C-01-1450 VRW, 2001 U.S. Dist. LEXIS 9493, at *2-3 (N.D. Cal. June 21, 2001).  For claims other than patent non-infringement and invalidity, Ninth Circuit law applies. *See Silent Drive, Inc. v. Strong Indus.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003) (applying Federal Circuit law in determining personal jurisdiction relating to counts of patent non-infringement and regional circuit law to non-patent counts).[3]

### B.      The Court Cannot Lawfully Exercise Personal Jurisdiction Over IPCom

Plaintiffs allege IPCom is subject to personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) which states:

---

[3] Under either the application of Federal Circuit or Ninth Circuit law, the Court cannot lawfully exercise personal jurisdiction over IPCom.

(2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

      (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and

      (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2); *see also Touchcom*, 574 F.3d at 1412. "[F]or a court to exercise personal jurisdiction over a defendant under that rule, the plaintiff's claim must arise under federal law, the defendant must not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." *Touchcom*, 574 F.3d at 1412. "The third requirement under Rule 4(k)(2) – the due process analysis – contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009).

      The Court may exercise personal jurisdiction over a defendant through two bases: general or specific jurisdiction. Exercise of general jurisdiction requires continuous and systematic contacts by the defendant with the United States. *Synthes*, 563 F.3d at 1291. To lawfully exercise specific jurisdiction, the Court must determine "(1) whether the defendant 'purposefully directed' its activities at the residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). Plaintiffs bear the burden of proof as to the first two factors, whereas defendant bears the burden of demonstrating the exercise of jurisdiction is unreasonable or unfair in the event the Court determines that the first two elements of the test are met. *Id.*

### 1. The Court Does Not Have General Jurisdiction over IPCom

      A court may assert general jurisdiction over foreign corporations "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 571 U.S. at 127 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564

U.S. 915, 919 (2011)); *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984).  This "fairly high" standard requires the contact with the forum "be of the sort that approximate[s] physical presence."  *Bancroft Masters, Inc., v. Augusta National*, 223 F.3d 1082, 1086 (9th Cir. 2000) (citing *Gates Lear Jet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984)).  Among the factors that courts consider are "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, [] is incorporated there[,]" is registered or licensed to do business in the state, pays taxes in the state, or maintains bank accounts in the state.  *Bancroft*, 223 F.3d at 1082; *see also Daimler*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (internal quotations omitted).

Plaintiffs' allegations evidence the lack of substantial, "continuous or systematic" contacts necessary for this Court to exercise general jurisdiction. A contrary determination would constitute a prohibited, "exorbitant exercise[] of all-purpose jurisdiction [that]  would scarcely permit out-of-state defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."  *Daimler*, 571 U.S. at 139.

## 2.    The Court Does Not Have Specific Jurisdiction over IPCom

For the declaratory judgment patent claims, the Federal Circuit applies "a three-pronged test for specific jurisdiction, which asks whether (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to the defendant's activities with the forum; and (3) assertion of personal jurisdiction is reasonable and fair."  *Synthes*, 563 F.3d at 1291. Ninth Circuit law governs all other claims in the complaint.  In the Ninth Circuit specific jurisdiction is analyzed under a similar three-prong test: whether "(1) the nonresident defendant has *purposefully availed* himself of the privilege of conducting activities in the forum by some affirmative act or conduct; (2) plaintiffs' claims must *arise out of* or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable."  *Roth v. Garcia Marquez*, 942 F.2d 617, 620-21 (9th Cir. 1991); *see also Burger King Corp. v. Rudezewicz*, 471

-9-

U.S. 462, 472-473 (1985) (exercising personal jurisdiction if "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.").  Under either test, Plaintiffs bears the burden of proof as to the first two factors, whereas defendant bears the burden of demonstrating the exercise of jurisdiction is unreasonable or unfair.  *Inamed*, 249 F.3d at 1360; *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) ("[T]he plaintiff cannot simply rest on the base allegations of its complaint.") (internal quotation marks and citation omitted).

**a.      The Court Does Not Have Specific Jurisdiction over IPCom for the Declaratory Judgment of Non-Infringement Claims**

"[T]he nature of the claim in a declaratory judgment action is to clear the air of infringement charges."  *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (internal quotations omitted).  To determine whether a party is subject to specific jurisdiction for declaratory judgement of non-infringement, courts ask "what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities."[4]  *Id*. (internal punctuation omitted); *see also Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (holding that only those activities that relate to the enforcement or defense of a patent can give rise to specific personal jurisdiction for an action for a declaratory judgment of the same patent). However, not all enforcement activities are sufficient to establish specific jurisdiction.  For example, a "patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement" as it "would not comport with fair play and substantial justice."  *Avocent*, 552 F.3d at 1333 (internal quotations omitted).

---

[4] IPCom is not the assignee for U.S. Patent No. 6,307,844 (the "'844 Patent").  While not substantively significant to this motion, IPCom has no standing to assert an action for infringement of the '844 Patent without the involvement of the assignee. Thus IPCom could not even have undertaken any relevant activities with relation to the '844 Patent in this forum.

As noted above, IPCom is a German corporation, organized and existing under the laws of Germany with its principal place of business in Pullach, Germany.  Complaint, ¶ 15; Suh Declaration, ¶¶ 2-3.  IPCom is not domiciled in United States, let alone California.  Suh Declaration, ¶ 6.  IPCom does not maintain an office in the United States.  Suh Declaration, ¶ 3. IPCom is not registered or licensed to do business in the United States.  Suh Declaration, ¶ 9. IPCom does not own, lease, or otherwise utilize real property in the United States.  Suh Declaration, ¶ 7.  IPCom also does not own or lease tangible personal property in the United States.  Suh Declaration, ¶ 8.  IPCom does not pay taxes in the United States.  Suh Declaration, ¶ 10.  IPCom does not have any employees in the United States.  Suh Declaration, ¶ 5.  IPCom does not advertise to U.S. residents and does not pay for any print, radio, television, or any other advertising directed to U.S. residents.  Suh Declaration, ¶ 12.  IPCom does not have any bank accounts in the United States.  Suh Declaration, ¶ 11.

Plaintiffs allege only three facts that purportedly establish personal jurisdiction between IPCom and the United States.  First, Plaintiffs allege that IPCom engaged in "patent license negotiations with Plaintiffs in the United States, which includes a license to a multitude of United States patents."  Complaint, ¶ 16.  As an initial matter, Plaintiffs do not allege that the negotiations that occurred in the United States concerned the patents for which declaratory relief is being sought. Complaint, ¶ 16.  Even if they did, however, that would not be enough to exercise personal jurisdiction because they are analogous to cease-and-desist communications.  *Autogenomics*, 566 F.3d at 1019 (finding in-person negotiations between parties to be "clearly analogous to the cease-and-desist communications at issue….").  Cease-and-desist communications such as "emails and letters from [] counsel to [the infringer] are insufficient to give rise to personal jurisdiction in light of *Red Wing Shoe*."  *Radio Sys. Corp.*, 638 F.3d at  791, *citing Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).  As explained by the Federal Circuit:

> Cease-and-desist letters alone do not suffice to justify personal jurisdiction. Specifically, such letters cannot satisfy the second prong of the Due Process inquiry. Standards of fairness demand that

-11-

[patentee] be insulated from personal jurisdiction in a distant foreign forum when its only contacts with that forum were efforts to give proper notice of its patent rights.

*Red Wing Shoe*, 148 F.3d at 1361.

Unconsummated licensing discussions are even further attenuated contacts with the forum and cannot confer specific jurisdiction over a patentee. *Hildebrand v. Steck Mfg. Co.*, 279 F.3d 1351, 1356 (Fed. Cir. 2002). In *Hildebrand*, the patentee sent multiple "warning letters coupled with offers to negotiate" to alleged infringers in Ohio. *Hildebrandt*, 279 F.3d at 1354-55. Those letters were followed by licensing meetings. *Id.* The district court found the patentee was subject to personal jurisdiction in Ohio based on those negotiations. The Federal Circuit reversed, noting that the patentee's "contacts with the forum do not amount to significantly more than" cease-and-desist letters, and were undertaken "for the purpose of warning against infringement or negotiating license agreements." *Id.* at 1356. This decision is consistent with numerous Federal Circuit decisions that correspondence and meetings to discuss patent licenses categorically do not constitute minimum contacts with a given forum without more. *See, e.g.*, *Red Wing Shoe*, 148 F.3d at 1360-61; *Autogenomics*, 566 F.3d at 1019; *Radio Sys. Corp.*, 638 F.3d at 789; *Maxchief Invs. Ltd. v. Wok Pan Ind. Inc.*, 909 F.3d 1134, 1139-1140 (Fed. Cir. 2018).

Second, Plaintiffs allege upon information and belief that IPCom "began focusing on the US market for additional licensing opportunities." Complaint, ¶ 17. In addition to being purely speculative and lacking factual support, the complaint includes contradictory allegations that, "IPCom's outside counsel in China contacted Plaintiffs' legal office in China." Complaint, ¶ 49. At no time did IPCom begin "focusing on the US market." Suh Declaration, ¶¶ 2-14. IPCom holds patent assets in a variety of jurisdictions, with most of its patent holdings being foreign. Suh Declaration, ¶¶ 13-14. Contrary to Plaintiffs' allegations, IPCom informed Lenovo China (through the dictated channels that happen to be located in the United States) that it was seeking to enforce its non-U.S. patents. Ex. A.

-12-

Third, Plaintiffs allege IPCom "has used threats of litigation in the United States in its attempts to coerce at least Plaintiffs into licensing IPCom's alleged SEPs on non-FRAND terms and conditions." Complaint, ¶ 19.  As an initial matter, Plaintiffs have no factual support regarding any IPCom activity directed at third parties.  Second, the allegation as it relates to Lenovo China and its affiliates is demonstrably false.  IPCom has explicitly stated its intent to sue Plaintiffs in the courts of the United Kingdom.  Ex. A; *see also* Suh Declaration, ¶¶ 15-19.  Moreover, Plaintiffs fail to allege that the purported threat of litigation relates to the patents for which declaratory relief is sought.  Complaint, ¶ 16.  In fact, IPCom has never threatened any party, including Plaintiffs, with United States litigation for infringement of the two patents currently in Plaintiffs' case.  Suh Declaration, ¶¶ 17-18.

Finally, a finding of personal jurisdiction here would not comport with "fair play and substantial justice" when Lenovo China admittedly directed IPCom to its lawyers in the United States to continue licensing discussions with Lenovo China.  Suh Declaration, ¶ 15; *see also Maxchief*, 909 F.3d at  1139-40;  Complaint, ¶ 49 ("After being instructed that Lenovo's senior intellectual property counsel is located in the United States, IPCom began to correspond with Lenovo's United States legal department in early 2018.").  Lenovo's U.S. counsel never stated they represented any entity other than Lenovo China, and did not change the focus of the licensing negotiations to U.S. assets.  IPCom believed, up until the filing of the lawsuit, that they were still dealing with Lenovo China.  Suh Declaration, ¶ 19.  IPCom's enforcement of its European patent rights in the United Kingdom does not subject it to jurisdiction in the United States merely because Plaintiffs may be subjected to the effects of an injunction in a foreign jurisdiction.  *See Maxchief*, 909 F.3d at 1138 ("The fact that an injunction might apply to a Tennessee resident [] and non-party to the action (acting in concert with the defendant) is too attenuated a connection to satisfy minimum contacts.").

IPCom has not purposefully directed any enforcement activities at the United States.  IPCom has been candid regarding its intent to litigate the merits of the dispute between the parties in the

-13-

United Kingdom.  Ex. A.  Its enforcement activities have been directed to the United Kingdom and related to United Kingdom patents asserted against residents of the United Kingdom.  The only contact IPCom has had with the United States is "engaging in licensing negotiations with Plaintiffs in the United States" and, even then, only at Lenovo China's request.  Suh Declaration, ¶ 15.  As the Federal Circuit noted, a "patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement" as it "would not comport with fair play and substantial justice."  *Avocent*, 552 F.3d at 1333 (quotations omitted).  IPCom's limited exposure to the United States for the purposes of licensing negotiations does not subject IPCom to specific personal jurisdiction.  *Hildebrand*, 279 F.3d at  1356.

### b.   The Court Does Not Have Specific Jurisdiction over IPCom for the Breach of Contract and Declaratory Judgment Claims

IPCom is also not subject to personal jurisdiction for Plaintiffs' breach of contract and declaratory judgment claims arising from IPCom's FRAND contractual obligations.  The minimum contacts analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  As explained above, Plaintiffs have not identified any actual activities related to the breach of contract and FRAND declaratory judgment claim between IPCom and the United States.

Plaintiffs recite the following facts in their Complaint relating to the breach of contract: IPCom acquired patent portfolios that included U.S. patents from Hitachi, Ltd. (a Japanese company) and Robert Bosch GmBH (a German company).  Complaint, ¶ 4.  Those patent portfolios are allegedly subject to FRAND commitments made by Hitachi and Bosch.  Complaint, ¶¶ 43-44.  IPCom made subsequent FRAND commitments in 2009 and 2014.  Complaint, ¶ 45.  The parties held licensing negotiations in the United States.  Complaint, ¶ 16.  IPCom made an offer to Lenovo that was ultimately rejected.  Complaint, ¶ 50.

-14-

1    The only relevant activities from which Plaintiffs' breach and FRAND declaratory judgment

2  claims arise occurred outside the United States.  *Walden*, 571 U.S. at  285 ("But the plaintiff cannot

3  be the only link between the defendant and the forum. Rather, it is the defendant's conduct that

4  must form the necessary connection with the forum State that is the basis for its jurisdiction over

5  him.").  Plaintiffs do not allege that IPCom or its predecessors-in-interest to the relevant patents

6  solicited, negotiated, or entered into its FRAND contractual obligations with the European

7  Telecommunications Standard Institute ("ETSI") in the United States.  Plaintiffs do not even allege

8  that IPCom, its predecessors-in-interest to the relevant patents, or even ETSI are located in the

9  United States.  Instead, all parties to the contract are foreign entities: Hitachi, Ltd. (a Japanese

10 company), Robert Bosch GmbH (a German company), IPCom (a German company), and ETSI (a

11 French non-profit organization).  Moreover, no facts have been pled which describe any activity

12 relating to the breach and FRAND declaratory judgment within the United States.

13   To the extent Plaintiffs rely on its allegations that IPCom's offer to license its patent

14 portfolios at an allegedly "supra-competitive" royalty are sufficient contacts with the United States,

15 Plaintiffs are wrong.  Plaintiffs own contacts with the United States are irrelevant because

16 "plaintiff's contacts with the forum … cannot be decisive in determining whether the defendant's

17 due process rights are violated."  *Walden*, 571 U.S. at 284.  IPCom engaged in global licensing

18 discussions with Lenovo.  To the extent that IPCom's licensing communications or offer can be

19 construed as a contact with a forum, that forum should be where Lenovo resides (Hong Kong and/or

20 China).  *Id.*

21                       c.    **The Court Does Not Have Specific Jurisdiction over IPCom for**
                                **the Antitrust Claims**
22

23   For largely the same reasons identified above, IPCom is not subject to specific jurisdiction

24 for Plaintiffs' antitrust claims.  Plaintiffs' antitrust claims stem from the same activities that give

25 rise to the breach and FRAND declaratory judgment claims.  In addition, Plaintiffs' antitrust claims

26 also allege (1) IPCom obtained a monopoly illegally by making false commitments to ETSI, and (2)

27

28

-15-

1   IPCom exploited its unlawful monopoly derived from making the false commitments to ETSI.

2   Complaint, ¶¶ 84-86.  However, absent from the Complaint are any facts linking IPCom's activities

3   to the United States: IPCom and its predecessors-in-interest, none of whom reside in the United

4   States, made FRAND commitments to ETSI (Complaint, ¶¶43-46); IPCom initiated licensing

5   negotiations with Lenovo in China (Complaint, ¶ 49); IPCom contacted United Kingdom retailers

6   regarding possible infringement of IPCom's European patents (Complaint, ¶ 55; Exs. E & F); and

7   IPCom threatened a patent infringement action against Lenovo in the United Kingdom (*Compare*

8   Complaint, ¶ 19 *with* Ex. A).[5]

9       For the same reasons stated above with respect to the breach and FRAND declaratory

10  judgment claims, IPCom is not subject to specific jurisdiction for Plaintiffs' antitrust claims.

11              d.      **Exercising Personal Jurisdiction over IPCom Here Would Be**
                        **both Unreasonable and Unfair**
12

13      The Supreme Court has repeatedly noted that it is "unreasonable and unfair" for a U.S.

14  district court to exercise jurisdiction over foreign litigants when the claim arose out of a foreign

15  transaction.  *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102, 114

16  (1986).  Despite Plaintiffs' mischaracterizations, this dispute is between IPCom (a German

17  company) and Lenovo China (a Hong Kong corporation).  Moreover, the handful of contacts

18  IPCom has had with the United States do not rise to the level supporting the exercise of personal

19  jurisdiction.

20      The Supreme Court has stated, "restrictions on personal jurisdiction are more than a

21  guarantee of immunity from inconvenient or distant litigation" as they "are a consequence of

22  territorial limitations on the power of the respective States." *Bristol-Myers Squibb Co.*, 137 S. Ct. at

23  

24  [5] Plaintiffs' Complaint contains some language copied from a complaint in an unrelated case.  *See*
    *u-blox AG et al. v. Interdigital, Inc. et al.*, 3:19-cv-0001-CAB-BLM.  To clear any ambiguity,
25  IPCom and Plaintiffs do not have a prior license agreement.  *See* Complaint, ¶ 90 ("Absent IPCom's
    wrongful conduct, which resulted in alternate technologies being excluded from the relevant
26  standards, Plaintiffs would be able to obtain a **new license** to access necessary technology in the
    Relevant Technology Markets on FRAND terms.") (emphasis added).
27

28

1    1780.  Plaintiffs have not explained how a United States district court can make binding

2    determinations regarding foreign patent infringement occurring in a foreign country and,

3    implicating foreign patent law.  The reason is that this Court cannot make those decisions.  In *Stein*

4    *Assocs. v. Heat & Control, Inc.*, 748 F.2d 653, 658 (Fed. Cir. 1984), the Federal Circuit considered

5    this same question.  The court confirmed that, "[o]nly a British court, applying British law, can

6    determine validity and infringement of British patents. British law being different from our own,

7    and British and United States courts being independent of each other, resolution of the question of

8    whether the United States patents are valid could have no binding effect on the British court's

9    decision."  *Id*.  Further, Plaintiffs' antitrust allegations are predicated on an alleged breach of

10   IPCom's FRAND commitments to be determined under French contract law.  Thus, French law will

11   control the breach of contract, FRAND declaratory judgment, and antitrust claims.  *See, e.g.*, *Apple*

12   *Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 U.S. Dist. LEXIS 67102, at *37 (N.D. Cal.

13   May 14, 2012).

14          The Court must consider the "procedural and substantive interests of other nations in a state

15   court's assertion of jurisdiction over an alien defendant."  *Asahi*, 480 U.S. at 106.  The Supreme

16   Court has found that these interests are "best served by a careful inquiry into the reasonableness of

17   the assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens

18   on an alien defendant outweighed by minimal interests on the part of the plaintiff or the foreign

19   state."  *Asahi*, 480 U.S. at 106.  Plaintiffs have not articulated any such interests here, either their

20   own or those of the United States in deciding the instant matter.

21          IPCom would also be unduly burdened by having "to travel the distance between [IPCom's]

22   headquarters in [Germany] and the [District] Court of California" as well as "submit its dispute with

23   [Lenovo China] to a foreign nation's judicial system."  *Asahi*, 480 U.S. at 114.  And, while the court

24   must consider a variety of interests when determining personal jurisdiction is present, "the primary

25   concern is the burden on the defendant."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780.  Further,

26   the United Kingdom has a "far greater interest in resolving the dispute" because the claims for

27

28
                                                    -17-

1  declaratory relief arose from communications made in the United Kingdom against United

2  Kingdom residents regarding infringement of European patents.  *Daimler*, 571 U.S. at 146 (noting

3  that the exercise of specific personal jurisdiction by a Californian court over "Argentine plaintiffs

4  suing a German defendant for conduct that took place in Argentina" was clearly "unreasonable")

5  (Sotomayor, concurring); *See e.g.,* Exs. A, E & F (all of IPCom's enforcement activity was directed

6  outside of the United States and relating to foreign patents).

7  **V.      CONCLUSION**

8          As a matter of law, IPCom's meetings in the United States and correspondence with

9  individuals in the United States – its only contacts with the United States - do not constitute

10  purposeful availment supporting the exercise of personal jurisdiction.  Plaintiffs' attempt to frustrate

11  IPCom's rights to redress infringement of its non-U.S. patents is nothing more than prohibited

12  jurisdictional overreach.  For all of the foregoing reasons, IPCom respectfully asks that the Court

13  dismiss the complaint in its entirety for lack of personal jurisdiction.

14

15  Dated:  July 2, 2019                           Respectfully submitted,

16                                                 MINTZ LEVIN COHN FERRIS GLOVSKY
                                                     AND POPEO P.C.

17

18                                                 _/s/ Stephen J. Akerley_
                                                   By:   Stephen J. Akerley
19                                                       Philip C. Ducker
                                                         Adrian Kwan
20

21                                                 Attorneys for Defendant
                                                   IPCom GmbH & Co. KG
22

23

24

25

26

27

28

-18-