United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LENOVO (UNITED STATES) INC., et al., | Case No. 5:19-cv-01389-EJD |
| Plaintiffs, | **ORDER AUTHORIZING DISCOVERY RE SPECIFIC PERSONAL JURISDICTION; STAYING ALL OTHER DISCOVERY; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION** |
| v. | |
| IPCOM GMBH & CO., KG, | |
| Defendant. | |

Re: Dkt. Nos. 18, 40

Plaintiffs Lenovo (United States) Inc. ("Lenovo US") and Motorola Mobility LLC ("Motorola," or collectively with Lenovo US, "Plaintiffs") initiated this action against DefendantIPCom GmbH & Co., KG ("IPCom" or "Defendant") for breach of contract; declaratory judgment; antitrust monopolization in violation of Section 2 of the Sherman Act; and declaratory judgment of non-infringement of U.S. Patent No. 6,307,844 and No. 6,920,124. The suit is predicated on Plaintiffs' allegation that IPCom failed to offer Plaintiffs a license to its alleged standard essential patents ("SEPS") relevant to the 2G, 3G, and 4G cellular standards on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions. Comp. ¶ 1.

IPCOM, a company organized and existing under the laws of Germany, moves to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).[1] Dkt. No. 18. Plaintiffs move for an anti-suit injunction. Dkt. No. 40. More specifically, Plaintiffs request

---

[1] Defendant is directed to review the Court's Standing Order For Civil Cases as neither of its briefs are in compliance with the Order. *See* ¶ IV.A.4.

that this Court (1) enjoin IPCom from prosecuting the patent infringement action IPCom filed in the United Kingdom against Plaintiffs' U.K. affiliates; and (2) enjoin IPCom from instituting against Plaintiffs, Plaintiffs' affiliates, or any of their customers any action alleging infringement of IPCom's claimed 2G, 3G and/or 4G SEPs during the pendency of this action.[2]  The motions were heard on November 14, 2019.  For the reasons set forth below, the parties are granted leave to conduct jurisdictional discovery, after which the parties may renew their respective motions.

## I.  BACKGROUND[3]

Plaintiff Lenovo US is a corporation organized under the laws of the State of Delaware, with its principal place of business in Morrisville, North Carolina.  Compl. ¶ 12. Plaintiff Motorola is an affiliate of Lenovo US organized under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois.  *Id.* ¶ 13.  Lenovo US's parent, Lenovo Group Limited ("Lenovo China"), acquired Motorola.  *Id.*

Plaintiffs are leading providers of wireless devices, including tablets, laptops, and mobile phones.  *Id.* ¶ 1.  Many of Plaintiffs' products rely on cellular connectivity.  *Id.* ¶ 2.  Cellular connectivity requires the use of widely adopted cellular standards—such as second generation ("2G"), third generation ("3G"), and/or fourth generation ("4G")—adopted by various standard setting organizations ("SSOs").  *Id.*  The European Telecommunications Standards Institute ("ETSI") is one such SSO.  *Id.*

IPCom claims to own patents that have been declared essential to the cellular standards adopted by ETSI and implemented by Plaintiffs' products.  *Id.* ¶ 3.  As such, IPCom's patents are encumbered under ETSI's Intellectual Property Rights ("IPR") Policies, and thus must be licensed

---

[2]  By order of the French court dated November 8, 2019, Plaintiffs were required to withdraw their motion for an anti-suit injunction "in so far as it relates directly or indirectly to any legal proceedings initiated or likely to be initiated by [IPCom] before the French courts having jurisdiction in respect of alleged acts of infringement of the French part of the European patent EP 1 841 268 B2."  Notice of Partial Withdrawal of Pls.' Motion for Anti-Suit Injunction 2 (Dkt. No. 58).  Plaintiffs are not withdrawing the motion in any other respect.  *Id.*

[3] The Background is a summary of the allegations in the Complaint.

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

on FRAND terms and conditions to all potential implementers of the standards, such as Plaintiffs. *Id.*

IPCom is a company organized and existing under the laws of Germany, with its principal place of business in Pullach, Germany. *Id.* ¶ 15. IPCom is "partnered" with United States company Karols Development Co LLC (*id.* ¶ 18) and Fortress Investment Group (Rodewald Decl. Ex. 30).

IPCom is a member of ETSI and has promised to license its intellectual property rights related to *all* ETSI standards made by it *and/or its affiliates* on FRAND terms and conditions. *Id.* ¶ 4. A majority of the patents under IPCom's ownership or control were obtained from Robert Bosch GmbH ("Bosch") or Hitachi Ltd. ("Hitachi"), both of whom promised to license their alleged SEPs on FRAND terms and conditions. *Id.* As a successor-in-interest to those patents, IPCom is obligated under the FRAND commitments made by both Bosch and Hitachi. *Id.* Plaintiffs are third-party beneficiaries of IPCom's FRAND promises to ETSI. *Id.* ¶ 6.

IPCom breached the promises made to ETSI by failing to offer a license to Plaintiffs on FRAND terms and conditions. *Id.* ¶ 7. Moreover, IPCom's promises to license essential patents on FRAND terms and conditions were false. *Id.* Plaintiffs are ready and willing to license IPCom's SEPs, but IPCom's royalty demands for a patent license violate its FRAND commitments. *Id.* ¶ 8. IPCom is attempting to seek supra-competitive royalty rates for a license to its 2G, 3G, and 4G patents; demanding Plaintiffs pay royalties for patents that are not essential to the ETSI standards; and demanding Plaintiffs pay royalties for expired patents or patents that will expire during the course of the proposed license. *Id.* Further, in an attempt to coerce Plaintiffs to enter into a license that is not on FRAND terms and conditions, IPCom told at least one of Plaintiffs' customers that its sales of Plaintiffs' products "put it at serious legal and financial risk." *Id.* ¶ 9.

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION

3

## II. STANDARDS

### A. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows a party to challenge the court's personal jurisdiction over a party. "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)). If a court decides the motion without an evidentiary hearing, "the plaintiff need only make a prima facie showing of the jurisdictional facts." *Id.* (quoting *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 127–28 (9th Cir. 1995)). In such cases, the inquiry is whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and any conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor. *Id.*

A court's power to exercise jurisdiction over a party is limited by both statutory and constitutional considerations. First, a long-arm statute must confer jurisdiction over a defendant. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006) (citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996)). California's long arm statute is coextensive with the limits of due process. *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).

Second, for a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945); *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 109 (1987) ("[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

4

purposefully established 'minimum contacts' in the forum State.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

Under the minimum contacts test, jurisdiction can be either "general" or "specific." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (per curiam), *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014). "A court may exercise specific jurisdiction where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Hanson v. Denckla*, 357 U.S. 235, 251 (1958)). "Alternatively, a defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contact with the forum." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n.9 (1984)).

**B.     Federal Rule of Civil Procedure 4(k)(2)-Personal Jurisdiction**

Federal Rule of Civil Procedure 4(k)(2) states:

> (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2). Rule 4(k)(2) establishes personal jurisdiction over a defendant who "is not subject to jurisdiction in any state's courts of general jurisdiction" so long as "exercising jurisdiction is consistent with the United States Constitution and laws." *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) ("Rule 4(k)(2) contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits.") (internal quotations and citations omitted). "[F]or a court to exercise personal jurisdiction over a defendant under that rule, the plaintiff's claim must arise under federal law, the defendant must

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION

not be subject to jurisdiction in any state's courts of general jurisdiction, and exercise of jurisdiction must comport with due process." *Touchcom*, 574 F.3d at 1412. "The third requirement under Rule 4(k)(2) – the due process analysis – contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com. de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009).

## III. DISCUSSION

IPCom argues that the Complaint contains no facts to support this Court's exercise of personal jurisdiction over IPCom. IPCom presents several undisputed facts to underscore its lack of contacts with the United Sates. It is undisputed that IPCom is a small company, having just six (6) employees, with its sole place of business located in Germany. Suh Decl. in Support of Defs.' Mot. to Dismiss ¶¶ 3-4. Further, IPCom has never conducted business in the United States. *Id*. ¶¶ 2-14. IPCom has never employed anyone in the United States. *Id*. ¶ 5. IPCom has also never owned or leased property in the United States, and has never had a place of business here. *Id*. ¶¶ 3, 7-8. Nor has IPCom ever paid taxes in the United States. *Id*. ¶ 10. IPCom has never sought to have its rights adjudicated by a court in the United States other than when compelled to answer a single complaint for declaratory judgment brought by an infringer.[4] *Id*. ¶¶ 14, 17-18.

IPCom represents that its contacts with the United States consist solely of meetings in the United States with potential licensees, written correspondence with United States licensees, and telephone calls to and from the United States related to license negotiations. IPCom's Mot. To Dismiss 3 (citing Suh Decl. ¶ 15). IPCom's meetings in the United States have generally occurred only when specifically requested or dictated by potential licensees, as is the case with Lenovo

---

[4] *See HTC Corp. v. IPCom GMBH & Co., KG*, 285 F.R.D. 130, 131 (D.D.C. 2012) ("HTC filed this suit seeking a declaratory judgment of noninfringement of the 216 Patent. IPCom counterclaimed for infringement of the 216 Patent as well as the 751 and 830 Patents."); *IPCom GmbH & Co. v. HTC Corp.*, 655 F.App'x 831 (Fed. Cir. 2016) ("HTC Corporation . . . requested inter partes reexamination . . . . "); *IPCom GmbH & Co. v. HTC Corp*., 861 F.3d 1362 (Fed. Cir. 2017); *IPCom GmbH & Co. KG v. Apple Inc.*, No. 14mc80037-EJD, 61 F. Supp. 3d 919 (N.D. Cal. 2014) (IPCom initiated litigation seeking the court's assistance to obtain discovery from Apple).

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

6

China.  *Id.*

Implicitly acknowledging the facts above, Plaintiffs refrain from arguing that this Court may exercise general jurisdiction over IPCom.  Instead, Plaintiffs rely exclusively on specific jurisdiction.

The Ninth Circuit applies a three-prong test when analyzing a claim of specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger,* 374 F.3d at 802.  Although all three requirements must be met, the Ninth Circuit] has stated that in its consideration of the first two prongs, "[a] strong showing on one axis will permit a lesser showing on the other."  *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc)).  "That means that a single forum state contact can support jurisdiction if the cause of action arises out of that particular purposeful contact of the defendant with the forum state."  *Id.* (citing *Yahoo! Inc.*).  The plaintiff bears the burden of satisfying the first two prongs.  *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).  If the plaintiff satisfies these two prongs, the burden shifts to the defendant "to present a compelling case" that the exercise of jurisdiction would not be reasonable.  *Burger King*, 471 U.S. at 477.

Here, Plaintiffs assert that the Court has specific personal jurisdiction over IPCom for the antitrust claim because IPCom "purposefully directed" its anticompetitive activity to the United Sates, causing foreseeable harm to Plaintiffs and to competition in the United States.  Pls.' Opp.

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION

7

To IPCom's Mot. to Dismiss 1.[5]  Plaintiffs also contend that the Court may exercise specific personal jurisdiction over IPCom pursuant to Federal Rule of Civil Procedure 4(k) for the two claims for declaratory judgment of non-infringement because IPCom has sufficient minimum contacts with the United States as a whole giving rise to Plaintiffs' claims, and the exercise of jurisdiction comports with due process.  *Id.*[6]

## A. Specific Jurisdiction Over IPCom For Antitrust Claim

Plaintiffs rely on the Clayton Act, 15 U.S.C. § 22, as the statutory basis for exercising personal jurisdiction.  *See* 15 U.S.C. § 22 ("Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."); *see also KM Enters., Inc. v. Global Traffic Techs., Inc.,* 725 F.3d 718, 724 (7th Cir. 2013) ("[Section 12's] first clause sets venue anywhere the corporation is an 'inhabitant', is 'found,' or 'transacts business,' while the second clause provides for nationwide (indeed, worldwide) service of process and therefore nationwide personal jurisdiction." (citations omitted)).  Because the Clayton Act authorizes nationwide service of process, the relevant forum for evaluating minimum contacts in this case is the United States.  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (quoting *Go–Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1416 (9th Cir. 1989)); *In  re Cathode Ray Tube Antitrust Litig.,* No. 07-5944 SC, 2014 WL 2581525, at *4 (N.D. Cal. June 9, 2014).

Plaintiffs contend that IPCom made false declarations to ETSI and the Third Generation

[5] Plaintiffs do not argue purposeful availment as a basis for exercising specific jurisdiction, and therefore have waived the argument.  *Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006) (finding issue waived when not raised in opposition to motion to dismiss).
[6] Plaintiffs assert that if the Court finds personal jurisdiction over IPCom for the antitrust claim or declaratory judgment claim, then pendant personal jurisdiction exists for the remaining claims because they arise out of the same nucleus of operative facts as the antitrust claim.  Pls.' Opp'n 23-24.

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

Partnership Program ("3GPP")[7] that it would license its SEPs on FRAND terms, intending the declarations to be relied on in setting standards that would apply worldwide, including in the United States. Compl. ¶¶ 70-71. Plaintiffs allege that by making false declarations to ETSI, IPCom obtained a monopoly worldwide, including in the United States. *Id*. ¶¶ 4, 42-47, 70-74, 85. IPCom's conduct allegedly manipulated the United States market by locking into United States standards the technology over which IPCom claims to have patent rights, thereby excluding other technologies from the market. *Id*. ¶ 80 ("Because of the lock-in effect described above, IPCom became the only commercially viable seller inside and outside the United States in each of the Relevant Technology Markets."). IPCom then allegedly attempted to "cash in" on its manipulation of the standard-setting process and resultant monopoly in the United States market by demanding supra-competitive royalties on Plaintiffs' United States sales, and threatening to exclude Plaintiffs from the U.S. market by excluding them from practicing the standards. *Id*. ¶¶ 48-57, 86-89; Rodewald Decl., ¶¶ 12, 14 (demanding royalties overwhelmingly based on Plaintiffs' U.S. sales); ¶ 20 (demanding royalties on expired and abandoned patents).

### i. Purposeful Direction

"The Supreme Court has held that due process permits the exercise of personal jurisdiction over a defendant who 'purposefully direct[s]' his activities at residents of a forum, even in the 'absence of physical contacts' with the forum." *Schwarzenegger*, 374 F.3d at 803 (quoting *Burger King*, 471 U.S. at 476 (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774–75 (1984)). "A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant' actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at 803.

In the context of tortious conduct, purposeful direction is determined by "applying an

---

[7] The EGPP is a global collaborative partnership of SSOs and other industry partnerships that develop technical specifications for cellular standards and promulgates world-wide standards. Pls.' Opp'n 7-8.

'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Yahoo! Inc.*, 433 F.3d at 1206). "The 'effects' test, which is based on the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (quoting *Brayton Purcell LLP v. Recordon & Reconrdon*, 606 F.3d 1124, 1128 (9th Cir. 2010)). Courts in the Ninth Circuit apply this purposeful direction test to antitrust cases. *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1148 (S.D. Cal. 2018); *see also Western States*, 715 F.3d at 743; *In re Cathode Ray Tube Antitrust Litig. ("CRT I")*, 27 F. Supp. 3d 1002, 1011 (N.D. Cal. 2014).

Here, Plaintiffs' suit is predicated on two intentional acts: (1) IPCom made false declarations to ETSI and 3GPP that it would license its SEPs on FRAND terms; and (2) IPCom demanded supra-competitive royalties from Plaintiffs. These intentional acts arguably satisfy the "intentional act" prong of the *Calder* effects test. *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d at 1156 ("The intentional act threshold is not a high bar."). There are, however, insufficient allegations to satisfy the second and third prongs of the effects test.

### a. FRAND Declarations Were Not Expressly Aimed At The United States

The Complaint alleges that after IPCom acquired a mobile phone patent portfolio from Bosch and a portfolio of mobile telecommunication patents from Hitachi, it made FRAND declarations to ETSI. Compl. ¶¶ 45-46. ETSI is a French organization that develops worldwide standards. The FRAND declarations are not directed to any particular jurisdiction. Plaintiffs do not allege that IPCom or its predecessors-in-interest to the relevant patents—Bosch and Hitachi—ever solicited, negotiated, or entered into FRAND contractual obligations with the ETSI in the United States or for specifically United States patents.

The Court concludes that IPCom's FRAND declarations were not "expressly aimed" at the

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

10

United States. *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp. ("EcoDisc")*, 711 F. Supp. 2d 1074, 1092 (C.D. Cal. 2010). In *EcoDisc*, the licensor of a new technology for manufacturing thin optical .6 mm discs sued the optical disc standard-setting organization, DVD Forum, and the Japanese corporation that held the exclusive license to the DVD Format standard and Logo. The Defendants allegedly threatened all the disc replicators licensees that if they used the new technology, they would be in breach of their license agreements; placed false information about the new technology in the marketplace; and conspired to keep the new thin optical discs out of the market. Plaintiffs asserted a multitude of claims, including claims for violation of the Sherman Act, Cartwright Act, and Lanham Act. DVD Forum moved to dismiss for lack of personal jurisdiction. The *EcoDisc* court rejected the plaintiff's contention that DVD Forum aimed its conduct to the United States by seeking to have its standards and formats used for all DVD discs replicated in the United States. The *EcoDisc* court reasoned:

> . . . in the context of the "intentional act" test, the Ninth Circuit construes the term intent "as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." [footnote and citation omitted]. Therefore, DVD Forum's purpose of having its standard DVD formats and specifications accepted and used on a worldwide basis cannot be considered an intentional act for the purpose of express aiming. For the same reason, the alleged conspiracy to foreclose EcoDisc from the optical disc market cannot qualify as an intentional act because it constitutes an intent to accomplish a result.

*Id.* at 1092.

Like DVD Forum, IPCom is alleging an intent to accomplish a result rather than an intent to perform an actual, physical act in the real world. IPCom allegedly intended to lock in standard technologies over which it claims patent rights and to exclude other technologies from the market. Compl., ¶ 80 ("Because of the lock-in effect described above, IPCom became the only commercially viable seller inside and outside the United States in each of the Relevant Technology Markets."). IPCom's *intent* to accomplish the lock-in is no more an intentional *act* express aimed at the United States than DVD Forum's "purpose of having its standard DVD

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

11

formats and specifications accepted and used" worldwide.

The plaintiffs in *EcoDisc* further contended that DVD Forum's website posting of an announcement regarding 0.6 mm discs constituted an intentional act expressly aimed at the forum. The *EcoDisc* court rejected the argument because the announcement did not "target" California or American residents in particular. *Id*. "It applied, and was viewed, internationally." *Id*. Like the website announcement in *EcoDisc*, IPCom's FRAND declarations did not target the United States. Instead, the declarations were directed internationally. Plaintiffs acknowledge this fact in their opposition brief. Pls.' Opp'n 13 ("IPCom made false declarations to ETSI and 3GPP that it would license its SEPs on FRAND terms, intending the declarations to be relied on in setting standards that would apply worldwide, including in the U.S.").

Citing to a plethora of cases, Plaintiffs argue that the purposeful direction test is satisfied because IPCom made the FRAND declarations "intending" the declarations to be relied on in setting standards that would apply worldwide, including in the U.S.; this conduct manipulated the United States market; and then IPCom "attempted to 'cash in' on its manipulation." Pls.' Opp'n 12-13. None of the cases cited by Plaintiffs presents facts analogous to this case. None of them involved acquisition of SEPs. None involved standards or standard setting organizations. None of them were predicated upon unconsummated licensing discussions. Instead, in each case the defendants allegedly took physical actions in the real world—price fixing—that were expressly aimed at the forum state. *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d at 1160-61 (finding jurisdiction over defendant in a price-fixing conspiracy where defendant's "executives and partners were involved in the direction and control of Bumble Bee … a U.S.-based company" and met and communicated with Bumble Bee and coconspirators about the conspiracy); *Western States*, 715 F.3d 716, 744 (9th Cir 2013) (finding jurisdiction over defendants who allegedly violated antitrust laws by manipulating the price of natural gas, where the defendants' actions were "targeted at a plaintiff whom the defendant knows to be a resident of the forum state"); *CRT I*, 27 F. Supp. 3d at 1012 (finding personal jurisdiction over defendant in a

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

12

price-fixing conspiracy because of defendant's "direct sales to a United States business…"); *In re Capacitors Antitrust Litig.*, 2015 U.S. Dist. LEXIS 76557, at *17-18 (N.D. Cal. June 11, 2015) (finding jurisdiction where "NCC in Japan sent electrolytic capacitors directly to company customers in the United States"); *Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*, 277 F. Supp. 3d 521, 591-595 (S.D.N.Y. 2017) (finding jurisdiction over defendants who allegedly manipulated a benchmark interest rate for certain loans because defendants "did not have operations in the United States"); *In re N. Sea Brent Crude Oil Futures Litig.*, No. 13-md-02475, 2017 U.S. Dist. LEXIS 88316 (S.D.N.Y. June 8, 2017) (finding jurisdiction over defendant who allegedly manipulated crude oil prices because defendant directed trades on the New York Mercantile Exchange).

Here, IPCom has allegedly taken only two actions thus far: acknowledging its FRAND obligations and terminating licensing discussions. IPCom is not alleged to have caused increased prices, as was alleged in the cases relied upon by Plaintiffs. Plaintiffs' allegations of foreseeable harm to the United States are insufficient for this Court to exercise personal jurisdiction over IPCom. "For the express aiming element, the Ninth Circuit has made clear that Calder requires 'something more' than a foreign act that has foreseeable effects in the forum state." *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d at 1158.

> b. <u>Negotiations Over Royalties Were Not Expressly Aimed At United States</u>

In addition to the FRAND declarations, Plaintiffs rely on IPCom's conduct during negotiations over royalties to supply the requisite contacts with the United States. IPCom allegedly demanded supra-competitive royalties from Plaintiffs based overwhelmingly on Plaintiffs' United States sales. Compl. ¶¶ 48-57, 86-89; Rodewald Decl., ¶¶ 12, 14, 2. Plaintiffs argue that these allegations must be accepted as true and are sufficient to confer jurisdiction.

Apart from the allegations in the complaint, Plaintiffs also present evidence to augment their contention that IPCom directed its anticompetitive conduct to the United States. During negotiations, IPCom cited to its United States patents as "representative patents" for the majority

of patents it sought to license Plaintiffs (Rodewald Decl. ¶ 15) and demanded licenses for numerous expired or abandoned United States patent (*Id*. ¶ 20; Compl. ¶¶ 51, 72, 86). Moreover, 70% of the royalties IPCom demanded were based on Plaintiffs' United States sales and were denominated in United States dollars. *Id*. ¶¶ 12, 14, Ex. 18, 23, 27. According to Plaintiffs, IPCom also sent demands and letters to Plaintiffs in the United States; employed an agent in, and sent representatives to, the United States to make anticompetitive demands; negotiated with and licensed United States companies (including Plaintiffs); justified its royalty demands based on United States law; and threatened litigation in the United States to force Plaintiffs to accept IPCom's supra-competitive demands. IPCom also obtained United States funding to purchase United States patents and pledged United States patents as security to a United States company for additional funding.

Based upon a review of the allegations and the evidence, the Court concludes that IPCom's licensing negotiations were not purposefully directed to the United States. According to the allegations in the complaint, IPCom was engaged in negotiations with Lenovo Group LTD ("Lenovo China"), a Chinese company headquartered in Hong Kong and Plaintiffs' parent company:

> 49. In or about mid-2017, IPCom's outside counsel in China contacted Plaintiffs' legal office in China regarding a license to IPCom's patent portfolio. After being instructed that Lenovo's senior intellectual property counsel is located in the United States, IPCom began to correspond with Lenovo's United States legal department in early 2018. During 2018, Lenovo and IPCom exchanged correspondence and patent claim information. However, IPCom did not provide an official licensing proposal until a meeting in Germany in September 2018.

Compl. ¶ 49. Thus, it is undisputed that IPCom made contact with Lenovo in the United States after being instructed to do so. At Lenovo China's direction, IPCom contacted Ms. Tsirigotis, who identified herself as "Director of Licensing for Lenovo for this matter." Decl. of Stephen J. Akerley In Supp. of Defs.' Mot. to Dismiss, Ex. H. Before this lawsuit was filed, IPCom believed at all times that it was engaged in negotiations with Lenovo China. Suh Decl. ¶ 9.

Nobody at Lenovo told IPCom that IPCom was negotiating with Lenovo US or that Ms. Tsirigotis represented only Lenovo US. Ms. Tsirigotis's email address block identifies her as "Director of Licensing" for "Lenovo" and did not specify that "Lenovo" referred only to Lenovo US. Rodewald Decl., Ex. 14. Ms. Tsirigotis's LinkedIn account also indicates that she works for "Lenovo" and links to Lenovo Group's company profile. Akerley Decl., Exs. I, J. That Lenovo China's Director of Licensing happens to be located in the United States, and apparently also represents Plaintiffs, does not demonstrate IPCom's purposeful direction to the United States. *See Elec. for Imaging, Inc. v. RAH Color Tech. LLC*, No. 18-1612 WHO, 2018 WL 5304838, at * 6 (N.D. Cal. Oct. 24, 2018) ("[T]he happenstance location of Xerox's counsel (in California) cannot be pinned to an affirmative choice by RAH to conduct business in California or benefit from California law.").

Lenovo US contends that it is irrelevant as a matter of law which legal entity IPCom thought it was negotiating with because all that is required for personal jurisdiction is that IPCom have "minimum contacts" with the United States. Lenovo US's argument might have some merit in a general jurisdiction analysis, but the issue here is whether there is specific jurisdiction. "For specific jurisdiction, the 'minimum contacts' prong requires the plaintiff to show that the defendant 'has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Foundation*, 297 F.3d 1343, 1350 (Fed. Cir. 2002). "[T]he defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Who IPCom intended to negotiate with is relevant to whether or not IPCom purposefully directed its activities at the United States and whether this litigation results arises out of those activities.

The Court rejects Plaintiffs' argument that IPCom's purported invocation of the protections of United States law during license negotiations supplies the requisite minimum contact for purposes of specific jurisdiction. IPCom did not invoke the protections of the United

States, but instead stated that it was both willing to provide a license at a FRAND rate and willing to accept a FRAND rate as determined by the courts in the United Kingdom. Decl. of Stephen J. Akerley In Supp. of Defs.' Mot. to Dismiss, Ex. A ("The license fee . . . closely follows the calculation method set out the in Unwired Planet vs. Huawei decision of Justice Birss in the UK amounts to USD [redacted]. . . . we are prepared to start proceedings in the UK on immediate basis."); G (IPCom's proposal to Lenovo China that the patents Court, High Court of England and Wales, or the UPC determine FRAND terms). IPCom made mention of possible litigation in the United States, stating "in order to avoid legal proceedings in the UK and possibly in Germany as well as in the U.S., IPCom is ready to offer Lenovo/Mortorola an exceptional settlement offer." *Id.*, Ex. A. This singular reference to possible litigation in the United States does not amount to purposeful direction to the United States.

That the licensing negotiations included U.S. patents from which IPCom would derive the bulk of its licensing revenue is also insufficient to establish requisite minimum contacts with the forum. The amount of IPCom's potential licensing revenue for U.S. patents is a function of Plaintiffs' contacts with the forum, not IPCom's contact with the forum.

### ii. Remaining Prongs of Specific Jurisdiction Re Antitrust Claim

Because Plaintiffs have failed to carry their burden of establishing the first prong of the specific jurisdiction test, purposeful direction, the Court need to consider at this time the remaining two prongs, i.e. whether Plaintiffs' antitrust claim arises out of or relates to IPCom's forum-related activities and whether the exercise of jurisdiction over IPCom comports with fair play and substantial justice, i.e., it must be reasonable.

### B. Specific Jurisdiction Over IPCom for Declaratory Judgment of Non-Infringement Claim

Plaintiffs' fourth cause of action is for Declaratory Judgment of Non-Infringement of U.S.

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

Patent No. 6,307,844[8] ('844 Patent) and the fifth cause of action is for Declaratory Judgment of Non-Infringement of U.S. Patent No. 6,920,124 ('124 Patent). Plaintiffs contend that the Court has personal jurisdiction over IPCom for these claims under Federal Rule of Civil Procedure 4(k).

To determine whether a party is subject to specific jurisdiction for declaratory judgment of non-infringement, courts ask "what extent has the defendant patentee purposefully directed such enforcement activities at residents of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (internal quotations omitted); *see also Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 789 (Fed. Cir. 2011) (holding that only those activities that relate to enforcement or defense of patent can give rise to specific personal jurisdiction for an action for a declaratory judgment of the same patent).

In *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998)), a Minnesota shoe company brought suit for declaratory judgment of noninfringement against HHI, a Louisiana corporation with its principal place of business in New Mexico. HHI's sole business was the licensing and enforcing of two patents. HHI sent letters warning the shoe company of potential infringement and offering a license under one of HHI's patents. The district court determined that it lacked personal jurisdiction over HHI and the Federal Circuit affirmed. The *Red Wing* court explained that although warning letters satisfy the requirement of minimum contacts, "such letters cannot satisfy the [fairness] prong of the Due Process inquiry." *Id*. at 1361. "Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone

---

[8] Although not significant for purposes of analyzing personal jurisdiction, IPCom asserts that it has no standing to assert infringement of U.S. Patent No. 6,307,844 because it is not the assignee of that patent.

would not comport with principles of fairness." *Id*. at 1360-61. Thus, for a court to exercise personal jurisdiction in an action for declaratory relief of non-infringement, there must be "other activities" directed at the forum. *Avocent*, 552 F.3d at 1333. "Examples of these 'other activities' include initiating judicial or extra-judicial patent enforcement within the forum, or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum." *Id*. at 1334; *see also Jack Henry & Assoc. v. Plano Encrypt. Techns. LLC*, 910 F.3d 1199, 1206 (Fed. Cir. 2018) (holding that exercise of personal jurisdiction over defendant who conceded minimum contacts was reasonable and fair because, among other things, defendant had threatened suit against at least eleven alleged infringers conducting business in the forum); *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1357 (Fed. Cir. 2017) (holding that personal jurisdiction over German company was proper in California because defendant conceded that its warning letters sent to the forum satisfied the minimum contacts test and exercise of jurisdiction was reasonable based upon the factors articulated in *Burger King Corp. v Rudzewicz*, 471 U.S. at 477.

Here, Plaintiffs allege three activities that purportedly establish personal jurisdiction for the declaratory relief claim. Each of them is addressed in turn.

### i. Licensing Negotiations Re Two Patents-in-Suit

Plaintiffs allege that IPCom engaged in "patent license negotiations with Plaintiffs in the United States, which includes a license to a multitude of United States patents." Compl. ¶ 16. This is inaccurate. As discussed previously, IPCom believed it was negotiating with Lenovo China, not Lenovo US, to resolve global licensing. Furthermore, the negotiations were not specific to the '844 and '124 Patents. Therefore, Plaintiffs have not satisfied the minimum contacts prong of the personal jurisdiction analysis.

Even if IPCom had negotiated with Lenovo US over the two patents-in-suit, which it did not, the negotiations alone "do not suffice to justify personal jurisdiction in a declaratory judgment action." *Autogenomics, Inc. v. Oxford Gene Technology Ltd.*, 566 F.3d 1012, 1019 (Fed. Cir.

2009) (holding that the district court lacked specific personal jurisdiction over defendant because plaintiff "has failed to allege sufficient activities 'relat[ing] to the validity and enforceability of the patent' in addition to the cease-and-desist communications."); *see also Radio Systems*, 638 F.3d at 791 (concluding that e-mails and letters from defendant's counsel that outlined patent infringement claim and suggested settlement through licensing agreement were insufficient to give rise to personal jurisdiction in light of the principles of *Red Wing Shoe*). When the cease-and-desist letters/settlement negotiations are the only basis for minimum contacts, the plaintiff must satisfy the second prong of the jurisdictional analysis by showing "other activities" directed at the forum. *Avocent*, 552 F.3d at 1333; *see also AU Optronics Corp. America v. Vista Peak Ventures, LLC*, No. 18-4638 HSG, 2019 WL 690282, at *2 (N.D. Cal. Feb. 19, 2019) ("Even threatening a party with suit in an 'infringement letter,' by itself, is not always sufficient to establish personal jurisdiction: generally, there must be some 'other activities' . . . .").

For the reasons discussed below, the "other activities" upon which Plaintiffs rely are insufficient to justify the exercise of specific personal jurisdiction over IPCom.

### ii. Focus On U.S. Market for Additional Licensing Opportunities

Plaintiffs allege on information and belief that IPCom "began focusing on the US market for additional licensing opportunities." Compl. ¶ 17. The Court need not accept this allegation as true because it is too vague and lacks factual support. Moreover, IPCom denies the allegation. IPCom represents that it holds patents in a variety of jurisdictions, with most of its patent holdings being foreign. Suh. Decl. ¶¶ 2-14. IPCom told Lenovo China that it was seeking to enforce its non-U.S. patents. Decl. of Stephen J. Akerley in Support of Defs.' Mot. to Dismiss, Ex. A. Furthermore, before this lawsuit was filed, IPCom believed at all times that it was engaged in negotiations with Lenovo China. Suh Decl. ¶ 19. Communicating with Lenovo China's counsel in the United States is not a purposeful or directed contact with the United States. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) ("Luker argues that all the warning letters but his first were directed to Akro's counsel in North Carolina, not to Akro in Ohio. To sanction this

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT INJUNCTION

19

United States District Court
Northern District of California

argument, we must both ignore basic principles of agency law and 'exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach.'") (internal citation omitted); *see also Maxchief Inv. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134 (Fed. Cir. 2018) (holding that patentee did not create minimum contacts with forum by sending infringement notice letter to defendant's lawyer in the forum). Lenovo China, not IPCom, directed that licensing negotiations be conducted with Ms. Tsirigotis, who happened to be located in the United States.

For the same reason, IPCom's retention of Mr. Ross in the United States is also not a purposeful direction of activity in this forum. As Mr. Ross's profile shows, he was retained to oversee global licensing. Rodewald Decl., Ex. 29. There is no indication that he was hired to conduct any activity in this forum. Therefore, IPCom's retention of Mr. Ross is not a basis for this Court to exercise personal jurisdiction over IPCom. *Radio Sys. Corp.*, 638 F.3d at 792 ("[E]nforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum ....").

### iii. Threats of Litigation

Third, Plaintiffs allege that IPCom "has used threats of litigation in the United States in its attempts to coerce at least Plaintiffs into licensing IPCom's alleged SEPs on non-FRAND terms and conditions." Compl. ¶ 19. The allegation, however, is unsupported by facts. Moreover, IPCom denies the allegation. IPCom has never asserted or threatened to assert the two patents-in-suit against any party. Suh Decl. ¶¶ 17018. With regard to other U.S. patents, IPCom made mention of possible litigation in the United States, stating "in order to avoid legal proceedings in the UK and possibly in Germany as well as in the U.S., IPCom is ready to offer Lenovo/Mortorola an exceptional settlement offer." Suh Decl., Ex. A. This threat of possible litigation in the United States is too attenuated to justify this Court exercising specific personal jurisdiction over IPCom.

### C. Jurisdictional Discovery

"A court may permit discovery to aid in determining whether it has personal jurisdiction."

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION

United States District Court
Northern District of California

*EcoDisc*, 711 F. Supp. 2d 1074 at 1093 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977)). "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery. . . ." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) (quoting *Terracom v. Valley Nat. Bank,* 49 F.3d 555, 562 (9th Cir. 1995). Discovery should be granted, however, "where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Wells Fargo*, 556 F.2d at 430 n. 24.

Although Plaintiffs' assertion of personal jurisdiction is somewhat attenuated, the Court finds that jurisdictional discovery is appropriate to develop the record more fully. Plaintiffs request jurisdictional discovery to establish additional contacts between IPCom and the United States. Specifically, Plaintiffs seek to depose IPCom's managing directors Pio Suh (who recently joined IPCom) and Christoph A. Schoeller and/or Bernhard Frohwitter (who have been with IPCom since its inception) concerning IPCom's current and historical business strategy, FRAND declarations, U.S. funding, patent acquisition strategy, and historical enforcement/licensing strategy. Plaintiffs anticipate that such discovery would likely establish that IPCom's business strategy, including acquisition and enforcement of United States patents, targeted anticompetitive activity to the United States; that IPCom obtained United States funding to acquire and assert United States patents as part of its anticompetitive scheme; that IPCom made FRAND declarations with the intent and knowledge that they would be relied upon to set standards adopted in the United States; that IPCom's United States licensing and non-judicial enforcement activities illegally exploited its monopoly in the United States; and that it employed one or more agents in the United States (such as Roger Ross, among others) to carry out its enforcement and licensing activities. Plaintiffs also seek copies of IPCom's business plans, strategic plans, pitches to and agreements with investors, licenses with U.S. licensees, agreements with its United States agents, and enforcement-related communications with the United States to show that IPCom planned to

Case No.: 5:19-cv-01389-EJD
ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION

1  exploit the United States market, directed its anticompetitive conduct to the United States and

2  purposefully availed itself of the United States in a manner giving rise to Plaintiffs' claim.

3       Plaintiffs' requested discovery is exceedingly broad, especially because only specific

4  personal jurisdiction is at issue. The parties are directed to meet and confer regarding the scope of

5  jurisdictional discovery. Any disputes regarding the scope of jurisdictional discovery are referred

6  to the magistrate judge.

## IV.  CONCLUSION

8       For the reasons set forth above, Lenovo US has failed to make a prima facie showing of

9  personal jurisdiction over IPCom. The parties are granted leave to conduct discovery regarding

10  specific personal jurisdiction only. All other discovery is stayed. All disputes regarding the scope

11  of jurisdictional discovery are referred to the magistrate judge. IPCom's motion to dismiss and

12  Plaintiffs' motion for anti-suit injunction are terminated; the parties may renew their respective

13  motions after jurisdictional discovery has been completed.

14       **IT IS SO ORDERED.**

15  Dated: December 12, 2019

16

17            EDWARD J. DAVILA
          United States District Judge

18

19

20

21

22

23

24

25

26

27  Case No.: 5:19-cv-01389-EJD

28  ORDER AUTHORIZING DISCOVERY RE PERSONAL JURISDICTION; TERMINATING
DEFENDANT'S MOTION TO DISMISS AND PLAINTIFFS' MOTION FOR ANTI-SUIT
INJUNCTION