UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LENOVO (UNITED STATES) INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>IPCOM GMBH & CO., KG,<br><br>Defendant. | Case No. 19-cv-01389-EJD   (VKD)<br><br>**ORDER RE DISPUTES RE JURISDICTIONAL DISCOVERY**<br><br>Re: Dkt. No. 96 |

Plaintiffs Lenovo (United States) Inc. and Motorola Mobility, LLC (collectively, "Lenovo") and defendant IPCom GmbH & Co., KG ("IPCom") ask the Court to resolve several disputes concerning Lenovo's document requests to IPCom. Dkt. No. 96. The Court deems this matter suitable for resolution without a hearing. Civil L.R. 7-1(b). Having considered the parties' lengthy submission, the Court concludes that most of Lenovo's disputed discovery requests exceed the permissible scope of jurisdictional discovery. However, the Court concludes that IPCom must produce some of the disputed discovery within Categories 4, 9, and 11, as described below.

**I.    BACKGROUND**

In this action, Lenovo asserts several claims against IPCom based on IPCom's alleged failure to comply with its obligations to offer licenses to certain declared standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions. Dkt. No. 1. IPCom moved to dismiss the complaint for lack of personal jurisdiction. Dkt. No. 18. In resolving that motion, the presiding judge, the Hon. Edward J. Davila, concluded that Lenovo failed to make a prima facie showing that the Court has personal jurisdiction over IPCom. Dkt.

No. 71 at 22. Judge Davila granted the parties leave to conduct discovery regarding the issue of specific jurisdiction only, as Lenovo does not contend that the Court had general jurisdiction over IPCom. *Id.*

In its February 14, 2020 order, the Court provided guidelines regarding the scope of jurisdictional discovery. Dkt. No. 80 at 6–8. The parties advise that, despite this guidance (or maybe because of it), they have been unable to resolve several disputes and now ask the Court to resolve them. Dkt. No. 96.

## II.   DISCUSSION

The Court assumes familiarity with its order of February 14, 2020, which outlines a framework for assessing the discovery Lenovo seeks from IPCom. The Court considers each of the parties' disputes below.

### A.   Category 1: Suh declaration paragraph 14

Lenovo argues that IPCom should be required to produce "documents supporting, refuting, or otherwise related to" the following statement made by Pio Suh on behalf of IPCom in paragraph 14 of his declaration: "IPCom's licensing revenue is primarily derived from licensing its non-U.S. assets." Dkt. No. 96 at 2. Lenovo reasons that because this paragraph was at issue at the time of the parties' January 31, 2020 discovery dispute, and because both IPCom and Judge Davila referred to this paragraph in discussing specific jurisdiction in connection with IP Com's motion to dismiss, the discovery is "indisputably covered" by the Court's February 14, 2020 order. *Id.* Lenovo also argues that this discovery will permit it to test Mr. Suh's credibility. *Id.* IPCom opposes this discovery on the ground that the statement in paragraph 14 of Mr. Suh's declaration has nothing to do with whether IPCom purposefully directed relevant activities to the United States for purposes of establishing specific jurisdiction. *Id.* at 3.

The Court agrees with IPCom. Lenovo does not explain how the discovery it seeks is relevant to specific jurisdiction but relies almost entirely on an argument about what it believes the Court already ordered. The Court's February 14, 2020 order provided guidelines to assist the parties in resolving their disputes about the scope of permitted discovery. According to that prior order, Lenovo may obtain discovery of matters that IPCom has specifically put at issue with

2

respect IPCom's *relevant* contacts with the United States. The Court is not persuaded that discovery of all of IPCom's licensing revenue and whether that revenue derives from U.S. or non-U.S. assets is relevant to whether the Court has specific jurisdiction of IPCom for purposes of Lenovo's antitrust or patent non-infringement claims. Lenovo's desire to test Mr. Suh's credibility is not a sufficient justification for an order requiring production of these documents.

### B.      Category 2: Planning documents

Lenovo argues that IPCom should be required to produce "[b]usiness plans, strategic plans, pitches to investors, and communications relating to plans or strategies for: (a) acquisition, licensing or enforcement of U.S. patents where the '124 or '844 patent is within the scope of the document or communications; [or] (b) U.S. licensees or potential licensees where the '124 or '844 patent is within the scope of the document or communication." Dkt. No. 96 at 4. Lenovo contends that Federal Circuit authority supports its request for planning documents of this type. *Id.* at 4–5. In addition, Lenovo argues that such documents are relevant to rebutting IPCom's assertions that it believed it was negotiating with Lenovo China and not a U.S.-based Lenovo entity. *Id.* at 5. IPCom responds that what it planned or promised to do is not a relevant consideration in analyzing whether IPCom, in fact, took steps to enforce or commercialize the asserted patents in the United States.

The Court agrees with IPCom. While Lenovo is correct that documents reflecting efforts to commercialize the asserted patents in the United States or to enforce the patents against Lenovo and others in the United States are relevant to determining whether the Court has specific jurisdiction over IPCom, *see, e.g.*, *Genetic Veterinary Sciences v. LABOKLIN GmbH & Co. KG*, 933 F.3d 1302, 1311–12 (Fed. Cir. 2019), documents that merely show planning regarding such steps are not. IPCom represents—and Lenovo does not dispute—that IPCom "has produced all documents that show its actual, physical activities in the United States as they relate to the '124 and '844 [patents]." Dkt. No. 96. at 6. The Court is not persuaded by Lenovo's suggestion that IPCom's purported willingness to negotiate with Motorola—pre-acquisition by Lenovo and while Google still owned Motorola—shows that IPCom intended to negotiate with a U.S.-based Lenovo entity. While Lenovo may seek discovery of which Lenovo entity or entities IPCom believed it

3

1    was negotiating with, Lenovo's discovery request is not reasonably directed to discovery of this
2    information.

### C. Category 3: Licensing and enforcement of asserted patents

Similarly, Lenovo argues that IPCom should be required to produce "[a]ny agreements relating to the acquisition, rights to, enforcement or licensing of U.S. patents where the '124 or '844 patent is within the scope of the agreement (including any investment, acquisition, transfer, pledgee agreements or agreements related to the licensing of the patents to third-parties, where the '124 or '844 patent is within the scope of the agreement)." Dkt. No. 96 at 7. IPCom says that it has produced responsive patent licenses with U.S. entities for the period from 2014 to the date of the complaint. *Id.* at 8. IPCom objects to producing documents that pre-date 2014 and to producing the other categories of agreements encompassed by Lenovo's request. *Id.*

The Court agrees with IPCom. IPCom's acquisition of rights to the asserted U.S. patents and its promises to engage in enforcement and licensing activity with respect to those patents are not relevant to the question of whether IPCom has, in fact, taken steps to license or enforce the asserted patents in the United States. IPCom says it has already produced its license agreements for the '124 and '844 patents and any other documents that reflect IPCom's efforts to enforce either of these patents (*see id.* at 6, 8). Such production is sufficient for purposes of this request. The Court disagrees with Lenovo that IPCom's efforts to acquire rights to these patents or to obtain funding for its endeavors are activities directed to commercialization and enforcement of the patents in the United States, as opposed to preparatory efforts that may (or may not) precede actual commercialization or enforcement in the forum. In *Genetic Veterinary Sciences*, the Federal Circuit relied on "the cease-and-desist letter [sent to accused infringer] taken together with both of [exclusive licensee's] successful efforts to commercialize by sublicensing [the asserted patent] within the United States" in finding support for the "minimum contacts" element of the due process inquiry for specific jurisdiction; the Federal Circuit did *not* rely on the agreement between the patent owner and its exclusive licensee, which required the exclusive licensee to undertake various activities. *See Genetic Veterinary Sciences*, 933 F.3d at 1310–11.

4

### D. Categories 4 and 11: Specific references to asserted patents

The parties agree that IPCom should produce its communications with U.S. entities regarding alleged infringement or licensing of the '124 or '844 patent and records reflecting business travel by IPCom employees or agents that relates to alleged infringement or licensing of either or both patents. *See* Dkt. No. 96 at 8–9. The parties disagree about how to identify such documents. Lenovo contends that any documents that refer to IPCom's "entire U.S. patent portfolio" or "all of IPCom's U.S. SEPs" necessarily include the asserted patents and should be produced. *Id.* at 9. IPCom contends that only documents that specifically reference these patents by number should be discoverable, otherwise IPCom would have to undertake the unduly burdensome task of searching for and producing any document that refers to its U.S. patent portfolio. *Id.* at 9–10.

Neither party cites authority supporting its competing view of the scope of relevant discovery for purposes of Lenovo's patent non-infringement claims. As noted in its February 14, 2020 order, the Court is aware of no authority supporting Lenovo's assertion that forum-related activities that are not specific to the asserted patents, but rather only generally encompassed as part of a group of "U.S. patents," are relevant to the specific jurisdiction inquiry. However, as the Federal Circuit eschews bright line rules in defining what information is relevant to specific jurisdiction, the Court resolves this discovery dispute by attempting to balance Lenovo's need for potentially relevant information about IPCom's forum-related activities with the burden Lenovo's discovery demands create for IPCom as follows:

1. IPCom must produce any license agreement between itself and any U.S. entity, entered into during the period from 2014 to the date of the complaint, that includes a license to the '124 patent or the '844 patent, whether those patents are identified specifically in the agreement or not.[1]

2. IPCom must produce all responsive communications, dated during the period from 2014 to the date of the complaint, that specifically refer to the '124 patent or the '844

---

[1] The Court anticipates that IPCom will have little difficulty identifying such licenses, to the extent it has not already produced them, given its representation that most of its revenue is derived from non-U.S. assets.

5

patent by patent number or application number (or some other unique identifying reference), even if those communications also refer to other patents.

3. IPCom must produce all responsive records of business travel to the United States during the period from 2014 to the date of the complaint, where a purpose of the travel was to discuss enforcement specifically of the '124 patent or the '844 patent against a U.S. entity or to negotiate a license agreement between IPCom and any U.S. entity that includes a license to the '124 patent or the '844 patent. The record of business travel need not reference the patents by number or other unique identifier.

After this production is complete, if Lenovo can demonstrate good cause to obtain discovery of additional communications, it may seek permission to obtain such further discovery after first conferring with IPCom and attempting to obtain IPCom's concurrence.

### E. Category 7: Roger Ross's duties in the United States

Lenovo seeks discovery of "all documents and communications relating to the duties" of IPCom consultant Roger Ross performed on IPCom's behalf in the United States. Dkt. No. 96 at 10. IPCom represents that it has produced Mr. Ross's consulting agreement, amended consulting agreement, and termination letter, and has agreed to produce Mr. Ross for deposition, but it objects to having to search for and produce all other documents and communications that relate to Mr. Ross's duties. *Id*. at 11.

The Court agrees with IPCom that the scope of discovery Lenovo seeks is far broader than what might be relevant to the question of specific jurisdiction. Lenovo's discovery request is not limited to Mr. Ross's duties or obligations relating to the two intentional acts that form the basis of Lenovo's antitrust claim or to IPCom's efforts to commercialize or enforce the asserted patents. Instead, Lenovo demands discovery generally of all documents and communications relating Mr. Ross's duties in the United States, even though the question of whether IPCom is subject to general jurisdiction here is not at issue. IPCom's request for such broad discovery so that it may "test IPCom's representation that Ross's U.S. connection was mere 'happenstance'" is not a sufficient justification for this discovery.

### F. Category 9: IPCom's understanding and belief

The parties agree that Lenovo may discover which Lenovo entity or entities IPCom understood or believed it was negotiating with or intended to negotiate with regarding efforts to enforce or license the patents within the scope of IPCom's allegedly false declaration to ETSI and 3GPP or supra-competitive royalty demands, or regarding efforts to enforce or license the two asserted patents. *See* Dkt. No. 96 at 12, 13. In aid of that discovery, Lenovo argues that IPCom should be required to produce "communications related to or reflecting" the following:

(a) IPCom's knowledge of the roles, responsibilities, or employer of employees or agents of the Lenovo entity or entities with whom IPCom communicated or sought to communicate;

(b) IPCom's reasons for contacting Lenovo Group Ltd.;

(c) Motorola before it was acquired by Lenovo Group Ltd.;

(d) the acquisition of Motorola by Lenovo Group Ltd.;

(e) the corporate relationships of Plaintiffs with Lenovo Group Ltd.;

(f) understanding of the organization of Lenovo Group Ltd.;

(g) plaintiff Lenovo (United States), Inc.; and

(h) the Lenovo entity or entities IPCom intended its negotiations to encompass.

*Id.* at 11. IPCom objects to the scope of Lenovo's demand, and says that it has already agreed to produce "non-privileged documents related to which Lenovo entity or entities IPCom understood or believed it was negotiating with or intended to negotiate with." *Id.* at 13. IPCom does not say how it will determine which documents fall within the scope of that representation, which is the critical issue Lenovo raises.

The negotiations that Judge Davila considered in addressing specific jurisdiction are described in the complaint. *See* Dkt. No. 1 ¶¶ 16, 49-50, 55, 94, 101. These negotiations began in about mid-2017 and extended through March 1, 2019. *Id.* For the most part, Lenovo's sub-categories of requested communications are not reasonably tailored to discovery of information about IPCom's understanding and beliefs about its negotiation partner during the relevant negotiations. Lenovo does not explain how IPCom's knowledge of or communications with

7

Motorola prior to its acquisition by Lenovo Group Ltd. in 2014 or the acquisition itself (categories (c) and (d)) have anything to do with the negotiations described in the complaint. Lenovo's request for all communications related to IPCom's reasons for contacting Lenovo Group Ltd. (category (b)) is too broadly phrased to be a useful tool to obtain relevant discovery of IPCom's understanding and belief. Lenovo's requests for communications related to the corporate relationships between Lenovo (United States), Motorola, and Lenovo Group Ltd., and IPCom's understanding of the organization of Lenovo Group Ltd. (categories (e) and (f)) are closer to the mark, as is the request for communications related to plaintiff Lenovo (United States) (category (g)), but none of these categories is particularly focused on discovery of IPCom's understanding and belief regarding the other party to the negotiations described in the complaint. Finally, Lenovo's request for communications related to the entities IPCom intended its negotiations to "encompass" (category (h)) appears directed to discovery of the anticipated scope of a potential patent license rather than IPCom's understanding and belief about the identity of its negotiation partner.

Presumably, Lenovo has access to all communications it exchanged with IPCom in connection with the negotiations and has access to all representations and statements made by any Lenovo-affiliated negotiator(s) to IPCom. The crux of this dispute is the scope of discovery of IPCom's internal communications or communications with third parties. The Court agrees that IPCom must produce "documents related to which Lenovo entity or entities IPCom understood or believed it was negotiating with or intended to negotiate with." That production should include communications reflecting statements or discussion by IPCom, its employees, agents or consultants about:

1. the particular Lenovo entity or entities that the Lenovo-affiliated negotiator(s) worked for;
2. the particular Lenovo entity or entities that the Lenovo-affiliated negotiator(s) represented in the negotiation;
3. the distinction or lack thereof between Lenovo Group Ltd., Lenovo (United States), and Motorola Mobility; and

8

4. whether engaging in communications with the Lenovo-affiliated negotiator(s) could or should be considered communicating with a U.S. entity.

The relevant time period for this discovery is from about mid-July 2017 through March 1, 2019 because that is the period during which the negotiations described in the complaint occurred. The Courts expects that such communications are likely to shed light on what IPCom understood or believed.

### G.   Joint Marketing Agreement

Lenovo seeks production of a Joint Marketing Agreement ("JMA") that apparently concerns efforts by IPCom to monetize certain patents. Dkt. No. 96 at 14. Lenovo argues that the JMA is "likely to show U.S. activities pertaining to at least the '844 [patent]" and will also show what Mr. Ross's duties were. *Id.* IPCom opposes this discovery on the ground that an agreement reflecting a promise to undertake a monetization effort or to target a particular market is not relevant to specific jurisdiction; rather, specific jurisdiction depends on the nature and extent of IPCom's actual conduct directed to the United States forum. *Id.*

The Court agrees with IPCom and denies Lenovo's request for production of the JMA for the same reasons explained with respect to Category 3 above.

**IT IS SO ORDERED.**

Dated: June 23, 2020

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

9