S. Michael Song (CA State Bar No. 198656)
Charles Hsu (CA State Bar No. 328798)
Dechert LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA 94306
Telephone:   +1 650 813 4800
Facsimile:    +1 650 813 4848
michael.song@dechert.com
charles.hsu@dechert.com

Martin J. Black (PA State Bar No. 54319)
George G. Gordon (PA State Bar No. 63072)
*Pro Hac Vice*
Dechert LLP
Cira Center
2929 Arch Street
Philadelphia, PA  19104
Telephone:   +215 994 4000
Facsimile:    +215 994 2222
martin.black@dechert.com
george.gordon@dechert.com

*Attorneys for Defendant*
*IPCom GmbH & Co. KG*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Lenovo (United States) Inc. and Motorola Mobility, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>IPCom GmbH & Co. KG,<br><br>Defendant. | **Case No. 5:19-cv-01389-EJD**<br><br>**IPCOM'S MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Hearing Date:  May 26, 2022<br>Time: 9:00 am<br>Place:  Courtroom 4, 5th Floor<br>Judge:  The Honorable Edward J. Davila<br><br>Complaint Filed: March 14, 2019<br>**Trial Date: TBD** |

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................................. 1

II.  PROCEDURAL AND FACTUAL BACKGROUND .......................................................... 2

    A.  The Parties and Prior Negotiations .......................................................................... 2

    B.  Procedural Background and the Court's December 12, 2019 Order ........................ 3

    C.  Jurisdictional Discovery, IPCom's Second Motion to Dismiss, and Plaintiffs' Amended Complaint ................................................................................................. 4

III.  LEGAL STANDARD .......................................................................................................... 6

    A.  Personal Jurisdiction ................................................................................................ 6

    B.  Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim ................................................. 7

    C.  Fed. R. Civ. P. 12(b)(1) – Lack of Subject Matter Jurisdiction .............................. 7

IV.  ARGUMENT ....................................................................................................................... 8

    A.  The Court Lacks Personal Jurisdiction Over IPCom ............................................... 8

        1.  The Meetings in this District with Motorola are Insufficient to Establish Specific Jurisdiction in Relation to the Pleaded Claims............... 9

        2.  The IPCom/Lenovo China Negotiations Did Not Entail Contacts With the District ............................................................................................ 9

        3.  Roger Ross's Presence in this District Does Not Establish Jurisdiction ...................................................................................... 10

        4.  Lenovo's Additional Remaining Allegations, Including Licensing Negotiations and Meetings with Apple and Microsoft in this District, Fail to Support a Finding of "Other Activities" for Personal Jurisdiction ................................................................................. 11

        5.  Subjecting IPCom to Jurisdiction in this District Would be Unfair, Unreasonable, and Violate the Traditional Notions of Fair Play and Substantial Justice ......................................................................... 13

    B.  Lenovo U.S. Has Failed to State an Antitrust Claim ............................................. 14

        1.  Lenovo U.S. Fails to Plead Anticompetitive Conduct Required for its Section 2 Monopolization Claim............................................................ 15

        2.  Lenovo U.S. Has Failed to Plead Facts Showing That IPCom's Conduct Caused Antitrust Injury or Injury to Lenovo U.S....................... 18

        3.  Lenovo U.S. Fails to Plead a Properly Defined Antitrust Market ............. 19

1

2

C.     This Court Lacks Subject Matter Jurisdiction over Counts IV and V Due to the Lack of Case or Controversy...................................................................... 20

D.     The Court Should Decline to Hear Lenovo U.S.'s Declaratory Judgment Claims Under Pursuant to the Declaratory Judgment Act.................................................. 22

V.     CONCLUSION ................................................................................................................ 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Co. v. Avery Dennison Corp.*,
  673 F.3d 1372 (Fed. Cir. 2012)..........................................................................21

*Action Embroidery Corp. v. Atl. Embroidery Inc.*,
  368 F.3d 1174 (9th Cir. 2004)..............................................................................6

*Activevideo Networks, Inc. v. Trans Video Elecs. Ltd.*,
  975 F. Supp. 2d 1083 (N.D. Cal. 2013) ....................................................8, 21, 22

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*,
  190 F.3d 1051 (9th Cir. 1999).............................................................................18

*Apple Inc. v. Samsung Elecs. Co.*,
  No. 11-CV-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012) .......................14

*Apple Inc. v. Zipit Wireless, Inc.*,
  No. 5:20-CV-04448-EJD, 2021 WL 533754 (N.D. Cal. Feb. 12, 2021) .........10, 12

*Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.*,
  480 U.S. 102 (1986)......................................................................................13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .........................................................................................7, 18

*Ass'n for Molecular Pathology v. United States PTO*,
  689 F.3d 1303 (Fed. Cir. 2012) .......................................................................8, 21

*Autogenomics Inc. v. Oxford Gene Tech Ltd.*,
  566 F.3d 1012 (Fed. Cir. 2009) .........................................................................6, 10

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008).....................................................................9, 11, 12

*Balistreri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990)..................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................7, 18

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017) ................................................................................6, 13, 14

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007).........................................................................*passim*

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
   429 U.S. 477 (1977) ........................................................................................................ 18

*Coronavirus Reporter v. Apple Inc.*,
   No. 21-05567, 2021 WL 5936910 .................................................................................... 20

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) .......................................................................................................... 6

*EMC Corp. v. Norand Corp.*,
   89 F.3d 807 (Fed. Cir. 1996) ...................................................................................... 23, 24

*Fed. Trade Comm'n v. Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ..................................................................................... *passim*

*FunaiElec. Co., Ltd. v. LSI Corp.*,
   No. 16-1210, 2017 WL 1133513 (N.D. Cal. Mar. 27, 2017) ..................................... 16, 17

*In re Gilead Scis. Secs. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ........................................................................................... 7

*Guebara v. Allstate Ins. Co.*,
   No. 96-1683, 1997 WL 33322250 (S.D. Cal. June 4, 1997) ............................................ 18

*Hewlett-Packard Co. v. Acceleron LLC*,
   587 F.3d 1358 (Fed. Cir. 2009) ....................................................................................... 21

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .......................................................................................................... 6

*Intel Corp. v. Fortress Inv. Grp. LLC*,
   No. 19-7651, 2021 WL 51727 (N.D. Cal. Jan. 6, 2021) .................................... 15, 20, 21

*InterDigital Commc'ns, Inc. v. ZTE Corp.*,
   No. 1:13-CV-00009-RGA, 2014 WL 2206218 (D. Del. May 28, 2014) ........................ 24, 25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) .......................................................................................................... 7

*Levita Magnetics Int'l Corp. v. Attractive Surgical, LLC*,
   No. 19-CV-04605-JSW, 2020 WL 4580504 (N.D. Cal. Apr. 1, 2020) ............................ 10

*Maxchief Investments Limited v. Wok & Pan, Ind., Inc.*,
   909 F.3d 1134 (Fed. Cir. 2018) ....................................................................................... 12

*MedImmune, Inc. v. Centocor, Inc.*,
   409 F.3d 1376 (Fed. Cir. 2005) ......................................................................................... 8

*Microsoft Corp. v. DataTern, Inc.*,
   755 F.3d 899 (Fed. Cir. 2014) ......................................................................................... 22

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

*In re Packaged Seafood Products Antitrust Litigation*,
   338 F.Supp.3d 1118 (2018) .................................................................................... 7

*Radio Sys. Corp. v. Accession, Inc.*,
   638 F.3d 785 (Fed. Cir. 2011) ................................................................................ 13

*Rambus Inc. v. FTC*,
   522 F.3d 456 (D.C. Cir. 2008) .............................................................. 14, 17, 18

*Reyes v. Nationstar Mortg. LLC*,
   No. 15-CV-01109-LHK, 2015 WL 4554377 (N.D. Cal. July 28, 2015) .............................. 24

*Safe Air For Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ................................................................................. 8

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................................ 9, 13

*Shaffer v. Heitner*,
   433 U.S. 186 (1977) ................................................................................................. 13

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ................................................................................. 19

*Stein Assocs. v. Heat & Control, Inc.*,
   748 F.2d 653 (Fed. Cir. 1984) ............................................................................... 14

*TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsson*,
   No. 14-0341, 2016 WL 7049263 (C.D. Cal. Aug. 9, 2016) ........................................ 17

*u-blox AG v. Interdigital, Inc.*,
   No. 19-001, 2019 WL 1574322 (S.D. Cal. Apr. 11, 2019) ......................................... 16

*United States v. Washington*,
   759 F.2d 1353 (9th Cir. 1985) ............................................................................... 24

*W. Min. Council v. Watt*,
   643 F.2d 618 (9th Cir. 1981) ................................................................................... 7

*White v. Lee*,
   227 F.3d 1214 (9th Cir. 2000) ................................................................................. 8

*Wi-LAN Inc. v. LG Elecs., Inc.*,
   382 F. Supp. 3d 1012 (S.D. Cal. 2019) .................................................................. 16

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ................................................................................................... 8

**Statutes**

28 U.S.C. § 1782 ................................................................................................ 1, 5, 12

28 U.S.C. § 2201(a) .............................................................................................. 2, 8

35 U.S.C. § 286 ........................................................................................................ 9

Sherman Act § 2 ................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 9(b) ................................................................................................ 17

Fed. R. Civ. P. 12(b)(1) ............................................................................................ 7

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 7

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT at 9:00 a.m. on May 26, 2022, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Edward J. Davila, located at 280 South 1st Street, Courtroom 4, 5th Floor, San Jose, CA 95113, Defendant IPCom GmbH Co. KG will and hereby does move this Court to dismiss Plaintiffs Lenovo (United States) Inc. and Motorola Mobility, LLC's (collectively, "Lenovo U.S." or "Plaintiffs") Amended Complaint (ECF No. 158) pursuant to Federal Rule of Civil Procedure 12(b)(2), and 12(b)(6) for failure to state a claim, lack of personal jurisdiction, and lack of subject matter jurisdiction.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying exhibits in support thereof, the records in this action and such further evidence and argument that may be presented at the hearing of this motion and that the Court may consider.

**ISSUES TO BE DECIDED**

1. Whether all counts (Counts I, II, III, IV, and V) of Plaintiffs' Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because this Court cannot lawfully exercise personal jurisdiction over IPCom.

2. Whether Lenovo U.S.'s antitrust claim (Count III) should be dismissed for failure to state a claim for relief under Rule 12(b)(6) because IPCom's alleged conduct cannot, as a matter of law, give rise to antitrust liability under Section 2 of the Sherman Act pursuant to the Ninth Circuit's *Qualcomm* decision;

3. Even if Lenovo can bring an antitrust cause of action under the Third Circuit's *Broadcom* decision, whether Lenovo U.S.'s antitrust claim should be dismissed for failure to adequately plead conduct antitrust injury or a plausible product market; and

4. Whether Lenovo U.S.'s claims for declaratory judgment of patent non-infringement (Counts IV and V) should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) given the absence of a case or controversy between the parties.

1         5.     Whether the Court should decline to exercise its discretionary powers under the

2   Declaratory Judgment Act to hear Lenovo U.S.'s claims for declaratory judgment for FRAND

3   claims (Count II) and declaratory judgment of non-infringement (Counts IV and V).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3   This is a foreign dispute between two foreign companies having no relationship to this

4 District.  The real parties to this dispute are Lenovo Group Ltd. ("Lenovo China") (a Chinese

5 company) and IPCom GmbH & Co. KG ("IPCom") (a German company), who were involved in

6 sporadic negotiations over a worldwide license to IPCom's global patent portfolio.  After these

7 negotiations broke down, Lenovo China attempted to use its United States subsidiaries—Lenovo

8 (United States) Inc. ("Lenovo U.S.") and Motorola Mobility, LLC's ("Motorola") (collectively

9 "Plaintiffs")—to manufacture jurisdiction and controversy in this District and the United States

10 where there is none.  This Court saw through this tactic in its earlier order of December 12, 2019

11 (the "Order"), holding that Plaintiffs had failed to make a *prima facie* showing of personal

12 jurisdiction.

13   After the substantial completion of jurisdictional discovery and the issuance of new Ninth

14 Circuit antitrust precedent, Lenovo filed an Amended Complaint, but this too fails to allege

15 sufficient connections to the Northern District of California to support jurisdiction over IPCom.

16 In addition, the Amended Complaint makes no effort to improve on Plaintiffs' antitrust cause of

17 action under § 2 of the Sherman Act.

18   The Court should dismiss this action for multiple reasons:

19   ***First***, the Amended Complaint raises nothing new or of relevance to the jurisdictional

20 question.  There is certainly no basis for the Court to reverse its prior decision on jurisdiction.

21 With respect to the patent declaratory judgment claims, the only allegations in the Amended

22 Complaint that bear any connection to this District are: (1) IPCom's handful of in-person

23 meetings with Motorola in San Francisco in 2012-2014, (2) the retention of an agent, Roger Ross,

24 who kept his home in this District, and (3) meetings and licensing activities with third parties

25 Apple and Microsoft in this District, including the filing of a 28 U.S.C. § 1782 application

26 seeking discovery from Apple for use in foreign proceedings.  Plaintiffs had a full and fair

27 opportunity to brief the relevance of the Motorola meetings, so there is nothing new here.  As the

28 Court previously recognized, IPCom's retention of Roger Ross was not for the purpose of

1   targeting licensees located in this forum and thus cannot confer jurisdiction over IPCom.  And the

2   meetings with Apple in California are hardly sufficient to confer specific jurisdiction over IPCom

3   for the matters pleaded here.  Lenovo's Amended Complaint fails to allege sufficient new

4   allegations to support personal jurisdiction over IPCom.

5          *Second*, the Court should decline to exercise jurisdiction over the declaratory judgment

6   claim under its inherent authority to decline declaratory relief under 28 U.S.C. § 2201(a).  There

7   is no live controversy between the parties over the '844 and '144 patents, and certainly none

8   arising out negotiations between IPCom and Motorola that concluded in 2014.  The patents have

9   now expired in any case, and there is nothing worth devoting precious judicial resources to in the

10  Amended Complaint.

11         *Third*, Lenovo has failed to sufficiently plead a claim for monopolization under the

12  Sherman Act.  At most, Lenovo U.S. asserts that IPCom breached a contractual obligation to

13  license standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory

14  ("FRAND") terms, but the Ninth Circuit has recently clarified that such conduct does not give

15  rise to an antitrust claim.  *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 982 (9th Cir.

16  2020).  Lenovo U.S. has argued that there is an exception for antitrust claims based on the

17  intentional deception of a standard setting organization ("SSO"), relying on the Third Circuit's

18  earlier *Broadcom* decision.  But even if such a "*Broadcom* exception" survived *Qualcomm*, it

19  does not apply in this case because Lenovo U.S. has failed to plead facts demonstrating

20  intentional deception.  Likewise, Lenovo has failed to plead antitrust injury or a plausible product

21  market, which provide independent grounds to dismiss its antitrust claim.

22  **II.    PROCEDURAL AND FACTUAL BACKGROUND**

23         **A.    The Parties and Prior Negotiations**

24         IPCom is a small intellectual property consulting, R&D, and licensing company organized

25  and existing under the laws of Germany, with six employees and its principal place of business in

26  Pullach, Germany.  *See* Dkt. 17-4 (Declaration of Pio Suh) (hereinafter "Suh Decl."), ¶¶ 2-4.

27  Between January 2014 and March 2019, IPCom engaged in negotiations with Lenovo China—the

28  Plaintiffs' parent company headquartered in Hong Kong—over a license to IPCom's global

1   patent portfolio.  Am. Compl., ¶ 56-99.  There were numerous contacts and meetings in China

2   and a single meeting in Chicago at the request of Lenovo China.  Ex. A, 103:18:104:2; Suh Decl.,

3   ¶ 16.  There were no meetings between Lenovo China or Lenovo U.S. and IPCom in this District.

4         In the midst of litigation in Europe, Lenovo China instructed its subsidiaries Lenovo U.S.

5   and Motorola to file the instant action, seeking a declaratory judgment of non-infringement and/or

6   invalidity with respect to U.S. Patent Nos. 6,307,844 and 6,920,124 (the "'844 and '144 patents").

7   IPCom has never filed suit for infringement of these patents, even though the patents have now

8   expired.  Suh Decl., ¶¶ 17-18.  The only link Lenovo U.S. alleges with respect to its claim for

9   specific jurisdiction in this District is that Roger Ross, a consultant of IPCom who attended the

10  Chicago meeting, resided in this District.  Ex. A, 103:18:104:2

11        IPCom also engaged in negotiations with Motorola between 2009 and 2014.  At the time,

12  Motorola was headquartered in Chicago, Illinois and unaffiliated with Lenovo U.S.  These

13  negotiations included several meetings in San Francisco, but ended in 2014.  Amended Compl.,

14  ¶¶ 32, 33, 40, 42, 45, 53.  IPCom did not have any further contact with Motorola except when

15  directed to do so by Lenovo China after Motorola's acquisition in October 30, 2014.  Motorola

16  then ceased to exist as an independent entity.  All facts relating to these meetings were known to

17  Plaintiffs in the prior around of briefing.

18        IPCom also engaged in licensing discussions with third parties, some of whom were

19  located in this District.  There are no allegations in the Amended Complaint that the Plaintiffs

20  participated in those meetings or were harmed in any way by the discussions.

21        **B.      Procedural Background and the Court's December 12, 2019 Order**

22        Plaintiffs filed the original Complaint on March 14, 2019, alleging breach of contract,

23  declaratory judgment, antitrust monopolization, and declaratory judgment of noninfringement of

24  the '844 and '144 patents.  On July 2, 2019, IPCom moved to dismiss, arguing that the Court

25  lacked personal jurisdiction over it.  Dkt. No. 18.

26        After being sued here, IPCom initiated patent infringement proceedings in the U.K.

27  against Lenovo China's U.K. affiliates.  Lenovo U.S. filed a motion for anti-suit injunction,

28  seeking to prevent IPCom from further pursuing the U.K. litigation and to prevent IPCom from

initiating further patent infringement actions abroad against any Lenovo China affiliate.  Dkt. No. 40.  However, during the pendency of this motion, a French Court ordered Plaintiffs to withdraw the anti-suit injunction motion as it relates to any legal proceedings initiated by IPCom before the French Courts, imposing severe financial penalties if Plaintiffs failed to do so.  Dkt. No. 58.

On December 12, 2019, this Court held that Plaintiffs failed to establish a *prima facie* case of personal jurisdiction with respect to both its antitrust and declaratory judgment claims and ordered the parties to conduct jurisdictional discovery.  The Order also terminated Plaintiffs' motion for anti-suit injunction.

With respect to Lenovo's claims for declaratory judgment of non-infringement, the Court held that IPCom's licensing communications with Lenovo failed to satisfy the requirement of minimum contacts with the forum because IPCom directed its negotiations towards Lenovo China, and "[c]ommunicating with Lenovo China's counsel in the United States is not a purposeful or directed contact with the United States."  The Court further held that the negotiations were not specific to the '844 and '124 Patents.  Dkt. No. 71, at 17-19.  In addition, the Order further stated that "[e]ven if IPCom had negotiated with Lenovo US could establish minimum contacts with the forum, such communications, without more, would not satisfy the fairness prong of the due process inquiry."  *Id*., at 19.

With respect to Lenovo's antitrust claim, this Court found that two acts Lenovo alleged— (1) IPCom's alleged false declarations to ETSI and 3GPP that it would license its SEPs on FRAND terms, and (2) IPCom's alleged demand for supra-competitive royalties from Lenovo China—were insufficient to confer jurisdiction because the allegedly false declarations were not expressly aimed at the United States.

### C.   Jurisdictional Discovery, IPCom's Second Motion to Dismiss, and Plaintiffs' Amended Complaint

After issuance of the Court's December 12, 2019 order, Lenovo aggressively pursued discovery and served overbroad and overreaching discovery requests.  *See* Dkt. 80 (J. DeMarchi's February 14, 2020, Discovery Order) (noting that "Lenovo's proposed discovery exceeds the scope of the limited jurisdictional discovery permitted by the presiding judge" and that "most of

1   Lenovo's proposed document requests are so broad that they appear to be directed to questions of

2   general jurisdiction or the merits of the case."); Dkt. 103 (J. DeMarchi's June 23, 2020 Discovery

3   Order) (once again "conclud[ing] that most of Lenovo's disputed discovery requests exceed the

4   permissible scope of jurisdictional discovery.").  Magistrate J. DeMarchi narrowed Lenovo U.S.'s

5   requests, after which IPCom produced documents, answered interrogatories and produced Mr.

6   Ross and Pio Suh, the Managing Direct of IPCom, for deposition.

7       While the jurisdictional discovery was underway, the Ninth Circuit issued the

8   precedential *Qualcomm* decision, holding that an antitrust claim cannot be based upon a

9   purported breach of FRAND commitments.  *Qualcomm*, 969 F.3d 974, 982.  Citing this new

10  authority, IPCom then filed a second Motion to Dismiss based on *Qualcomm*.  Dkt. No. 109.  The

11  Parties also filed supplemental briefs on the merits of the antitrust claim (Dkt. Nos. 142, 145), but

12  the Court deferred decision pending resolution of the personal jurisdiction question (Dkt. No.

13  149).

14      Following the completion of jurisdictional discovery, Plaintiffs sought leave and filed the

15  Amended Complaint.  The Amended Complaint adds bulk but contains nothing of substance on

16  jurisdiction and stands pat on Plaintiffs' antitrust theories.  The only facts describing ties to this

17  District are as follows:

18  • A handful of meetings in San Francisco with Motorola occurring on November 24, 2009,

19      September 5, 2012, March 18, 2012, and September 20, 2013, which occurred prior to

20      Lenovo's acquisition of Motorola (¶¶ 32, 33, 40, 42, 45, 53);

21  • IPCom's retention of Roger Ross, Director of Worldwide Licensing, in this District (San

22      Carlos, California) to represent it in global licensing discussions with Plaintiffs and third-

23      party Microsoft (¶¶ 59-63, 112);

24  • IPCom's licensing negotiations with Apple and Microsoft, including several meetings

25      with occurring in San Francisco and a 28 U.S.C. § 1782 application filed in this District

26      by IPCom seeking discovery from Apple for use in foreign proceedings (¶¶ 16, 100-110,

27      124).

28  The Amended Complaint also alleges various out-of-district meetings in the U.S. between

1    IPCom and Plaintiffs, as well as various communications exchanged between IPCom and

2    Plaintiffs.  *See e.g.*, Am. Compl. ¶¶ 31-58, 64-99.  Plaintiffs were obviously aware of the

3    meetings between them and IPCom during the prior briefing, and there is nothing new here.  With

4    respect to third party meetings, Plaintiffs do not say why such contacts would have any relevance

5    to the question of specific jurisdiction in relation to the claims now before the Court.

6    **III.    LEGAL STANDARD**

7        **A.    Personal Jurisdiction**

8        "Determining whether jurisdiction exists over an out-of-state defendant involves two

9    inquiries: whether a forum state's long-arm statute permits service of process and whether

10   assertion of personal jurisdiction violates due process."  *Autogenomics Inc. v. Oxford Gene Tech*

11   *Ltd.,* 566 F.3d 1012, 1017 (Fed. Cir. 2009) (internal quotations omitted).  Because California's

12   long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a

13   single inquiry: whether jurisdiction comports with federal due process.  *Daimler AG v. Bauman,*

14   571 U.S. 117, 125 (2014).

15       To satisfy due process where the defendant is not present in the forum, the defendant must

16   have minimum contacts with the forum such that the assertion of jurisdiction "does not offend

17   traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington,* 326 U.S.

18   310, 316 (1945) (internal citations omitted).  The defendant must have "purposefully availed itself

19   of the privilege of conducting activities within the forum State or have purposefully directed its

20   conduct into the forum State."  *Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773,

21   1786 (2017) (internal quotations omitted).

22       To determine whether a defendant has specific minimum contacts in the context of an

23   antitrust claim, the inquiry is "whether the defendant has acted within any district of the United

24   States or sufficiently caused foreseeable consequences in this country."  *Action Embroidery Corp.*

25   *v. Atl. Embroidery Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (quoting *Sec. Investor Prot. Corp. v.*

26   *Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)).  Although the Court may look to a defendant's

27   nationwide contacts for the purposes of specific jurisdiction over antitrust claims, the plaintiff

28   must still show that (1) the defendant either "purposefully direct[s]" its activities or "purposefully

avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction "comport[s] with fair play and substantial justice, i.e., it [is] reasonable." *In re Packaged Seafood Products Antitrust Litigation,* 338 F.Supp.3d 1118, 1148 (2018) (quoting *Williams v. Yamaha Motor Co.,* 851 F.3d 1015, 1023 (9th Cir. 2017).

### B.    Fed. R. Civ. P. 12(b)(6) – Failure to State a Claim

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555.  For purposes of this analysis, "labels, conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Min. Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981).  Nor must the court accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.,* 536 F.3d 1049, 1055 (9th Cir. 2008).

### C.    Fed. R. Civ. P. 12(b)(1) – Lack of Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction" and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994). "[T]he burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*

"Whether an actual case or controversy exists so that a district court may entertain an action for a declaratory judgment of non-infringement and/or invalidity is governed by Federal Circuit law." *MedImmune, Inc. v. Centocor, Inc.,* 409 F.3d 1376, 1378 (Fed. Cir. 2005), *overruled on other grounds, MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 130-31 (2007);

28 U.S.C. § 2201(a).  "[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *MedImmune,* 549 U.S. at 127.  A party seeking declaratory judgment of non-infringement must show "(1) an affirmative act by the patentee relating to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Ass'n for Molecular Pathology v. United States PTO,* 689 F.3d 1303, 1318 (Fed. Cir. 2012) (internal citations omitted).  Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995).  Such decisions are "reviewed for abuse of discretion." *Id.* at 289-90.

Challenges to subject matter jurisdiction may be facial or factual.  *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction" whereas "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air For Everyone v. Meyer,* 373 F.3d 1035, 1039 (9th Cir. 2004).  The Federal Circuit's law on facial and factual attacks does not materially differ from that of the Ninth Circuit.  *Activevideo Networks, Inc. v. Trans Video Elecs. Ltd.,* 975 F. Supp. 2d 1083, 1085 n.1 (N.D. Cal. 2013) (citation omitted).

## IV.   ARGUMENT

### A.   The Court Lacks Personal Jurisdiction Over IPCom

Plaintiffs have not argued general jurisdiction (*see* Dkt. No. 71, at 7), and accordingly, the 12(b)(2) motion turns on whether the Court has specific jurisdiction in relation to the pleaded claims.  In patent cases, the inquiry turns on whether the patentee "purposefully directed such enforcement activities *at residents of the forum*, and the extent to which the declaratory judgment claim *arises* out of or relates to those activities." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324 (Fed. Cir. 2008) (emphasis added).  Applying this standard, the Court previously concluded that Plaintiffs had failed to establish a prima facie case for personal jurisdiction.  There

is nothing in the Amended Complaint that changes the analysis.[1]

### 1. The Meetings in this District with Motorola are Insufficient to Establish Specific Jurisdiction in Relation to the Pleaded Claims

The *only* affirmative conduct that Plaintiffs claim occurred in this District and relates to the asserted claims is that in 2012-13, Motorola and IPCom met in California to discuss a license. But the meetings took place more than six years before suit, and the limitations period on patent claims is six years. 35 U.S.C. § 286. These meetings are hardly sufficient to establish the existence of a ripe claim in 2019, much less today. Moreover, Motorola was based in Illinois, not California, and the happenstance of the meeting location is insufficient to confer jurisdiction. Lenovo China should not be permitted to use stale meetings with a company it purchased years ago to manufacture a pretext for bringing suit against IPCom now. Plaintiffs' failure to raise these meetings in the Original Complaint shows how tenuous the Motorola meetings are to the matters now in suit, and it would be odd indeed if Plaintiffs could excuse their tardiness in pleading these meetings on the need to "discover" meetings in which they participated.

### 2. The IPCom/Lenovo China Negotiations Did Not Entail Contacts With the District

The Amended Complaint also refers to IPCom's negotiations with Lenovo China, which were the subject of the prior motion practice. These discussions covered the terms of a global patent license between a Chinese and a German company. IPCom believed at all times that it was negotiating with the Chinese parent and only communicated with Lenovo China's United States subsidiaries when directed to do so by Lenovo China. *See* Dkt. No. 18, at 13; Suh Decl., ¶ 19; Ex. A, 105:10-106:20. The Court has already addressed the relevance of these meetings, and the

---

[1] The same is true with respect to Lenovo U.S.'s antitrust claim. Although the Court may look to nationwide contacts for purposes of that particular claim, the antitrust claim must still arise out of or relate to defendants' forum-related activities. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). For the reasons discussed below, none of IPCom's alleged contacts with the U.S. give rise to any antitrust claim.

1    Court's conclusion that IPCom was not directing its negotiations at a resident of this District, or

2    for that matter any resident of the United States, stands.  Order, at 18-19.  As the Federal Circuit

3    has held, travel to a particular district to negotiate a license, without more, is insufficient to confer

4    jurisdiction.  *Autogenomics, Inc. v. Oxford Gene Tech. Ltd*., 566 F.3d 1012, 1024 (Fed. Cir. 2009)

5    (affirming dismissal for lack of jurisdiction when foreign declaratory judgment defendant traveled

6    to California to attempt to negotiate a license agreement); *Apple Inc. v. Zipit Wireless, Inc*., No.

7    5:20-CV-04448-EJD, 2021 WL 533754, at *3 (N.D. Cal. Feb. 12, 2021) (dismissing complaint

8    for lack of personal jurisdiction even though declaratory judgment defendant traveled to the

9    forum several times to negotiate a license agreement); *Levita Magnetics Int'l Corp. v. Attractive*

10   *Surgical, LLC*, No. 19-CV-04605-JSW, 2020 WL 4580504, at *6 (N.D. Cal. Apr. 1, 2020)

11   (noting that "a defendant may not be subjected to personal jurisdiction if its only additional

12   activities in the forum state involve unsuccessful attempts to license the patent there").

13            **3.      Roger Ross's Presence in this District Does Not Establish Jurisdiction**

14            The Amended Complaint also includes various allegations surrounding IPCom's retention

15   of Roger Ross; however, the Court's December 12, 2019 Order already noted that "IPCom's

16   retention of Mr. Ross in the United States is also not a purposeful direction of activity in this

17   form" because "[t]here is no indication that he was hired to conduct any activity in this forum."

18   Order, at 20.  The Amended Complaint does not allege otherwise.  Indeed, as Plaintiffs admit,

19   Mr. Ross was the Director of Worldwide Licensing, and Mr. Ross was not hired to target

20   residents in California.  Amended Compl., ¶ 59; Dkt. 38, at 12.  Mr. Ross was hired for his

21   expertise, and his presence in this District and any activities or meetings occurring in California

22   was mere happenstance.  *Id*.

23            While Lenovo provides new allegations regarding Mr. Ross's communications with

24   potential licensees, the facts pleaded confirm that his duties related to IPCom's *worldwide*

25   licensing efforts and were not specifically directed at this District.  *See* Am. Compl. ¶ 59 (alleging

26   that Mr. Ross "had the title, 'Director, Worldwide Licensing,'" which he used "when

27   communicating with prospective licensees on behalf of IPCom.").  Furthermore, the Amended

28   Complaint does not allege that Mr. Ross communicated with any entities residing within this

District.  Am. Compl. ¶¶ 59-63.  Microsoft is a Washington company.  Apple is located in this District, but Mr. Ross did not have any contact with Apple.[2]  Thus, even if the Court felt that discussions with third parties were somehow relevant to the claims asserted in the Amended Complaint, the third party contacts would be insufficient to justify a finding of specific jurisdiction over IPCom.

### 4. Lenovo's Additional Remaining Allegations, Including Licensing Negotiations and Meetings with Apple and Microsoft in this District, Fail to Support a Finding of "Other Activities" for Personal Jurisdiction

Lenovo has failed to allege "other activities" directed at the forum such that exercising jurisdiction would comport with the traditional notions of fair play and substantial justice.  Examples of these "other activities" include initiating judicial or extra-judicial patent enforcement within the forum or entering into an exclusive license agreement or other undertaking which imposes enforcement obligations with a party residing or regularly doing business in the forum.  *See Avocent Huntsville Corp. v. Aten Int'l Co*., 552 F.3d 1324, 1334 (Fed. Cir. 2008).  Here, the Amended Complaint merely alleges that IPCom communicated with three other companies located in the U.S., only one of which (Apple), was located in this District.  Those negotiations were not specific to the '844 and '144 patents but were instead directed to IPCom's worldwide patent portfolio.

The Amended Complaint also alleges various actions filed by IPCom, mostly in other districts.  *See* Amended Compl., ¶¶ 29-30, 100-101, 123-134 (citing a declaratory judgment action HTC initiated against IPCom in the District of Columbia, a 28 U.S.C. § 1782 application against Apple in this District, and three actions in the Eastern District of Texas against several telecommunications carriers).  These allegations are irrelevant to the analysis because they either

---

[2] The Amended Complaint does not allege that Roger Ross had any contact with Apple (headquartered in this district) and Roger Ross confirmed in his deposition that he did not communicate with Apple at all.  *See* Ex. A, 73:17-19 ("Q. Did you have any dealings with Apple while at IPCom?  A. No.").

involve different patents or were filed in other forums.  Indeed, the Federal Circuit has repeatedly

held that where a patentee challenges personal jurisdiction for a declaratory judgment action

brought in a forum, the patentee's prior infringement suits brought in other forums and against

other accused infringers on the same patent do not, normally, subject the patentee to personal

jurisdiction in the forum.  *Maxchief Investments Limited v. Wok & Pan, Ind., Inc*., 909 F.3d 1134,

1133-39 (Fed. Cir. 2018) (affirming dismissal of declaratory judgment complaint for lack of

personal jurisdiction brought against a foreign U.S. patent owner where the patent owner had

never enforced its patent in the forum); *Avocent Huntsville Corp. v. Aten Intern. Co., Ltd*., 552

F.3d 1324, 1338-39 (Fed. Cir. 2008) (rejecting argument that patentee's infringement actions

filed in other forums, against other accused infringers, gave rise to specific personal jurisdiction

in the pending forum); *Apple Inc. v. Zipit Wireless, Inc.*, No. 5:20-CV-04448-EJD, 2021 WL

533754, at *4 (N.D. Cal. Feb. 12, 2021) (noting that "this Court declines to consider Zipit's

litigations in other fora in answering the question of whether specific personal jurisdiction is

established in California.").

IPCom has never filed a patent infringement case in this District, nor has it asserted the

'844 or '144 patents in litigation in any other district.  The application filed in this District

pursuant to 28 U.S.C. §1782 was not a patent infringement action and did not even concern the

'844 or '144 patents.  It was also public knowledge during the original jurisdictional challenge,

and Plaintiffs have no excuse for raising it now.  More importantly, the proceeding was a petition

to this Court seeking discovery from a resident corporation, Apple, for use in ongoing ***foreign***

patent litigations.[3]

---

[3] The Amended Complaint also conflates the term "enforce" and "assert" with the act of

attempting to negotiate a license agreement.  According to Lenovo, any communications

surrounding a license negotiation is an enforcement or assertion of that patent.  This is plainly

incorrect.  This Court previously recognized this distinction in its December 12, 2019 Order.  *See*

Order, at 20:16-24 (differentiating "asserted or threatened to assert" with the "mention of possible

litigation in the United States" during licensing negotiations).

The remaining allegations in the Amended Complaint involve events occurring outside of this District (*i.e.*, IPCom's meetings with Lenovo in North Carolina or litigation in Texas), and bear no relevance to the personal jurisdiction inquiry for Lenovo U.S.'s declaratory judgment claims. *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011) ("[E]nforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum...."); *see also Shaffer v. Heitner*, 433 U.S. 186, 186 (1977) (specific personal jurisdiction involves examining "the relationship among the *defendant*, the *forum*, and the *litigation*") (emphasis added).  Nor do they bear any relationship to Lenovo U.S.'s antitrust claim or, as discussed below, provide a basis for such a claim.  *Schwarzenegger*, 374 F.3d at 802.

**5.      Subjecting IPCom to Jurisdiction in this District Would be Unfair, Unreasonable, and Violate the Traditional Notions of Fair Play and Substantial Justice**

Subjecting IPCom to jurisdiction in this District on this record would violate the traditional notions of fair play and substantial justice.  The Supreme Court has repeatedly noted that it is "unreasonable and unfair" for a U.S. District Court to exercise jurisdiction over foreign litigants when the claim arose out of a foreign transaction.  *Asahi Metal Industry Co. v. Superior Court of Cal., Solano Cty.,* 480 U.S. 102, 114 (1986).  Despite Plaintiffs' mischaracterizations, this dispute is between IPCom (a German company) and Lenovo China (a Hong Kong corporation).  Moreover, as described above, the handful of contacts IPCom has had with this District, and even the United States as a whole for the purposes of the Court's jurisdiction over Plaintiffs' antitrust claim, do not rise to the level supporting the exercise of personal jurisdiction.

The Supreme Court has stated, "restrictions on personal jurisdiction are more than a guarantee of immunity from inconvenient or distant litigation" as they "are a consequence of territorial limitations on the power of the respective States."  *Bristol-Myers Squibb Co.,* 137 S. Ct. at 1780.  Plaintiffs have not explained how a United States district court can make binding determinations regarding foreign patent infringement occurring in a foreign country and, implicating foreign patent law.  The reason is that this Court cannot make those decisions.  In *Stein Assocs. v. Heat & Control, Inc.,* 748 F.2d 653, 658 (Fed. Cir. 1984), the Federal Circuit considered this same question.  The court confirmed that, "[o]nly a British court, applying British

1   law, can determine validity and infringement of British patents.  British law being different from

2   our own, and British and United States courts being independent of each other, resolution of the

3   question of whether the United States patents are valid could have no binding effect on the British

4   court's decision." *Id.*  Further, Plaintiffs' antitrust allegations are predicated on an alleged breach

5   of IPCom's FRAND commitments to be determined under French contract law.  Thus, French

6   law will control the breach of contract, FRAND declaratory judgment, and antitrust claims.  *See,*

7   *e.g., Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846, 2012 WL 1672493, at *10 (N.D. Cal.

8   May 14, 2012).

9        The Court must consider the "procedural and substantive interests of other nations in a

10  state court's assertion of jurisdiction over an alien defendant."  *Asahi,* 480 U.S. at 106.  The

11  Supreme Court has found that these interests are "best served by a careful inquiry into the

12  reasonableness of the assertion of jurisdiction in the particular case, and an unwillingness to find

13  the serious burdens on an alien defendant outweighed by minimal interests on the part of the

14  plaintiff or the foreign state."  *Asahi,* 480 U.S. at 106.  Plaintiffs have not articulated any such

15  interests here, either their own or those of the forum, in deciding the instant matter.

16        **B.**    **Lenovo U.S. Has Failed to State an Antitrust Claim**

17        Lenovo U.S.'s Amended Complaint attempts to dress up an alleged breach of a

18  contractual FRAND commitment as an antitrust claim.  The Ninth Circuit's decision in

19  *Qualcomm*, however, closed the door on such claims, holding that an antitrust claim cannot be

20  based on the alleged breach of a FRAND commitment.  *See Qualcomm*, 969 F.3d at 997.  Lenovo

21  U.S. has argued that it is relying on a narrower "intentional deception" theory of liability under

22  the Third Circuit's earlier decision in *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297 (3d Cir.

23  2007).  But even if an "intentional deception" theory survived in this Circuit after *Qualcomm*, it

24  requires a plaintiff to plead facts demonstrating that (1) the defendant intentionally deceived a

25  standard setting organization ("SSO"), and (2) such deception caused antitrust injury—*i.e.*, that it

26  harmed competition in a properly-defined antitrust market.  *See Rambus Inc. v. FTC*, 522 F.3d

27  456 (D.C. Cir. 2008).  Lenovo U.S.'s Amended Complaint fails to do either.

28

First, the Amended Complaint fails to plead anticompetitive conduct, the foundation of any antitrust claim. In *Qualcomm*, the Ninth Circuit held that the alleged breach of a FRAND obligations—the only conduct that Lenovo U.S. alleges here—does not trigger antitrust liability. Lenovo U.S. argues that it is relying on exception based on the "intentional deception" of an SSO, but even if that were a valid exception, Lenovo U.S. has failed to allege facts showing such deception here. The Amended Complaint's sole allegation supporting the claimed deception is that IPCom, or its predecessors, must have intentionally deceived ETSI because, in Lenovo U.S.'s view, the terms that IPCom later offered were not FRAND. That is not enough to state a claim for intentional deception. If it were, *Qualcomm* would be meaningless.

Second, Lenovo U.S. has also failed to satisfy the separate requirements to plausibly plead that the alleged deception caused antitrust injury – that it harmed competition in a properly defined antitrust market. In the recent *Intel* decision, the court emphasized that, in the context of markets for patented technology, would-be antitrust plaintiffs must do more than assert general allegations of competitive harm in vaguely-defined, overly-broad technology markets. *See Intel Corp. v. Fortress Inv. Grp. LLC*, No. 19-7651, 2021 WL 51727 (N.D. Cal. Jan. 6, 2021) (Chen, J.). Lenovo U.S.'s failure to plead these critical elements of a monopolization offense likewise doom its antitrust claim.

**1.     Lenovo U.S. Fails to Plead Anticompetitive Conduct Required for its Section 2 Monopolization Claim.**

To plausibly plead its monopolization claim under Section 2 of the Sherman Act, Lenovo U.S. must allege facts showing that IPCom engaged in "anticompetitive conduct"—that is, an "anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market." *Qualcomm*, 969 F.3d at 990 (quoting *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 1000 (9th Cir. 2010)). Here, Lenovo U.S.'s monopolization claim fails because the Ninth Circuit has expressly held that the mere breach of a contractual FRAND commitment does not trigger liability under Section 2. *Qualcomm*, 969 F.3d at 997 (citing the "general rule that breaches of [standard setting organization] commitments do not give rise to antitrust liability"). In doing so, the Ninth Circuit

1  specifically rejected the FTC's position "that Qualcomm's alleged breach of its SSO

2  commitments to license its patents on FRAND terms, even assuming there was a breach,

3  amounted to anticompetitive conduct in violation of § 2." *Id.*

4      In response, Lenovo U.S. has argued that its antitrust claim fits a narrow exception based

5  on the Third Circuit's earlier decision in *Broadcom*, in which the court allowed antitrust claims

6  based on the alleged intentional deception of an SSO to proceed. *Qualcomm*, however, has made

7  clear that there is no such exception in the Ninth Circuit, at least for claims based solely on the

8  alleged breach of a FRAND commitment. The Ninth Circuit emphasized the "persuasive policy

9  arguments of several academics and practitioners with significant experience in SSOs, FRAND,

10  and antitrust enforcement, who have expressed caution about using the antitrust laws to remedy

11  what are essentially contractual disputes between private parties engaged in the pursuit of

12  technological innovation." *See Qualcomm*, 969 F.3d at 997. Thus, to the extent that courts prior

13  to *Qualcomm* permitted *Broadcom*-style claims to survive, the Ninth Circuit requires factual

14  allegations beyond the alleged breach of a FRAND commitment to state such a claim.[4]

15      Indeed, carefully read, even *Broadcom* itself demands more than an alleged breach of a

16  FRAND commitment in order for an antitrust claim to survive. *Broadcom* involved, and the court

17  in that case explicitly referenced, affirmatively deceptive conduct going beyond the mere

18  allegation that the defendant later failed to make a FRAND offer to the plaintiff. *See Broadcom*

19  _____

20  [4] Lenovo has, for example, cited to numerous cases decided prior to *Qualcomm* in support of its

21  antitrust claim. *See, e.g., Wi-LAN Inc. v. LG Elecs., Inc*., 382 F. Supp. 3d 1012, 1023 (S.D. Cal.

22  2019); *u-blox AG v. Interdigital, Inc*., No. 19-001, 2019 WL 1574322, at *3-4 (S.D. Cal. Apr. 11,

23  2019); *FunaiElec. Co., Ltd. v. LSI Corp*., No. 16-1210, 2017 WL 1133513, at *5 (N.D. Cal. Mar.

24  27, 2017). To the extent these cases conflict with *Qualcomm*, the Ninth Circuit's decision in that

25  case controls. Moreover, many of these cases (like *Broadcom* itself) involved alleged facts

26  beyond the mere breach of a FRAND commitment and, therefore, are easily distinguishable on

27  that basis as well. *See e.g., FunaiElec.* 2017 WL 1133513, at *5 (discussing sham patent

28  litigation allegations which were "part of a larger anticompetitive scheme").

DECHERT LLP
ATTORNEYS AT LAW
SILICON VALLEY

1    *Corp. v. Qualcomm Inc.*, 501 F.3d 297, 310–11 (3d Cir. 2007) (citing as examples a defendant

2    "fail[ing] to disclose that it owned a patent for a key design feature of the standard" and "even

3    certif[ying] to the [SSO] that the proposed standard did not infringe" its intellectual property

4    rights); *see also Rambus*, 522 F.3d at 464 (recounting FTC finding that the defendant engaged in

5    "misrepresentations, omissions, and other practices that deceived [the SSO] about the nature and

6    scope of its patent interests"); *TCL Commc'ns Tech. Holdings, Ltd. v. Telefonaktiebolaget LM*

7    *Ericsson*, No. 14-0341, 2016 WL 7049263, at *5 (C.D. Cal. Aug. 9, 2016) (discussing

8    *Broadcom*'s focus on affirmatively deceptive acts).

9            Lenovo U.S.'s Amended Complaint contains no such factual allegations, let alone facts

10   approximating the affirmatively deceptive conduct cited in cases like *Broadcom* or *Rambus*.

11   Rather, Lenovo U.S. asks the Court to infer that whatever FRAND commitments IPCom, or

12   others, made were necessarily deceptive because, in Lenovo U.S.'s view, IPCom later offered

13   license terms that were not FRAND.  *See* Am. Compl. ¶ 181.  But if merely alleging a breach of a

14   FRAND commitment were enough to show intentional deception, it would render meaningless

15   *Qualcomm*'s holding that breaching a FRAND commitment is not an antitrust violation.  Even

16   before *Qualcomm*, at least one court in this Circuit rejected "this kind of bootstrapping," holding

17   that because "the *Broadcom* court made the 'intentionally false promise' and subsequent 'breach

18   of that promise' two separate elements, it is clear that there needs to be some other conduct by

19   [defendant] than mere breach of its FRAND obligations."  *TCL Commc'ns*, 2016 WL 7049263, at

20   *6.  Similarly, courts have routinely held that plaintiffs cannot use such bootstrapping to convert a

21   garden-variety breach of contract into fraud, which is essentially what Lenovo U.S. seeks to do.

22   *See, e.g.*, *Guebara v. Allstate Ins. Co.*, No. 96-1683, 1997 WL 33322250, at *7 (S.D. Cal. June 4,

23   1997) (granting summary judgment on fraud claim because plaintiff was "merely 'bootstrapping'

24   a fraud claim onto the breach of contract claim by alleging that [the defendant] never intended to

25   uphold its end of the deal when it entered into the policy.").

26           Lenovo U.S.'s bare bones Amended Complaint fails to plead a plausible antitrust claim.  It

27   is not enough to write "FRAND" and "SSO" in a complaint and declare that is sufficient to

28   support an antitrust claim.  Lenovo U.S.'s cavalier approach to pleading is insufficient to meet its

pleading burden under *Iqbal* and *Twombly*.  Lenovo U.S.'s antitrust claims fail for these reasons alone.

**2.      Lenovo U.S. Has Failed to Plead Facts Showing That IPCom's Conduct Caused Antitrust Injury or Injury to Lenovo U.S..**

Lenovo U.S.'s antitrust claim also fails because it has not pleaded facts demonstrating that it suffered antitrust injury, a necessary element of any antitrust claim.  To have standing to assert an antitrust claim, a plaintiff must plead facts demonstrating that the challenged conduct caused not just any injury to itself, but antitrust injury—that is, injury "that flows from that which makes defendants' acts unlawful," *i.e.,* a harm to competition.  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 489 (1977); *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of California*, 190 F.3d 1051, 1056 (9th Cir. 1999).  Lenovo U.S. has failed to plead facts showing any harm to competition or even to itself.

A general allegation of deception is not enough to show harm to competition.  "Deceptive conduct—like any other kind—must have an anticompetitive effect in order to form the basis of a monopolization claim" and "[c]ases that recognize deception as exclusionary hinge, therefore, on whether the conduct impaired rivals in a manner tending to bring about or protect a defendant's monopoly power." *Rambus*, 522 F.3d at 464; *see also id*. at 466-67 ("[I]f [the SSO] in the world that would have existed but for [defendant's] deception, would have standardized the very same technologies, [defendant's] alleged deception cannot be said to have had an effect on competition in violation of the antitrust laws.").  Therefore, for its monopolization claim to survive, Lenovo U.S. must plead facts showing that IPCom's conduct excluded rivals, impaired their ability to compete, or otherwise reduced competition.  *See Qualcomm*, 969 F.3d at 990 ("[T]o be condemned as exclusionary, a monopolist's act must have an anticompetitive effect—that is, it must harm the competitive process and thereby harm consumers." (internal quotations omitted)).

The Amended Complaint, however, contains no such allegations.  For example, Lenovo U.S. does not, and cannot, allege that IPCom's conduct prevented anyone from competing in the alleged relevant market, or even impaired anyone's ability to do so.  Nor does it plead concrete factual allegations identifying any competing technology excluded as a result of the alleged deception, or that such alternative technology would have been available on a more competitive basis.  Lenovo U.S.'s failure to allege such facts further confirms that this is a breach of contract case masquerading as an antitrust case.  But this failure is fatal and requires dismissal of the antitrust claim.  *See Somers v. Apple, Inc.*, 729 F.3d 953, 966 (9th Cir. 2013) (noting that "insistence on specificity of facts is warranted before permitting a case to proceed into costly and protracted discovery in an antitrust case . . .").

Indeed, Lenovo U.S. has failed to plead facts showing that IPCom's alleged conduct has caused it any injury at all, let alone an injury flowing from a harm to competition.  To the extent that Lenovo U.S.'s real complaint is that IPCom asked for too high a royalty rate, it has not pleaded any injury from this request or that it has paid any unreasonable royalty.  To the contrary, Lenovo U.S. continues to sell products in the United States without interference and without paying any royalty at all.  The only two patents specified in the Amended Complaint (U.S. Patent Nos. 6,307,844 and 6,920,124) have expired.  IPCom has not filed a claim for infringement of these patents and is barred by their expiration from seeking injunctive relief.  IPCom's alleged actions, therefore, have caused no harm to Lenovo U.S. itself or to competition.  Lenovo U.S.'s antitrust claims should be dismissed for this reason as well.

### 3.   Lenovo U.S. Fails to Plead a Properly Defined Antitrust Market

Lenovo U.S.'s monopolization claim should also be dismissed because it fails to allege facts properly defining a relevant antitrust market.  In a case involving standard essential patent licensing, general allegations of harm to competition in vaguely-defined and overbroad

1    technology markets are insufficient to survive a motion to dismiss.  *See Intel Corp. v. Fortress*

2    *Inv. Grp. LLC*, 511 F. Supp. 3d 1006 (N.D. Cal. 2021).  A plaintiff must allege facts supporting

3    plausible market definitions and identify what competition was harmed in those markets.  *Id.* at

4    1019-20.  As *Intel* explains, adequately pleading a relevant antitrust market is critical in an

5    antitrust case because "without a definition of the market, there is no way to measure [the

6    defendant's] ability to lessen or destroy competition."  *See id.* (quoting *Qualcomm*, 969 F.3d at

7    992).

8         The *Intel* court found that many of the product markets alleged in that case were

9    impermissibly overbroad, including alleged markets for "local cache management," "shared

10   memory access," and "health monitoring."  *Id.* at *11–12.  Here, Lenovo U.S.'s product market

11   allegations provide even less detail than those found deficient in *Intel*.  Lenovo U.S.'s alleged

12   "technology markets" are not defined by reference to any product or technology at all.  *See* Am.

13   Compl. ¶ 183 (relevant market defined as "the technologies covered by IPCom's declared

14   essential patents . . . that IPCom has asserted against Plaintiffs for purposes of products that

15   implement the 2G, 3G, and 4G standards, together with all other alternative technologies to the

16   IPCom technologies that could have been incorporated into the standards").  As in *Intel*, Lenovo

17   U.S.'s deficient market definition allegations leave no way for the Court to even begin to assess

18   basic questions of market power or competitive effects.  This is grounds on its own to dismiss

19   Lenovo U.S.'s antitrust claim.  *See Coronavirus Reporter v. Apple Inc.*, No. 21-05567, 2021 WL

20   5936910, at *7 (N.D. Cal. Nov. 30, 2021 (dismissing antitrust claims in part because plaintiff

21   failed to "define the boundaries of or differences between" its alleged product markets, rendering

22   it impossible to "discern what is included and what is not").

23        **C.    This Court Lacks Subject Matter Jurisdiction over Counts IV and V Due to
               the Lack of Case or Controversy**

24

25        Lenovo U.S. has failed to establish declaratory judgment jurisdiction over either patent

26   non-infringement claim because it has not plead "an affirmative act by the patentee relating to the

27   enforcement of his patent rights . . . ."  *Molecular Pathology*, 689 F.3d at 1318.  An "affirmative

28   act" requires more than "a communication from a patent owner to another party, merely

1    identifying its patent and the other's product line . . . ." *Hewlett-Packard Co. v. Acceleron LLC,*

2    587 F.3d 1358, 1362 (Fed. Cir. 2009).  "How much more is required is determined on case-by-

3    case analysis." *3M Co. v. Avery Dennison Corp.,* 673 F.3d 1372, 1379 (Fed. Cir. 2012).  Courts in

4    this District review thirteen factors to determine whether the patentee has committed an

5    "affirmative act." *Activevideo Networks, Inc. v. Trans Video Elecs. Ltd.,* 975 F. Supp. 2d 1083,

6    1087-88 (N.D. Cal. 2013).  Those factors are:

7         1.    the strength of any threatening language in communications between the
               parties;
8         2.    the depth and extent of infringement analysis conducted by the patent
               holder;
9         3.    whether the patent holder imposed a deadline to respond;
10        4.    any prior litigation between the parties;
          5.    the patent holder's history of enforcing the patent at issue;
11        6.    whether the patent holder's threats have induced the alleged infringer to
               change its behavior;
12        7.    the number of times the patent holder has contacted the alleged infringer;
13        8.    whether the patent holder is simply a holding company with no source
               of income other than enforcing patent rights;
14        9.    whether the patentee refused to give assurance it will not enforce its patent;
15        10.   whether the patent holder has identified a specific patent and specific
               infringing products;
16        11.   the extent of the patent holder's familiarity with the product prior to suit;
17        12.   the length of time that transpired after the patent holder asserted
               infringement; and
18        13.   whether communications initiated by the declaratory judgment plaintiff
               have the appearance of an attempt to create a controversy in anticipation
19             of filing suit.

20    *Id.*  Here, an analysis of these factors weigh against jurisdiction.

21           Factors 1, 2, 3, and 10 weigh against the finding of a case or controversy between the

22    parties.  The negotiations between IPCom and Lenovo China carried on over a number of years and

23    involved numerous patents.  There was no "threat" to either plaintiff here as that term is properly

24    understood.  While Plaintiffs refer to the element-by-element patent charts provided by IPCom, the

25    charts did not identify any of Lenovo U.S.'s products.  Instead, the claims were mapped against a

26    third-party standard.  *See Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 905 (Fed. Cir. 2014).

27    The overall picture is here is one of consensual negotiations, not aggressive threats of litigation.

28    The fact that IPCom has not served an infringement claim on the Plaintiffs to this day only

1  underscores the point.

2  Similarly, factors 4 and 5 weigh against jurisdiction because IPCom has never filed any

3  action against Lenovo U.S. and has never initiated an affirmative suit for patent infringement in

4  the United States for the '124 and '844 patents.  Factor 7 also weighs against jurisdiction because

5  the parties have been in intermittent contact since at least 2017 without any prior lawsuit

6  materializing.  And, with respect to Factor 9, IPCom has never "refused to give assurance it will

7  not enforce" the '124 and '844 patents.  *Activevideo Networks,* 975 F. Supp. 2d at 1087.  To the

8  contrary, IPCom offered a negotiation framework by which it would "refrain from filing a claim

9  for injunctive relief before any court or tribunal in the EEA for infringement of any of its

10  SEPs…"  Dkt. No. 17-13 at 5, ¶ 7.  Lenovo China, the ultimate parent of the parties here,

11  declined that offer and Lenovo U.S. has never requested a standstill agreement, in the United

12  States or anywhere else.  Dkt. No. 36-1 ("Lenovo is under no legal or other obligations to execute

13  such an Agreement in order to discuss IPCom's patents and licensing proposals.").  Factor 12 also

14  weighs against jurisdiction, as the '124 and '844 patents have expired for over two years, and

15  IPCom still has not asserted a claim for patent infringement over either patent.

16  Lastly, Factor 13 weighs against jurisdiction since the "communications initiated by

17  [Lenovo U.S.] have the appearance of an attempt to create a controversy in anticipation of filing

18  suit."  *Activevideo Networks,* 975 F. Supp. 2d at 1088.  As noted in the parties' prior briefings and

19  the Court's Order, IPCom was originally negotiating with Lenovo China and only contacted

20  Lenovo U.S. when instructed to do so by Lenovo China.  Thus, Lenovo U.S. manufactured the

21  instant controversy.  As a result, under these circumstances, the Court should find that it lacks

22  subject matter jurisdiction over these claims.

23  **D.    The Court Should Decline to Hear Lenovo U.S.'s Declaratory Judgment Claims Under Pursuant to the Declaratory Judgment Act**

25  The Court should independently exercise its discretion to dismiss Counts II, IV and V.  As

26  evidenced by immediate post-filing communications, Lenovo U.S. filed the instant suit for

27  negotiation leverage, noting that "[i]n the event that we are unable to agree upon FRAND terms

28  consistent with the ETSI IPR Policy, we have asked the court to determine the FRAND licensing

terms and rates for the party." Dkt. No. 17-10.  This activity, as recognized by the Federal

Circuit, is nothing more than a "tactical measure filed in order to improve [the declaratory

judgment plaintiffs] posture in ongoing negotiations—not a purpose that the Declaratory

Judgment Act was designed to serve." *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed. Cir.

1996).

In *EMC,* the parties "were involved in negotiations over the sale or licensing of Norand's

patents up to the time the complaint was filed." *Id.* at 815.  EMC filed suit for declaratory

judgment during negotiations.  *Id.*  As noted by the Federal Circuit:

> The day after the complaint was filed, EMC's senior intellectual property
> counsel called Norand's outside patent counsel and explained that the
> declaratory judgment complaint had been filed as 'merely a defensive
> step' and that EMC 'would like to continue to discuss with you all the
> options hopefully in a more meaningful manner over the near term. By
> way of explaining why the complaint was filed, EMC's counsel added
> that EMC's management decided to file suit because 'they just thought it
> was in their interest to protect themselves first and continue discussions."

*Id.*  Similarly, Lenovo China rejected IPCom's FRAND offer but, in order to avoid litigation

against its UK subsidiaries, it had Lenovo U.S. file this anticipatory suit.  Dkt. No. 17-10.

Lenovo China continued to attempt to negotiate a global license, in particular requesting

information primarily regarding European patents that are not related to either of the '124 or '844

patents.  Dkt. No. 17-10 (demanding a "license to IPCom's patent portfolio"); Dkt. No. 109-3, at

2-3 (responding to Lenovo China's requests for information primarily regarding European

patents); Dkt. No. 109-5, at 1 (requesting the application of damages methodologies from

*Unwired Planet v. Huawei,* [2017] EWHC 711 (Pat), *affirmed* [2020] UKSC 37).  And once it

became clear that IPCom would not be intimidated into surrendering its foreign patent rights,

Lenovo U.S. filed an improper antisuit injunction.  Dkt. No. 58-1 at 16 (as noted by the French

tribunal, "[t]he prohibition imposed on IPCom to initiate or continue proceedings before the

French judge infringes the fundamental rights granted to it by the higher standards, in terms of

property, those guaranteed to a party to a lawsuit and those relating to intellectual property.").

Moreover, Count II seeks an advisory opinion only giving Lenovo China, the real party in

interest, a tactical advantage in seeking an eventual global settlement.  Lenovo China, through its

1   United States subsidiary, seeks three declarations: "(1) a determination that IPCom has not

2   offered Plaintiffs a license to its alleged 2G, 3G, and 4G SEPs on FRAND terms and conditions;

3   (2) a determination of what constitutes FRAND terms and conditions for a license to IPCom's

4   alleged 2G, 3G, and 4G SEPs, with those terms and conditions being imposed on the parties; and

5   (3) a determination that the FRAND terms and conditions must be consistent with well-

6   established apportionment principles under federal patent law (*i.e.*, the smallest salable patent

7   practicing unit rule)." Am. Compl. at ¶ 173.

8        The requests for declaratory relief are duplicative of Lenovo U.S.'s breach of contract

9   claim and "dismissal of the claim for declaratory relief related to breach of contract is proper."

10  *Reyes v. Nationstar Mortg. LLC*, No. 15-CV-01109-LHK, 2015 WL 4554377, at *8 (N.D. Cal.

11  July 28, 2015).  Moreover, "[d]eclaratory relief should be denied when it will neither serve a

12  useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings

13  and afford relief from the uncertainty and controversy faced by the parties."  *United States v.*

14  *Washington,* 759 F.2d 1353, 1357 (9th Cir. 1985) (internal citations omitted).

15       In addition, the second and third requests seek an application of U.S. law to foreign

16  patents, provides incomplete relief to either party, and would likely be unenforceable.  *See*

17  *InterDigital Commc'ns, Inc. v. ZTE Corp.*, No. 1:13-CV-00009-RGA, 2014 WL 2206218, at *3

18  (D. Del. May 28, 2014).  In fact, Lenovo U.S. seeks relief for its "worldwide affiliates" who, in

19  turn, otherwise refuse to submit to the jurisdiction of this Court.  Dkt. No. 38 at 6:16-7:11.  These

20  determinations would only serve to "alter the current negotiation power between the parties," and

21  not any legitimate purpose of the Declaratory Judgment Act.  *Interdigital*, 2014 WL 2206218, at

22  *3.  Essentially, Lenovo China seeks an advisory opinion, through Lenovo U.S., from this Court

23  as a starting point by which IPCom and Lenovo China will establish a global patent license.

24       When considering the totality of circumstances, Lenovo U.S. should not be allowed to

25  force IPCom, a foreign entity, to participate in a proceeding over its worldwide patent rights in

26  this District.  As explained above, Lenovo U.S.'s tactic of starting a declaratory judgment to

27  obtain negotiation leverage should not be rewarded.  To do so will condone the use of the courts

28  as tools for contract negotiations, undermine the considerations of comity and relations between

sovereigns, ignore the purpose of the Declaratory Judgment Act, and allow Lenovo China to seek the benefits and protection of U.S. laws without subjecting itself to personal jurisdiction here.

## V.   **<u>CONCLUSION</u>**

For the reasons stated above, IPCom respectfully requests that the Court dismiss all counts of Lenovo U.S.'s Amended Complaint.

1    Dated:        December 29, 2021                    Respectfully submitted,

2                                                      DECHERT LLP

3                                                      By: */s/ Charles Hsu*

4                                                      S. Michael Song (CA State Bar No. 198656)

5                                                      Charles Hsu (CA State Bar No. 328798)
                                                       Dechert LLP

6                                                      3000 El Camino Real
                                                       Five Palo Alto Square, Suite 650

7                                                      Palo Alto, CA 94306
                                                       Telephone:      +1 650 813 4800

8                                                      Facsimile:      +1 650 813 4848

9                                                      michael.song@dechert.com
                                                       charles.hsu@dechert.com

10

11                                                     Martin J. Black (PA State Bar No. 54319)
                                                       George G. Gordon (PA State Bar No. 63072)

12                                                     *Pro Hac Vice*
                                                       Dechert LLP

13                                                     Cira Center
                                                       2929 Arch Street

14                                                     Philadelphia, PA  19104
                                                       Telephone:  +215 994 4000

15                                                     Facsimile:      +215 994 2222
                                                       martin.black@dechert.com

16                                                     george.gordon@dechert.com

17                                                     *Attorneys for Defendant*

18                                                     *IPCom GmbH & Co. KG*

19

20

21

22

23

24

25

26

27

28