UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LENOVO (UNITED STATES) INC., et al., Plaintiffs, v. IPCOM GMBH & CO., KG, Defendant. | Case No.  19-cv-01389-EJD **ORDER GRANTING MOTION TO DISMISS** Re: Dkt. No. 166 |

Plaintiffs Lenovo (United States) Inc. ("Lenovo U.S.") and Motorola Mobility LLC ("Motorola") (collectively "Plaintiffs") bring this action against Defendant IPCom GmbH & Co. KG ("IPCom"), alleging that IPCom failed to offer Plaintiffs a license to its standard essential patents ("SEPs") on fair, reasonable, and non-discriminatory ("FRAND") terms and conditions. Plaintiffs assert three causes of action pertaining to IPCom's breach of its FRAND obligations (First, Second, and Third Causes of Action) and two declaratory judgments of non-infringement for U.S. Patent Nos. 6,307,844 (Fourth Cause of Action) and 6,920,124 (Fifth Cause of Action).

Following jurisdictional discovery and Plaintiffs' amendment of their initial Complaint, IPCom filed the instant Motion to Dismiss Amended Complaint, arguing that Plaintiffs have failed to establish personal jurisdiction, failed to state a claim, and failed to establish subject matter jurisdiction over their declaratory judgment claims. For the following reasons, the Court grants IPCom's motion to dismiss for lack of personal jurisdiction.

## I.     FACTUAL BACKGROUND

### A.     Parties and Patents

Plaintiff Lenovo U.S. is a Delaware corporation with its principal place of business in

1    Morrisville, North Carolina.  Amended Complaint ("AC") ¶ 12, ECF No. 194.  Lenovo U.S.'s

2    parent company is Lenovo Group Limited ("Lenovo China"), which is a Chinese company

3    headquartered in Hong Kong.  Motion to Dismiss Amended Complaint ("Mot.") 1-2, ECF No.

4    166.  In 2014, Lenovo China acquired Plaintiff Motorola, which is a Delaware corporation with a

5    principal place of business in Chicago, Illinois.  AC ¶ 13.  Plaintiffs are leading providers of a

6    variety of wireless devices that rely on cellular connectivity, such as tablets, laptops, and mobile

7    phones.  *Id.* ¶¶ 1-2.

8         Defendant IPCom is a German company headquartered in Pullach, Germany.  *Id.* ¶ 15.

9    IPCom characterizes itself as a "small intellectual property consulting, R&D, and licensing

10   company" and is alleged to have been created for the purpose of patent prosecution and licensing.

11   Mot. 2-3; *id.* ¶ 16.

12        IPCom owns several patents that are claimed to be essential to the cellular connectivity

13   standards adopted by a European standard setting organization ("SSO"), the European

14   Telecommunications Standards Institute ("ETSI").  AC ¶ 3.  Accordingly, any company that

15   produces standard-compliant products—here, the standards for 2G, 3G, or 4G cellular

16   connectivity—would necessarily need to incorporate the technology from these patents.  *Id.* ¶¶ 4-

17   6.  In exchange for these patents being declared essential and granting their owners significant

18   market power, SSOs typically require the owner of an SEP to commit to only licensing the patent

19   at fair, reasonable, and non-discriminatory terms, *i.e.*, FRAND terms.  *Id.* ¶¶ 4-5.  Here, IPCom

20   made these FRAND declarations in December 2009 and again in June 2014.  *Id.* ¶¶ 34, 48.

21        **B.    Licensing Negotiations**

22        IPCom first reached out to Plaintiff Motorola in August 2009 by mail to discuss

23   Motorola's use of cellular connectivity technology, though at the time Motorola had a valid

24   license for 2G technology.  AC ¶ 31.  Between 2009 and 2014, IPCom and Motorola periodically

25   corresponded by email, teleconference, and in-person, totaling eight (8) physical visits to the

26   United States, twelve (12) emails to Motorola, and sixteen (16) "teleconferences" with Motorola.

27   *Id.* ¶ 53.  These meetings included four instances in which IPCom traveled to San Francisco to

28   Case No.: 19-cv-01389-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

meet with Motorola representatives.  *Id.* ¶ 53 n.1.  During these negotiations, IPCom sought a license to its entire patent portfolio, which included the '124 patent-in-suit and references to the technology relating to the '844 patent-in-suit.  *Id.* ¶¶ 36-37.

On October 31, 2014, Motorola was acquired by Lenovo Group Limited ("Lenovo China"), a Chinese company.  *Id.* ¶ 53.  After the acquisition, IPCom ceased communicating with Motorola and instead focused on communications with Lenovo China, traveling to Beijing on twelve (12) occasions between 2015 and 2017.  *Id.* ¶ 64.

In April 2018, after nearly four years of negotiating with Lenovo China, IPCom traveled to Motorola's Chicago office for further licensing negotiations.  *Id.* ¶¶ 64-65; *see also* Reply 5-6. IPCom asserts that it only engaged with Motorola and Lenovo U.S. after being instructed to do so by Lenovo China and for the purpose of negotiating a worldwide license with Lenovo China. Reply 5-6; Transcript of Proceedings held on May 26, 2022 ("Hearing Tr.") 65:22-66:4.  Plaintiffs do not directly dispute this point but respond that Lenovo China had merely given IPCom an "additional avenue of discussion" for those negotiations and that IPCom itself chose to deal with Lenovo's U.S. subsidiaries.  Opp. 4; Hearing Tr. 67:19-25.  No demands or offers were made at the April 2018 meeting, but IPCom and Plaintiffs engaged in subsequent communications, resulting in five royalty demands IPCom emailed to Plaintiffs.  AC ¶¶ 71-95.

On March 1, 2019, IPCom sent its final royalty demand to Plaintiffs, noting that it had "internally received sign-off approval for litigation against Lenovo/Motorola" and referencing "legal proceedings in the UK and possibly in Germany as well as in the U.S."  *Id.* ¶ 94.  IPCom demanded that Plaintiffs accept the offer by March 15, 2019.  *Id.*

## II.    PROCEDURAL HISTORY

On March 14, 2019, Plaintiffs filed the original Complaint in this district, which alleged claims based in antitrust (breach of contract, declaratory judgment, § 2 Sherman Act) and patent (declaratory judgments of non-infringement of U.S. patents '844 and '124).  AC ¶ 96; ECF No. 1.

On July 2, 2019, IPCom moved to dismiss for lack of personal jurisdiction.  On the same day, IPCom initiated patent infringement proceedings in the United Kingdom against Lenovo's

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   U.K. affiliates.  ECF No. 40, at 7.  On September 18, 2019, after IPCom's motion to dismiss was

2   briefed but before the hearing, Plaintiffs filed for an anti-suit injunction, seeking to enjoin IPCom

3   from pursuing the U.K. infringement action and initiating any litigation pertaining to IPCom's 2G,

4   3G, or 4G SEPs.  ECF No. 40-3, at 2.  On November 14, 2019, the Court heard oral arguments for

5   both IPCom's motion to dismiss and Plaintiffs' motion for an anti-suit injunction.  ECF No. 65.

6   On December 12, 2019, this Court found that Plaintiffs had failed to make a prima facie showing

7   of personal jurisdiction over IPCom but granted the parties leave to conduct jurisdictional

8   discovery.  ECF No. 71.  The Court terminated both motions but permitted the parties to renew

9   them once jurisdictional discovery was completed.  *Id.*

10         After two years of jurisdictional discovery, Plaintiffs amended their complaint with

11   additional allegations on November 24, 2021.  ECF No. 158.  IPCom subsequently filed this

12   Motion to Dismiss the Amended Complaint on December 29, 2021, asserting that the Amended

13   Complaint fails to sufficiently plead personal jurisdiction, subject matter jurisdiction, and to state a

14   claim.  ECF No. 166.

15   **III.    DISCUSSION**

16         IPCom renews its personal jurisdiction defenses in the present Motion, which the Court

17   elects to address first as a threshold question.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574,

18   585 (1999).  The Amended Complaint alleges that nationwide personal jurisdiction exists over

19   IPCom pursuant to Fed. R. Civ. P. 4(k)(2) for Plaintiffs' "federal claims."  AC ¶ 22; *see also* Opp.

20   3.  Additionally, Plaintiffs argue that nationwide personal jurisdiction exists for their antitrust

21   claim under 15 U.S.C. § 22.  Opp. 3.  The Amended Complaint does not expressly state an

22   independent basis of personal jurisdiction for Plaintiffs' First and Second Causes of Action (*i.e.*,

23   breach of contract and declaratory judgment without reference to a federal statute), as neither

24   claim satisfies the conditions for personal jurisdiction under the statutes cited in the Amended

25   Complaint.  Compl. ¶ 22; *see also* Fed. R. Civ. P. 4(k)(2) (limited to "claim[s] that arise[] under

26   federal law"); 15 U.S.C. § 22 (limited to "[a]ny suit, action, or proceeding under the antitrust

27   laws").  For these claims, Plaintiffs appear to rely on pendent jurisdiction based on their patent or

28   Case No.: 19-cv-01389-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    antitrust claims, Opp. 1, and therefore, the Court's jurisdiction over the First and Second Causes

2    falls or stands with those claims.  For all claims, Plaintiffs have only argued that specific personal

3    jurisdiction, rather than general jurisdiction, exists over their claims.  Opp. 3.

4          IPCom had previously argued its contacts with the United States failed to give rise to

5    personal jurisdiction, but it now takes the position that the correct forum for Plaintiffs' patent

6    claims is California and primarily argues a lack of California contacts in its opening Motion

7    briefing.  Mot. 8-13.  As discussed below, the appropriate forum for Plaintiffs' patent claims

8    (Fourth and Fifth Causes of Action) is California and the appropriate forum for Plaintiffs' antitrust

9    claim (Third Cause of Action) is the United States.  Because the Court finds that Plaintiffs have

10    failed to establish personal jurisdiction over IPCom as to either its patent or antitrust claims, the

11    Court does not reach IPCom's other arguments for dismissal.

12       **A.**      **Legal Standard**

13         Where the defendant moves to dismiss a complaint for lack of personal jurisdiction,

14    plaintiffs bear the burden of demonstrating that jurisdiction is appropriate.  *See Schwarzenegger v.*

15    *Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357,

16    1361 (9th Cir. 1990)).  Absent an evidentiary hearing, plaintiffs need only make a *prima facie*

17    showing of jurisdictional facts.  *Id.*  The Court may not assume the truth of complaint allegations

18    that are contradicted by defendants' affidavits; however, any conflicts in the parties' affidavits

19    must be resolved in plaintiffs' favor.  *See LNS Enterprises v. Cont'l Motors, Inc.*, 22 F.4th 852,

20    858 (9th Cir. 2022); *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

21         Where the personal jurisdiction inquiry is "intimately involved with the substance of the

22    patent laws," Federal Circuit law applies; otherwise, regional circuit law applies.  *Elecs. For*

23    *Imaging*, 340 F.3d at 1348.  Accordingly, the Court applies Federal Circuit law to assess personal

24    jurisdiction over Plaintiffs' requests for declaratory judgment of non-infringement and applies

25    Ninth Circuit law on personal jurisdiction over Plaintiffs' antitrust claim.

26       **B.**      **Specific Personal Jurisdiction – Patent Claims**

27         Under Federal Circuit law, a federal court begins the personal jurisdiction inquiry by

28    Case No.: 19-cv-01389-EJD
      ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    "normally look[ing] either to a federal statute or to the long-arm statute of the State in which it sits

2    to determine whether a defendant is amenable to service." *Akro Corp. v. Luker*, 45 F.3d 1541,

3    1544 (Fed. Cir. 1995).  Once the court has identified a statute providing personal jurisdiction, it

4    must determine whether specific jurisdiction can be maintained consistent with due process.  *Id.*

5    The Federal Circuit has summarized the due process analysis as three factors: "(1) whether the

6    defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim

7    'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of

8    personal jurisdiction is 'reasonable and fair.'" *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*,

9    848 F.3d 1346, 1353 (Fed. Cir. 2017).

                              **1.    Statutory Authority for Jurisdiction**

                                   **a.    Rule 4(k)(2) and 35 U.S.C. § 293**

12            Here, the parties have each identified a different federal statute that they purport should

13   control the personal jurisdiction analysis for Plaintiffs' patent claims.

14           Plaintiffs assert that personal jurisdiction exists over IPCom pursuant to Fed. R. Civ. P.

15   4(k)(2).  AC ¶ 22; Opp. 3.  Rule 4(k)(2) provides in relevant part:

          (2) For a claim that arises under federal law, serving a summons or filing a waiver
          of service establishes personal jurisdiction over a defendant if:

             (A) the defendant is not subject to jurisdiction in any state's courts of general
                 jurisdiction; and
             (B) exercising jurisdiction is consistent with the United States Constitution and
                 laws.

20   Fed. R. Civ. P. 4(k)(2).  If a defendant's personal jurisdiction is subject to Rule 4(k)(2), the

21   subsequent due process inquiry "contemplates a defendant's contacts with *the entire United States*,

22   as opposed to the state in which the district court sits." *Touchcom, Inc. v. Bereskin & Parr*, 574

23   F.3d 1403, 1416 (Fed. Cir. 2009) (emphasis added).

24           IPCom contends that Rule 4(k)(2) is inapplicable because 35 U.S.C. § 293 vests

25   jurisdiction over non-U.S. patentees in the Eastern District of Virginia.  Reply 1.  Section 293

26   provides, in its entirety:

27           Every patentee not residing in the United States may file in the Patent and

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

6

*United States District Court*
*Northern District of California*

Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder.  If the person designated cannot be found at the address given in the last designation, or **if no person has been designated, the United States District Court for the Eastern District of Virginia shall have jurisdiction** and summons shall be served by publication or otherwise as the court directs.  The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293 (emphasis added).  IPCom asserts that, because Congress has assigned personal jurisdiction over foreign patentees such as itself to the Eastern District of Virginia, jurisdiction exists in Virginia and, therefore, the requirement in Rule 4(k)(2)(A) is not satisfied.[1]

Plaintiffs respond that 35 U.S.C. § 293 cannot supplant Rule 4(k)(2) because § 293 does not establish jurisdiction in a "state's courts of *general jurisdiction*," which the text of Rule 4(k)(2) requires.  Fed. R. Civ. P. 4(k)(2) (emphasis added); *see also* ECF No. 183-2 ("Surreply") 1-2.  The Eastern District of Virginia, they point out, is not a state court of general jurisdiction, but rather a federal court of limited jurisdiction.  Surreply 1-2.  This argument arises from the holding in a 1996 decision from the District of Massachusetts, *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 488 (D. Mass. 1996) (finding that § 293's assignment of a federal district court does not preclude Rule 4(k)(2) which refers to "any state's courts of general jurisdiction"); *see also CytoSport, Inc. v. Cytogenix Sports Lab'ys, SRL*, No. CIV. 2:10-700-WBS, 2010 WL 5418883, at *4 n.2 (E.D. Cal. Dec. 23, 2010) (same).  Plaintiffs additionally argued that § 293 does not affect Rule 4(k)(2) because Rule 4(k)(1)(C) already expressly provides for federal statutes conferring personal jurisdiction.  Fed. R. Civ. P. 4(k)(1)(C) ("(1) Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant . . . (C) when authorized by a federal statute.").

---

[1] The Court acknowledges Plaintiffs' situation wherein IPCom first argued in its Reply that Rule 4(k)(2) did not apply.  That said, the Court granted and takes into consideration the arguments Plaintiffs have made in their Surreply, which would alleviate any prejudice Plaintiffs may have experienced from new arguments IPCom introduced on Reply.  In any event, Plaintiffs appears to have anticipated at some point that they may need to establish personal jurisdiction is proper in California, as their Amended Complaint makes several references to IPCom's connections to California and this District.  *See, e.g.*, AC ¶¶ 16, 22, 33, 81, 97.

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

The Court notes that the Federal Circuit has not yet issued any direct guidance on the jurisdictional interplay between Rule 4(k)(2) and § 293. The Federal Circuit, however, *has* delineated the limits of Rule 4(k)(2) standing alone. Specifically, the Federal Circuit in *Touchcom* interpreted Rule 4(k)(2) to only be available "if the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible."[2] *Touchcom*, 574 F.3d at 1415 (internal quotations marks omitted). In doing so, the Federal Circuit adopted the Seventh Circuit's approach, which provided that "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other **state** in which the suit could proceed." *Id.* at 1414 (emphasis added); *see also* Fed. R. Civ. P. 4(k)(2) advisory committee's note to 1993 amendment ("Paragraph (2) . . . authorizes the exercise of territorial jurisdiction over the person of any defendant . . . if that person is subject to personal jurisdiction in no **state**.") (emphasis added). The Seventh Circuit—and, by adoption, the Federal Circuit—had only required defendants to name an alternative "state" where they may be sued rather than a "state court," which emphasizes the provision of a forum for federal defendants rather than the insistence on a state forum. This interpretation was informed in part by the advisory committee's animating concerns driving Rule 4(k)(2), specifically "defendants escaping jurisdiction in **U.S. federal courts** while still having minimum contacts with the United States." *Touchcom*, 574 F.3d at 1415 (emphasis added); *see also* Fed. R. Civ. P. 4(k)(2) advisory committee's note to 1993 amendment (noting that, before Rule 4(k)(2), "the defendant was shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts"). Plaintiffs' suggested reading—*i.e.*, that defendants may only avoid Rule 4(k)(2) by ceding to personal jurisdiction in a state court—would conflict with the advisory committee's comments and graft an additional condition onto the Federal Circuit's holding in *Touchcom*. *Cf.* Fed. R. Civ. P. 4(k)(2) advisory committee's note to

---

[2] Although *Touchcom* did not involve a foreign patentee subject to § 293, the Federal Circuit nonetheless referenced § 293 when it interpreted Rule 4(k)(2) and expressly recognized that § 293 would provide jurisdiction over a foreign patentee. *See Touchcom*, 574 F.3d at 1412 n.3 ("This malpractice suit . . . is not a case to which 35 U.S.C. § 293 applies, **where jurisdiction over a foreign patentee is provided for proceedings affecting the patent**.") (emphasis added).

United States District Court
Northern District of California

United States District Court
Northern District of California

1    1993 amendment (referring to Rule 4(k)(2) as a "narrow extension of the federal reach").

2         In addition to narrowly construing the "state's courts of general jurisdiction" language,

3    Plaintiffs also argues that § 293 cannot affect Rule 4(k)(2) because another subsection already

4    contemplates and addresses personal jurisdiction "when authorized by a federal statute." Fed. R.

5    Civ. P. 4(k)(1). This argument, however, is ultimately unavailing and directly contradictory to the

6    advisory committee's express comments. Specifically, the advisory committee clarified that the

7    reference to a "federal statute" in Rule 4(k)(1) "merely calls attention to federal legislation that

8    may provide for **nationwide** or even **world-wide service** of process." Fed. R. Civ. P. 4(k)(2)

9    advisory committee's note to 1993 amendment (emphasis added). Here, § 293 plainly does not

10   provide for nationwide service—indeed, quite the opposite—and therefore could not have been

11   contemplated and precluded by Rule 4(k)(1).

12        Given the Federal Circuit's and advisory committee's guidance on Rule 4, the Court does

13   not read Rule 4(k)(2) to insist that defendants submit to jurisdiction in a state court; rather, Rule

14   4(k)(2) provides a federal forum where there would otherwise be none over defendants with

15   sufficient nationwide contacts but insufficient contacts to an individual state.[3] In other words, §

16   293 would provide a suitable forum for the purpose of precluding Rule 4(k)(2) application.

17   District courts have largely interpreted Rule 4(k)(2) and § 293 in the same manner. *See, e.g.*,

18   *Kraken Sports, Inc. v. Benvenuti*, No. CV 19-03233 (TFH), 2021 WL 1124530, at *3 (D.D.C.

19   Mar. 24, 2021) (finding that the Eastern District of Virginia could properly exercise personal

20   jurisdiction under § 293, which precluded the application of Rule 4(k)(2)); *Tube-Mac Indus., Inc.

21   v. Campbell*, No. 2:19-CV-01192-RJC, 2020 WL 1911464, at *11 (W.D. Pa. Apr. 20, 2020)

22   (applying § 293 instead of Rule 4(k)(2) where the patentee's only contact with the United States is

23   the acquisition of a U.S. patent); *NXP Semiconductors USA, Inc. v. Brevets*, No. C 14-1225 SI,

24

25   [3] Plaintiffs' assertion that a "foreign patentee may be subject to jurisdiction in the E.D. Va. under Section 293 *and* elsewhere under Rule 4(k)(2)" misreads the law. Surreply 3 (italics in original).

26   The very authority which Plaintiffs cite in support of this proposition had remarked on the absence of "binding precedent that establishes that a district court should . . . apply both 35 U.S.C. § 293

27   ('the patent long-arm statute') and Fed. R. Civ. P. 4(k)(2) ('the federal long-arm statute') to a foreign patentee." *Tube-Mac*, 2020 WL 1911464, at *10.

28   Case No.: 19-cv-01389-EJD
     ORDER GRANTING MOTION TO DISMISS

2014 WL 4621017, at *13 (N.D. Cal. Sept. 15, 2014) (finding that § 293 provides a suitable forum in which plaintiff could have brought suit, rendering Rule 4(k)(2) inapplicable); *cf. Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 72 n.9 (D. Mass. 2015) (remarking that § 293 may render personal jurisdiction inconsistent "'with the United States . . . laws,' thereby providing an independent basis for precluding the application of 4(k)(2)"); *cf. Early Learning Res., LLC v. Sebel Furniture Ltd.,* No. CIV. 10-6335 NLH JS, 2011 WL 4593775, at *6 (D.N.J. Sept. 30, 2011) (finding that defendant can avoid application of Rule 4(k)(2) by consenting to suit in the forum provided in § 293). *But see Pharmachemie*, 934 F. Supp. At 488; *CytoSport*, 2010 WL 5418883, at *4 n.2.

The Court holds that § 293's provision of a federal forum where foreign patentees may be sued would satisfy and thereby preclude the application of Rule 4(k)(2). Because IPCom has admitted that it may be sued in the Eastern District of Virginia under § 293, this Court may not use Rule 4(k)(2) here to exercise personal jurisdiction over IPCom. Section 293, however, does not provide the exclusive basis for jurisdiction over foreign patentees. *See Tube-Mac*, 2020 WL 1911464, at *7. Plaintiffs separately assert that "IPCom has had ample contacts with this District," Surreply 4, and they had also amended the jurisdictional provision of their Complaint to assert personal jurisdiction based on "IPCom's contacts with California and this District." AC ¶ 22. Accordingly, the Court proceeds to evaluate whether it has personal jurisdiction over IPCom's patent claims based on IPCom's contacts with California.

### b. California Long-Arm Statute

The relevant statute is the California long-arm statute, the limits of which the Federal Circuit recognizes are coterminous with those of the Due Process Clauses of the U.S. Constitution. *See Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1152 (Fed. Cir. 2021); *see also* Cal. Code of Civ. P. § 410.10. As a result, the single inquiry is whether the exercise of specific personal jurisdiction over IPCom relating to the patent claims would be consistent with due process.

### 2. Minimum Contacts

The Federal Circuit's three-part test for assessing due process is stated as: "(1) whether the

United States District Court
Northern District of California

defendant 'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'"  *Xilinx*, 848 F.3d at 1353.  The first two factors evaluate defendants' "minimum contacts" with the forum state, while the third factor considers whether the exercise of personal jurisdiction would comport with "fair play and substantial justice."  *Id.*  Plaintiffs bear the burden as to the first two prongs and, once established, defendants have the burden to present other considerations that render the exercise of jurisdiction unreasonable.  *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001).

With respect to the first prong of the minimum contacts analysis, the defendant must "take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State."  *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1153 (Fed. Cir. 2021) (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021)) (cleaned up). These contacts must be from the defendant's own choice and must show that the defendant "deliberately 'reached out beyond' its home—by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Ford*, 141 S. Ct. at 1025 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).  In other words, these contacts must not be "random, isolated, or fortuitous."  *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  In addition to defendant's purposeful direction towards the forum, the plaintiff's claims must "arise out of or relate to the defendant's contacts" with the forum—in other words, there must be "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State."  *Id.* (brackets omitted).

As an initial matter, the Court notes that neither Plaintiff is a California resident nor are their principal places of business located in California.[4]  AC ¶¶ 12-13 (Lenovo U.S. is a Delaware corporation headquartered in North Carolina; Motorola is a Delaware corporation headquartered in

---

[4] When asked by the Court why they have filed their suit in California as opposed to any of the states where they are incorporated or headquartered, Plaintiffs responded that they "sell a lot of products" and "have offices here" in this district.  Hearing Tr. 39:9-15.

Chicago).  This alone distinguishes the present case from the body of Federal Circuit decisions that analyze whether a defendant's notice or infringement letter sent to a plaintiff would satisfy minimum contacts in plaintiff's home forum.  *See, e.g.*, *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375 (Fed. Cir. 2022) (finding minimum contacts satisfied in California where defendant sent multiple letters to Apple and traveled to Apple's offices to discuss accusations of infringement); *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1156-57 (Fed. Cir. 2021) (finding minimum contacts satisfied in California where defendant accumulated several communications with plaintiff headquartered in Sunnyvale, California); *Xilinx*, 848 F.3d at 1354 (finding that defendant purposefully directed its activities to California when it sent multiple notice letters to California plaintiff and traveled to San Jose, California to discuss infringement).

Plaintiffs have cited various contacts IPCom had with California, each of which the Court reviews in turn to determine whether those contacts were purposefully directed at California and whether Plaintiffs' claims arise out of or relate to those contacts.

### a.    IPCom's 2009-2014 Visits to San Francisco

Plaintiffs first refer to four instances between 2009 and 2013 on which IPCom traveled to San Francisco to meet with Motorola and discuss licensing IPCom's patent portfolio, consisting of approximately 160 patent families.  AC ¶¶ 31, 33, 52-53.  In addition to these four meetings in San Francisco, IPCom also met with Motorola in Washington D.C., New York, Germany, Libertyville, and Chicago.  *Id.* ¶¶ 35-36, 39-40, 48.

Although in-person visits to the forum can certainly be significant contacts, Plaintiffs have not shown that these four visits were purposefully directed at California as a forum, as opposed to random, isolated, or fortuitous locations for meetings between two out-of-state companies.  *See, e.g.*, *Ford*, 141 S. Ct. at 1025.  As already noted, neither Plaintiff is a California resident and, therefore, these meetings cannot be treated as efforts to specifically enforce IPCom's patents in California.  IPCom's visits were also spread out sporadically over a period of four years (once in 2009, once in 2012, twice in 2013), with San Francisco being only one of six locations where IPCom met with Motorola.  Plaintiffs also do not allege that IPCom made any transactions or

1   entered into any agreements during these meetings when it was physically in California.

2       Nor do Plaintiffs cite any case law that suggests meetings between out-of-state attendees,

3   without more, are sufficient to establish minimum contacts in the meetings' forum.  To the

4   contrary, the Federal Circuit has found minimum contacts wanting even where the defendant

5   traveled to plaintiff's resident forum to negotiate licensing and had separately attended biannual

6   trade shows in the same forum.  *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012,

7   1015, 1020 (Fed. Cir. 2009).

8       In short, although these four meetings took place in San Francisco, they were between a

9   German company and a Delaware company headquartered in Illinois, they occurred sporadically

10  over four years amongst other meetings in out-of-state locations, they did not target a California

11  company, and they did not purport to invoke any benefits or privileges of California operation.

12  Under these circumstances, the Court finds that IPCom's San Francisco meetings with Motorola

13  are not "purposefully directed" at California as a forum and do not confer specific personal

14  jurisdiction over Plaintiffs' patent claims.[5]

15              **b.    IPCom's Engagement of California Consultant, Roger Ross**

16      Plaintiffs also cite to IPCom's hiring of Roger Ross, a U.S. attorney and resident of San

17  Carlos, California, as a contact for personal jurisdiction.  AC ¶¶ 59-63; Opp. 8.  Mr. Ross was the

18  "Director, Worldwide Licensing" for IPCom and corresponded with Plaintiffs regarding licensing

19  for six months between March and September 2018.  AC ¶¶ 59, 63.  In addition to Plaintiffs

20  Lenovo U.S. and Motorola, Mr. Ross had also discussed licensing with Microsoft but notably not

21  with Apple.  Opp. 8; AC ¶ 112; *see also* Mot. 11.  Plaintiffs argue that IPCom is subject to

22  jurisdiction because of (1) Mr. Ross's presence as a sales agent in California, and (2) his

23

24  [5] Even if the Court were to consider these four meetings to be purposefully directed at California,
    the last of these meetings occurred nearly six years prior to the filing of the initial complaint and

25  right before Plaintiff Motorola was acquired by Lenovo China.  AC ¶ 53 n.1.  This lengthy period
    between these purportedly related contacts and Plaintiffs' suit would cast further doubts on their

26  propriety as jurisdictional contacts, specifically whether Plaintiffs' claims arise out of or relate to
    those meetings in San Francisco.  *Cf. Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 866

27  (9th Cir. 2003) (acknowledging that defendant's contacts with the forum state "must not have been
    weakened by the passage of time").

28  Case No.: 19-cv-01389-EJD
    ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

consultant agreement that created a continuing relationship and obligation between IPCom and California.  Opp. 8; Hearing Tr. 24:2-25:12.

With respect to Mr. Ross's role as a sales agent in the forum, Plaintiffs cite to a 1998 Federal Circuit opinion, where jurisdiction existed in part because of the defendant's maintenance of California sales agents.  *See Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1271 (Fed. Cir. 1998).  There are, however, some key distinctions.  The defendant in *Dainippon* maintained California sales agents for the purposes of making, using, and selling their products in California, *id.*, but there are no allegations that IPCom engaged Mr. Ross for similar conduct here. Plaintiffs do not allege, for example, that Mr. Ross was hired because of his presence in California nor to specifically engage with California entities.  To the contrary, Mr. Ross did not participate in IPCom's then-ongoing licensing negotiations with Apple, a nearby forum resident and eventual licensee of IPCom's patent portfolio.  *See* AC ¶¶ 100-109; Opp. 9.  The fact that Mr. Ross did not participate in *any* negotiations with a California company, including a prominent company in a contiguous county of his office, argues against any implication that IPCom sought Mr. Ross's services to "purposefully avail[] itself of the privilege of conducting activities within [California]." *Trimble*, 997 F.3d at 1153.  Plaintiffs do allege that Mr. Ross participated in some meetings in San Francisco on behalf of IPCom; however, those meetings were with Microsoft, who is neither a California resident nor a party to this suit.  AC ¶ 110.  Furthermore, of the sixteen meetings that IPCom had with Microsoft, only four took place in San Francisco, *id.*, once again attenuating any suggestion that IPCom was purposefully availing itself of any privileges for doing business in California.  Plaintiffs' reliance on Mr. Ross's personal residence in this District to establish personal jurisdiction over IPCom is ultimately misplaced, because his residence alone does not support IPCom's purposeful direction towards California.

Plaintiffs also argue that the consultant agreement between IPCom and Mr. Ross supports jurisdiction, as it is evidence of IPCom's continuing relationships and obligations to a California resident.  Hearing Tr. 24:2-25:12.  Although contractual agreements with a forum resident can create "continuing relationships and obligations" for the purposes of establishing contacts, *see*

United States District Court
Northern District of California

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

14

1   *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985), Plaintiffs' patent claims against

2   IPCom do not arise out of or relate to its consultant agreement with Mr. Ross, which only

3   pertained to Mr. Ross's services to IPCom and made no mention of any specific patent.  AC ¶ 59;

4   *see also* Opp. Ex. 77, ECF No. 173-2, at 1.  Additionally, the consultant agreement did not select

5   California as its choice of law or forum, Opp. Ex. 77, at 7, further reducing any "fair warning" that

6   IPCom may be haled into California court on account of this contract, much less by a non-

7   Californian company that Mr. Ross contacted.  *See Burger King*, 471 U.S. at 472, 481-82.

8        Plaintiffs' cited authorities from this District are distinguishable in key respects.  Hearing

9   Tr. 24:19-25:12, citing *ASUSTeK Computer Inc. v. AFTG-TG LLC*, 2011 WL 6845791, at *10

10  (N.D. Cal. Dec. 29, 2011); *Juniper Networks, Inc. v. Altitude Cap. Partners, L.P.* ("*Altitude*"),

11  2010 WL 5141839, at *5 (N.D. Cal. Dec. 13, 2010).  In *ASUSTek*, this Court found that non-

12  resident defendants had entered into licensing agreements with multiple California companies,

13  containing express obligations that defendants initiate lawsuits against other California

14  corporations over the patents at issue.  *ASUSTeK*, 2011 WL 6845791, at *6.  In *Altitude*, the

15  contract in question was a purchase agreement where the defendant had assigned its patent rights

16  at issue to a California resident, thereby creating an ongoing relationship that gave rise to the

17  declaratory judgment action.  *Altitude*, 2010 WL 5141839, at *5.  IPCom's consultant agreement

18  with Mr. Ross did not create the kinds of obligations targeting California companies, such as the

19  contract in *ASUSTek*, 2011 WL 6845791, at *10 (finding that the suit was brought in response to

20  "Defendants' broad and extensive enforcement of their California licensing agreement with

21  [California licensee] directed in substantial part to California residents"); nor did it give rise to

22  Plaintiffs' declaratory judgment action as was the case in *Altitude*.

23       For these reasons, IPCom's contractual relationship with forum resident Roger Ross does

24  not establish personal jurisdiction over IPCom.

25                         **c.      Third Party Licensing Agreements**

26       Plaintiffs also refer to the licensing agreement and negotiations with third-party forum

27  resident Apple to support the exercise of personal jurisdiction over IPCom.  AC ¶¶ 100-109; Opp.

28  Case No.: 19-cv-01389-EJD
    ORDER GRANTING MOTION TO DISMISS

1   9-10.  Plaintiffs' position appears to be that, because IPCom executed a license with Apple for its

2   entire portfolio (including the '124 and '844 patents-in-suit) and the license with Apple would be

3   relevant to the quantum of damages here, Plaintiffs' claims sufficiently relate to IPCom's

4   licensing agreement with Apple.  Hearing Tr. 21:5-23:4, citing *Ford Motor Co. v. Montana Eighth*

5   *Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).

6         Although Plaintiffs wish to liken their case to *Ford*, the reality is that their facts more

7   closely resemble those in *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco*

8   *Cnty.*, 137 S. Ct. 1773 (2017).  There, the Supreme Court reviewed whether California courts may

9   exercise personal jurisdiction for claims brought by certain non-resident plaintiffs who had

10   purchased a prescription drug that was sold nationwide, including in California.  *Id.* at 1778.  As

11   with Plaintiffs here, the non-resident *Bristol-Myers* plaintiffs attempted to establish personal

12   jurisdiction by relating their own out-of-state injuries to those suffered by other in-forum plaintiffs

13   regarding the same prescription drug.  *Id.*  In holding that California did not have personal

14   jurisdiction over the non-resident plaintiffs' claims, the Supreme Court stated,

> The mere fact that other plaintiffs were prescribed, obtained, and ingested [the drug] in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims.  As we have explained, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction.  **This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents**.

19   *Id.* (emphasis added; internal citation and quotation marks omitted).  The Supreme Court in *Ford*

20   affirmed this holding when it distinguished its facts from those in *Bristol-Myers*, remarking that

21   whereas "[t]he plaintiffs, the Court explained [in *Bristol-Myers*], were not residents of California .

22   . . here, the plaintiffs [in *Ford*] are residents of the forum States."  *Ford*, 141 S. Ct. at 1031; *see*

23   *also id.* ("In sum, each of the plaintiffs brought suit in the most natural State.").  Much like how

24   the nonresident plaintiffs in *Bristol-Myers* relied on the defendant's contacts with in-forum

25   plaintiffs, so too do non-Californian Plaintiffs here seek to rely on IPCom's licensing negotiations

26   with Apple to establish personal jurisdiction.  However, as *Bristol-Myers* teaches, the mere fact

27   that the Court may have jurisdiction for claims that could be brought by Apple does not permit it

28   Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   to assert specific jurisdiction over claims brought by Plaintiffs, even if they involve the same

2   patent portfolio (or prescription drug).  *Id.*

3          Notwithstanding the limited relevance of third parties' contacts to the personal jurisdiction

4   inquiry, Plaintiffs have cited three cases that purportedly supports jurisdiction based on a

5   "patentee's efforts to license the patents-in-suit to third parties."  Opp. 9; *see also* Hearing Tr.

6   20:20-22:8.  Although these cases may support the proposition that third-party licensing

7   agreements can show a defendant's "purposeful direction" towards the forum, those plaintiffs did

8   not face the same "relates to" issue as Plaintiffs do here, because they all involved at least one in-

9   forum plaintiff.  *See Juniper Networks Inc. v. Swarm Tech. LLC*, No. 3:20-CV-03137-JD, 2021

10  WL 6049924, at *1 (N.D. Cal. Dec. 21, 2021) (California forum plaintiff seeking declaratory

11  judgment against Arizona defendant patentee); *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147,

12  1151 (Fed. Cir. 2021) (California forum plaintiff seeking declaratory judgment against Texas

13  defendant patent holder); *Akro Corp. v. Luker*, 45 F.3d 1541, 1542 (Fed. Cir. 1995) (Ohio forum

14  plaintiff seeking declaratory judgment against California defendant patentee).  Plaintiffs have not

15  cited any case where, based solely on the defendant's contacts with an in-forum third party, a court

16  exercised personal jurisdiction over a dispute involving only non-resident parties.  And, according

17  to *Bristol-Myers*, they cannot.  *Bristol-Myers*, 137 S. Ct. at 1781 ("The mere fact that other

18  plaintiffs . . . allegedly sustained the same injuries as did the nonresidents . . . does not allow the

19  State to assert specific jurisdiction over the nonresidents' claims.").

20         Because Plaintiffs have not shown how their patent claims arise out of or relate to IPCom's

21  licensing agreement with Apple, the Court cannot exercise personal jurisdiction over IPCom based

22  on those forum contacts.  Plaintiffs' references to third parties Microsoft and BlackBerry Corp. are

23  even more attenuated, given that neither are California residents.  *See* Opp. 9-10; AC ¶¶ 110-117.

### d.      Fortress Directors in California

24

25         In their Surreply and at oral arguments, Plaintiffs refer to the fact that two of IPCom's

26  board members are District residents.  Surreply 4; Hearing Tr. 23:17-22.  As with IPCom's

27  relationship with Mr. Ross, Plaintiffs appear to argue that the residence of IPCom's directors

28  Case No.: 19-cv-01389-EJD
    ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1    creates continuing obligations with a forum resident that would give rise to personal jurisdiction.

2    Hearing Tr. 23:17-22.

3           Plaintiffs once again rely on *Altitude* for the proposition that "continuing relationships and

4    obligations" with forum residents can expose defendants to personal jurisdiction. *Altitude*, 2010

5    WL 5141839, at *5-6. In doing so, the *Altitude* opinion quoted heavily from the Supreme Court's

6    opinion in *Burger King*, specifically that "parties who . . . create continuing relationships and

7    obligations with citizens of another state are subject to regulation and sanctions in the other State."

8    *Id.*, quoting *Burger King*, 471 U.S. at 473. However, it is unclear how this principle extends to

9    personal jurisdiction over corporate entities based on the personal residences of their directors.

10   *Burger King* focuses on a defendant's *purposeful* conduct that may subject it to personal

11   jurisdiction, such as its *creation* of relationships and obligations with forum residents. Plaintiffs

12   do not explain how IPCom had any purposeful involvement in the personal residences of its board

13   members or how the board members' presence in California relate to Plaintiffs' patent claims.

14   Nor have they advanced any theory that would permit the Court to impute a board member's

15   jurisdictional contacts to IPCom. Accordingly, Plaintiffs' allegations that IPCom's board

16   members are California residents, without more, fail to establish either purposeful direction or

17   availment under the minimum contacts inquiry.

18                          **e.      IPCom's § 1782 Request in this District**

19          Plaintiffs' Amended Complaint and Opposition briefly reference the fact that IPCom had

20   previously availed itself of this Court by requesting judicial assistance to compel documents from

21   Apple pursuant to 28 U.S.C. § 1782. Opp. 12; AC ¶ 124, citing *IPCom GMBH & Co. KG v. Apple*

22   *Inc.*, 61 F. Supp. 3d 919, 920 (N.D. Cal. 2014). Plaintiffs do not specifically argue that this prior

23   action would be a relevant contact to this District but do cite it in their argument that personal

24   jurisdiction would be fair and substantially justified. Opp. 12. That said, even assuming *arguendo*

25   that IPCom's invocation of this Court's authority may satisfy purposeful availment, it is apparent

26   that Plaintiffs' patent claims do not arise out of or relate to IPCom's § 1782 request. IPCom's

27   prior request from this Court had sought documents from Apple for use in an infringement action

28   Case No.: 19-cv-01389-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

1   in Germany pertaining to a European patent.  *See IPCom*, 61 F. Supp. 3d at 920-21.  There is no

2   indication that IPCom's § 1782 request related to Plaintiffs claims or any of the patents-in-suit.

3          Because Plaintiffs have not established that IPCom has minimum contacts with California

4   that gave rise or relate to their claims, the Court may not exercise specific personal jurisdiction

5   over IPCom as to Plaintiffs' requests for declaratory judgment of noninfringement (Fourth and

6   Fifth Causes of Action).  Plaintiffs' patent claims are therefore subject to dismissal.  However,

7   because Plaintiffs have requested the Court exercise pendent jurisdiction over its patent claims if it

8   has personal jurisdiction over Plaintiffs' antitrust claims, Opp. 12 n.6, the Court proceeds to

9   evaluate whether it may exercise personal jurisdiction over Plaintiffs' antitrust claims.

### C.    Specific Personal Jurisdiction – Antitrust Claims

11         Plaintiffs argue that the Court has independent bases on which it may exercise specific

12   personal jurisdiction over IPCom as to their antitrust claim (Third Cause of Action).  Opp. 13-15.

13   As noted above at Section III.A, because Plaintiffs' antitrust claim is not "intimately involved with

14   the substance of the patent laws," the personal jurisdiction inquiry is governed by regional Ninth

15   Circuit law.  *Elecs. For Imaging*, 340 F.3d at 1348.

16         Much like the Federal Circuit, the Ninth Circuit requires that, prior to the exercise of

17   personal jurisdiction over a defendant, there must be an "applicable rule or statute that potentially

18   confers jurisdiction over the defendant."  *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368

19   F.3d 1174, 1177 (9th Cir. 2004) (brackets omitted).  Here, Plaintiffs assert that personal

20   jurisdiction exists pursuant to 15 U.S.C. § 22, which provides for nationwide service of process for

21   antitrust claims.  15 U.S.C. § 22; *see also id.* at 1177-78.  IPCom also cedes that 15 U.S.C. § 22

22   applies, and the appropriate forum for minimum contacts is the United States.  Mot. 6, 9 n.1.

23         Because there is no dispute that the statutory authority exists for personal jurisdiction over

24   Plaintiffs' antitrust claim, the Court proceeds to assess whether the exercise of personal

25   jurisdiction would nonetheless comport with due process.  Like the Federal Circuit, the Ninth

26   Circuit also applies a three-part test to determine if non-resident defendants have "minimum

27   contacts" with the forum, as follows:

28   Case No.: 19-cv-01389-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Plaintiffs bear the burden of establishing the first two prongs; once established, the burden then shifts to defendants to "present a compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*

Per Plaintiffs' Opposition, their antitrust claim is "based on IPCom's intentionally false promise to ETSI that it would undertake to license its SEPs on FRAND terms, thereby causing its patents to be incorporated into standards, and subsequently pursuing supra-competitive royalties from Plaintiffs and other U.S. companies." Opp. 13; *see also* AC ¶¶ 188-197. Plaintiffs identify two general categories of relevant contacts with the United States: (1) IPCom's allegedly non-FRAND licensing demands sent to U.S. companies, and (2) IPCom's submission of false FRAND statements to ETSI. Opp. 13-14.

### 1. FRAND Statements Made to ETSI

For the first prong of the jurisdictional analysis, courts in this circuit apply the "purposeful direction" test in antitrust actions. *See, e.g.*, *In re Packaged Seafood Prod. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1148-49 (S.D. Cal. 2018). "To establish 'purposeful direction,' a plaintiff must show that the defendant: '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *In re Gasoline Spot Litig.*, No. 20-CV-03131-JSC, 2020 WL 7431843, at *4 (N.D. Cal. Dec. 18, 2020) (citing *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 743 (9th Cir. 2013)). An antitrust defendant "expressly aims" an intentional act at a forum when its "allegedly anticompetitive behavior is targeted at a resident of the forum, or at the forum itself." *Id.*

With respect to Plaintiffs' argument that IPCom's FRAND submissions to ETSI were

United States District Court
Northern District of California

1    "expressly aimed" at the United States, the Court rejected this argument in its prior order.  *See*

2    ECF No. 71 ("Dec. 2019 Order"), at 10-13.  The Court held that IPCom's FRAND statements

3    were not "expressly aimed" at the United States because they were made to a French SSO for use

4    in a worldwide standard.  *Id.* at 12.  Such conduct targets neither California nor the United States.

5    The mere possibility that those FRAND statements could have some effect in the forum state did

6    not satisfy "express aiming."  *Id.* at 13, citing *In re Packaged Seafood*, 338 F. Supp. 3d at 1158.

7            Plaintiffs have not made any new arguments to overcome this point.  The Opposition

8    asserts in a single paragraph that, because IPCom was negotiating with U.S. companies around the

9    time it submitted its FRAND statements, it therefore must have known that those U.S. companies

10   would be harmed by those statements.  Opp. 14.  Plaintiffs, however, do not cite any authority that

11   suggests a defendant's "express aiming" may be satisfied solely by an inference connecting two

12   otherwise separate events that occurred close in time.  The Court has also reviewed IPCom's

13   FRAND declarations[6] and found no reference or basis on which to infer that IPCom was

14   "expressly aiming" at the United States.  To the contrary, IPCom's 2009 FRAND declaration is

15   expressly governed by German law.  *See* Opp. Ex. 112, ECF No. 176-10, at 8-10.  The Court does

16   not see any justification to depart from its prior finding, that IPCom's FRAND statements to ETSI

17   are not "expressly aimed" at the United States.

18                    **2.      IPCom's Licensing Demands to Plaintiffs**

19           In addition to IPCom's FRAND declarations, Plaintiffs also argue that nationwide

20   jurisdiction may be satisfied by IPCom's non-FRAND licensing demands to Plaintiffs and other

21   U.S. companies.  Opp. 13-14.  The Court first turns to the licensing demands IPCom sent to

22   Plaintiffs, which calls for a close review of the jurisdictional facts.

23           In its Dec. 2019 Order, the Court determined that IPCom's licensing negotiations with

24   Plaintiffs were not purposefully directed at the United States because it was "undisputed that

25

26   _____

27   [6] IPCom's 2009 and 2014 FRAND declarations are attached to Plaintiffs' Opposition as Exhibits 112 and 115, both of which were incorporated by reference into the Amended Complaint.  Compl. ¶¶ 149-155; *see, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

28   Case No.: 19-cv-01389-EJD
     ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

IPCom made contact with Lenovo in the United States after being instructed to do so." Dec. 2019 Order, at 14. At that time, the Court relied on paragraph 49 of Plaintiffs' original complaint, which had alleged IPCom was "instructed that Lenovo's senior intellectual property counsel is located in the United States." *Id.* The Court also found it relevant that IPCom's primary liaison with Lenovo U.S. was Ms. Kathryn Tsirigotis, who was a U.S. resident but whose employment and email information did not distinguish she only represented Lenovo U.S., as opposed to Lenovo China more generally. *Id.* at 14-15.

In their Amended Complaint, Plaintiffs removed paragraph 49, but they did not allege anything to otherwise deny or rebut the substantive allegation in that prior paragraph, *i.e.*, that IPCom was directed by Lenovo China to contact Lenovo China's U.S. subsidiaries.[7] This fact has since been separately introduced by IPCom in its managing director's affidavit, ECF No. 18-1, and it may also be inferred from certain allegations of Plaintiffs' Amended Complaint. *See* AC ¶ 56 (alleging that IPCom sent a letter to the "Intellectual Property Department" of "Lenovo" in Beijing and received a response from Ms. Kathryn Tsirigotis in the United States stating that she would be IPCom's "primary contact at Lenovo").

Indeed, jurisdictional discovery appears to have produced further evidence suggesting that IPCom was targeting the Chinese parent company for a worldwide license and was not "expressly aiming" at either of the U.S. subsidiary Plaintiffs. In his deposition, Mr. Ross testified that he believed the Plaintiffs' attendees at the April 2018 Chicago meeting (*i.e.*, the one physical meeting IPCom held in the United States with Motorola after its acquisition by Lenovo China) to be representing the interests of Lenovo China or Lenovo broadly, and that Mr. Ira Blumberg had made it especially clear and unambiguous he "represented all of Lenovo's interests in licensing matters." *See* AC ¶¶ 66, 98; *see also* Mot. Ex. A 105:7-106:20. This is corroborated by the minutes from the April 2018 meeting, which confirmed that Mr. Blumberg had held himself out as the person responsible for Lenovo licensing worldwide and had even commented that Lenovo was

---

[7] Plaintiffs, of course, may plead inconsistent or even contradictory allegations in successive pleadings. *See, e.g.*, *PAE Gov't Servs., Inc. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007).

supposed to refer IPCom to him three years ago.  Opp. Ex. 4.[8]  Mr. Blumberg had also informed IPCom that, depending on the amount, his licensing decisions would need to be approved by Lenovo China's board.  *Id.*, *see also* Opp. Ex. 39, at 2-4.[9]  Although Plaintiffs have withdrawn the allegation from their original complaint, they have not otherwise disputed or rebutted the fact that Lenovo China directed IPCom to its U.S. personnel.  Accordingly, the Court may consider this jurisdictional fact in its analysis, as it did in the prior Dec. 2019 Order.  *See LNS Enterprises*, 22 F.4th at 858 ("[W]e cannot assume the truth of allegations in a pleading which are contradicted by affidavit . . . [but if] both sides submit affidavits, then conflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.") (internal quotation marks and brackets omitted).

Plaintiffs primarily respond by arguing that IPCom could not reasonably have believed it was communicating solely with "Lenovo China," which they support by citing various presentations or emails where IPCom had specifically referenced "Motorola."  Opp. 4.  This argument misses the mark.  Even if IPCom was consciously communicating with Motorola and knew it was a U.S. entity, it was only doing so at the behest of Lenovo China and for the purposes of reaching a worldwide license agreement.  Reply 5-6.  Plaintiffs have not alleged, for example, that IPCom would have expressly targeted Motorola and Lenovo U.S. independent of its pursuit of a worldwide license with Lenovo China or that IPCom was seeking a license to cover only Motorola's products or only Lenovo's sales in the United States.  To the extent Plaintiffs suggest that it is sufficient that IPCom knowingly communicated with a U.S. entity regardless of its actual intended purpose, the Court declines to adopt such a wooden application of the "purposeful direction" and "express aim" inquiries.  Indeed, by their own verbiage, these terms call for some consideration of a defendant's intentions, purposes, and aims behind its contacts with a forum.  *Cf. Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 847 (7th Cir. 2002) (declining to find

---

[8] Exhibit 4 to Plaintiffs' Opposition was incorporated by reference into the Amended Complaint at paragraph 67.  *See* Opp. 4, 7.

[9] Exhibit 39 to Plaintiffs' Opposition was incorporated by reference into the Amended Complaint at paragraphs 66 and 78.  *See* Opp. 7-8.

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

specific jurisdiction where defendant had sent arbitration notices into the forum only after plaintiff's insistence that it do so); *Athena Cosms., Inc. v. U.S. Warehouse*, No. CV 19-8466-MWF (MRW), 2020 WL 1969260, at *7-8 (C.D. Cal. Mar. 5, 2020) (finding that a non-resident company does not "expressly aim" its conduct into the forum when it only did so at customers' instructions).[10]

Plaintiffs also allege in the Amended Complaint that IPCom had emailed royalty demands to "Motorola and Lenovo U.S." *See* AC ¶¶ 83, 86, 91, 93. However, upon inspection of the referenced emails exhibited with the Opposition, almost every purported demand was emailed to just Ms. Tsirigotis. *See* Opp. Exs. 43, 48, 64, 66. This factual clarification is relevant because the Amended Complaint alleges that, when IPCom first sent a letter to "Lenovo" in Beijing, Ms. Tsirigotis had responded and held herself out as the "primary contact at Lenovo" for IPCom. AC ¶¶ 56, 66. The fact that IPCom sent their royalty demands to an individual who was their primary contact for the entire Lenovo enterprise would undermine any inference the Court may draw that IPCom "expressly aimed" its licensing demands at Lenovo's U.S. subsidiaries.

Given that the key facts the Court relied on for its Dec. 2019 Order are unaffected (*i.e.*, that IPCom was directed to Lenovo China's U.S. personnel and that Ms. Tsirigotis was IPCom's "primary contact at Lenovo"), the Court does not see any reason to disturb its prior holding. Dec. 2019 Order, at 14-15. Once again, the Court finds that IPCom's licensing negotiations with Plaintiffs Lenovo U.S. and Motorola to obtain a worldwide license with Lenovo China are not "expressly aimed" or targeted at a resident of the United States.[11]

---

[10] Plaintiffs also assert that "even if [IPCom was directed to communicate with U.S. subsidiaries], whether to do so was IPCom's own choice." Opp. 4. This argument—in addition to requiring difficult line-drawing semantics—does not overcome the fact that, regardless of whom it reached out to, IPCom was primarily seeking a *worldwide* license with Lenovo China. Reply 5-6.

[11] The Opposition briefly argues that jurisdiction may also be proper under the *Paccar* test, which permits the exercise of personal jurisdiction where the defendant "committed the liability-producing acts while physically present in the forum state." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) (citing *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)). However, as discussed *infra* at Section III.C.4, the liability-producing acts for a *Broadcom* antitrust claim are the intentionally false promise to an SSO, the SSO's reliance in setting standards, and the subsequent breach by the patent holder. *See Broadcom*, 501 F.3d 297. Plaintiffs do not allege that any of these acts

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

### 3. IPCom's Contacts with Third Party Companies

In addition to IPCom's negotiations and demands with Plaintiffs, the Amended Complaint also introduced further allegations that IPCom maintained U.S. contacts through its licensing negotiations with third-party U.S. companies (Apple, Microsoft, BlackBerry). AC ¶¶ 100-117. With respect to these third parties, IPCom does not dispute that all three companies are U.S. residents and IPCom had contacted them with the intention to obtain a license. Instead, IPCom argues that Plaintiffs' antitrust claim does not arise out of or relate to these negotiations and agreements. *See* Mot. 9 n.1, 13.

Although Plaintiffs may be considered forum residents under the nationwide contacts analysis, their attempts to tether their own claims to third-parties' claims are still blocked by *Bristol-Myers*. First, Plaintiffs cannot show that, but for IPCom's licensing negotiations with third parties, they would otherwise not have brought their antitrust claim, which fails to satisfy the "arising out of" prong of the jurisdictional requirement. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 742 (9th Cir. 2013) (applying a "but for" test to determine the second prong of the specific jurisdiction test). Second, as discussed above at Section III.B.2.c., IPCom's relationship with a third party—who may otherwise bring jurisdictionally sound claims—is an insufficient basis to confer jurisdiction over Plaintiffs, whose own case does not involve conduct that was purposefully directed at the forum. *See Bristol-Myers*, 137 S.Ct. at 1781; *see also supra* Section III.C.2. To find that IPCom's conduct towards other third parties was somehow related to Plaintiffs' own *Broadcom* claim would strain the limits of "case-linked" specific jurisdiction as established in *Bristol-Myers*.

### 4. IPCom's Contacts with Motorola Prior to Lenovo China Acquisition

Finally, Plaintiffs allege that IPCom had discussed licensing its patent portfolio to Motorola from 2009 to 2014 before it was acquired by Lenovo China. AC ¶¶ 31-51. These discussions resulted in one offer from IPCom to Motorola in June 2014 for a license to IPCom's

occurred while IPCom was physically present in the forum; IPCom's one physical visit to the United States in April 2018 did not result in IPCom asserting any licensing demand that could be treated as a "subsequent breach" of FRAND promises. *See* Compl. ¶¶ 64-66.

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

1   entire patent portfolio, in which Motorola had expressed that it was required to receive approval

2   prior to entering into agreements.  *Id.* ¶ 48.  Notably, Plaintiffs do not cite these pre-acquisition

3   discussions in direct support of jurisdiction over their antitrust claims specifically, though they do

4   broadly assert the general relevance of IPCom's U.S. discussions in the nationwide jurisdictional

5   analysis for their patent claims.  *Compare* Opp. 5-6 *with* Opp. 13-14.

6          Although the Court held *infra* that IPCom's negotiations with Motorola are not

7   "purposefully directed" at California to maintain jurisdiction over Plaintiffs' *patent* claims, the

8   forum at issue for Plaintiffs' *antitrust* claim is the United States.  IPCom does not dispute that

9   "purposeful direction" towards the United States is satisfied, nor does IPCom's defense that it was

10  only targeting Lenovo China apply to discussions that took place before Motorola was acquired by

11  Lenovo China.  Instead, IPCom relies on a recent Ninth Circuit decision to argue that Plaintiffs'

12  licensing negotiations give rise, not to an antitrust claim, but only a possible breach of contract

13  claim.  *See* Mot. 9; Reply 9, citing *Fed. Trade Comm'n v. Qualcomm Inc.* ("*FTC v. Qualcomm*"),

14  969 F.3d 974 (9th Cir. 2020).

15         To determine what contacts may give rise or relate to Plaintiffs' antitrust claim, the Court

16  briefly examines the legal elements to an antitrust claim, more specifically a § 2 Sherman Act

17  based on the Third Circuit's *Broadcom* decision.  Opp. 15-21; *see also Broadcom Corp. v.*

18  *Qualcomm Inc.* ("*Broadcom*"), 501 F.3d 297, 309 (3d Cir. 2007).  To establish liability under § 2,

19  a plaintiff must show "(a) the possession of monopoly power in the relevant market; (b) the willful

20  acquisition or maintenance of that power; and (c) causal antitrust injury."  *FTC v. Qualcomm*, 969

21  F.3d at 990.  The mere possession of monopoly power, however, is not unlawful in and of itself;

22  the monopoly power must also be "accompanied by an element of anticompetitive *conduct*."  *Id.*

23  (italics in original).  To show anticompetitive conduct, Plaintiffs rely on *Broadcom*, 501 F.3d 297,

24  a case that specifically addresses antitrust violations in the context of SSOs and patent holders'

25  FRAND commitments.  In *Broadcom*, the Third Circuit held that, "(1) in a consensus-oriented

26  private standard-setting environment, (2) a patent holder's intentionally false promise to license

27  essential proprietary technology on FRAND terms, (3) coupled with an [SSO]'s reliance on that

28  Case No.: 19-cv-01389-EJD
    **ORDER GRANTING MOTION TO DISMISS**

United States District Court
Northern District of California

1  promise when including the technology in a standard, and (4) the patent holder's subsequent

2  breach of that promise, is actionable anticompetitive conduct." *Id.*  The Ninth Circuit has

3  acknowledged *Broadcom* as the "Third Circuit's 'intentional deception' exception to the general

4  rule that breaches of SSO commitments do not give rise to antitrust liability." *FTC v. Qualcomm*,

5  969 F.3d at 997.  However, it also clarified that a breach of FRAND commitments to an SSO does

6  not amount to anticompetitive conduct in violation of § 2.  *Id.*

7       The Court recites these elements, not to ascertain the sufficiency of Plaintiffs' antitrust

8  pleading as it would under a Rule 12(b)(6) assessment, but rather to determine if Plaintiffs'

9  antitrust claim properly arises out of or relates to the cited jurisdictional contacts.  Because there

10  appears to be a general dearth of cases specifically analyzing a foreign defendant's nationwide

11  contacts and their relation to a § 2 antitrust claim, the Court is especially mindful of the Ninth

12  Circuit's guidance cautioning against the use of "the antitrust laws to remedy what are essentially

13  contractual disputes between private parties engaged in the pursuit of technological innovation."

14  *FTC v. Qualcomm*, 969 F.3d at 997; *see also id.* (quoting The Honorable Paul R. Michel (Ret.)

15  that "it would be a mistake to use 'the hammer of antitrust law . . . to resolve FRAND disputes

16  when more precise scalpels of contract and patent law are effective'").  These considerations are

17  especially salient in cases such as the one at bar where the key difference between the "hammer of

18  antitrust law" and the corresponding "scalpels of contract and patent law" is whether Plaintiffs can

19  access the antitrust "nationwide contacts" theory to establish personal jurisdiction over a foreign

20  defendant in any district of the United States.  *See Action Embroidery*, 368 F.3d at 1180.

21       In applying *Broadcom* and *FTC v. Qualcomm* to the facts here, the Court first notes that,

22  even though the subsequent breach of FRAND commitments is an element, the core

23  anticompetitive conduct in a *Broadcom* claim is the false promise made to an SSO and the SSO's

24  reliance on that promise.  *Broadcom*, 501 F.3d at 314.  *FTC v. Qualcomm* reinforced this emphasis

25  by holding that, without the intentional deception, breaches of FRAND commitments are not

26  themselves anticompetitive conduct.  *See FTC v. Qualcomm Inc.*, 969 F.3d at 997; *see also*

27  *Huawei Techs., Co, Ltd v. Samsung Elecs. Co, Ltd.*, 340 F. Supp. 3d 934, 955 (N.D. Cal. 2018)

28  Case No.: 19-cv-01389-EJD

**ORDER GRANTING MOTION TO DISMISS**

("[C]ourts have explicitly declined to expand *Broadcom* 'to reach violations of FRAND commitments occurring after the standard's adoption.'").  In accordance with *FTC v. Qualcomm*'s admonition that antitrust law ought not to intrude into the realm of private contractual or patent disputes, the Court finds that IPCom's licensing negotiations with pre-acquisition Motorola neither give rise nor relate to Plaintiffs' *Broadcom* claim.  The claim does not "arise out of" these discussions, as mere negotiations without a demand for non-FRAND terms cannot breach IPCom's FRAND commitments.  *See Broadcom*, 501 F.3d at 314.  Nor do these negotiations "relate to" the *Broadcom* claim because they are too attenuated from the core *Broadcom* conduct, *i.e.*, IPCom's alleged false promise to ETSI.  At most, these negotiations may "relate to" an alleged "subsequent breach of that promise," which itself also does not amount to anticompetitive activity per *FTC v. Qualcomm*, 969 F.3d at 997.  Especially when compared to Ford's ongoing "systematic serv[ice]" of the forum's markets, IPCom's negotiations with Motorola six years before Plaintiffs filed their original complaint—which itself made no reference to these negotiations—fall short of the "strong relationship among the defendant, the forum, and the litigation" required.  *Ford*, 141 S. Ct. at 1028 (internal quotation marks omitted)*; cf. Mattel v. Greiner & Hausser*, 354 F.3d at 866 (9th Cir. 2003) (acknowledging that defendant's contacts with the forum state "must not have been weakened by the passage of time").  IPCom's 2014 licensing negotiations with Plaintiff Motorola are therefore insufficient to establish personal jurisdiction over IPCom as to a *Broadcom* "intentional deception" antitrust claim.

Because the Court cannot exercise personal jurisdiction over IPCom for Plaintiffs' patent or antitrust claims, there is also no basis for exercising pendent jurisdiction over Plaintiffs' breach of contract or declaratory judgment claims (First and Second Causes of Action).  Accordingly, all Causes of Action in the Amended Complaint are subject to dismissal.

### D.     Leave to Amend

Because leave to amend is freely given when justice so requires, Fed. R. Civ. P. 15(a), the Ninth Circuit has instructed district courts to grant leave to amend unless one or more of the following factors is present: "undue delay, bad faith or dilatory motive on the part of the movant,

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  That said, "dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (citing *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir.2008)) (citations and internal quotation marks omitted).  Furthermore, the Ninth Circuit has clarified that "a district court's discretion to deny leave to amend is 'particularly broad' where the plaintiff has previously amended." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Sisseton–Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir.1996)).

As an initial matter, Plaintiffs do not expressly request leave to amend in their Opposition nor did they request leave when prompted by the Court at the end of oral arguments.  Hearing Tr. 73:18-74:6.  Accordingly, the Court has no request before it to grant.  Plaintiffs have also had ample opportunity to prepare and amend the allegations in their complaint, including nearly two years of jurisdictional discovery.  As discussed above at Section III.C.1, Plaintiffs have not been able to overcome key jurisdictional deficiencies identified by the Court in its Dec. 2019 Order, which would meet the Ninth Circuit's requirement discussed above. *See Eminence*, 316 F.3d at 1052 ("repeated failure to cure deficiencies by amendments previously allowed").

That said, the Court will permit Plaintiffs to submit a brief statement not to exceed five (5) pages, setting forth the grounds, if any, for why the Court should grant leave to amend. Should Plaintiffs file such a statement, Defendant may file an opposition not to exceed five (5) pages. Plaintiffs' request for leave shall be filed no later than July 22, 2022, and Defendant's opposition shall be filed no later than July 29, 2022, at which point the Court will take Plaintiffs' request for leave under submission.  If Plaintiffs do not file a request for leave to amend by July 22, 2022, the Court's dismissal today will be with prejudice.

## IV.   CONCLUSION

IPCom's Motion to Dismiss Amended Complaint is GRANTED.  All Causes of Action in

Case No.: 19-cv-01389-EJD
ORDER GRANTING MOTION TO DISMISS

United States District Court
Northern District of California

the Amended Complaint are DISMISSED WITHOUT PREJUDICE.  Plaintiffs may file a request for leave to amend their complaint by July 22, 2022.  If no request is filed by that date, the Court's dismissal will be WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: July 8, 2022

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California